RONALD BRATTON J-45341
CTF             CW-133L
P.O. BOX 689
SOLEDAD, CA 93960-0689
Plaintiff, in pro per
         " forma pauperis



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD BRATTON
            Plaintiff,

Case No. C 072928 JSW

V

BEN CURRY, Warden, CTF, et al.,

PLAINTIFF'S REQUEST AND DECLARATION FOR INJUNCTION ORDER AGAINST CDCR & CTF OFFICIALS PROHIBITING THEM FROM RETALATORY TRANNFER OF PRISONER, AND/OR CLASSIFICATION RAISING STATUS WITHOUT FEDERAL COURT AUTHORITY

GENERAL ALLEGATIONS

I. Plaintiff **RONALD BRATTON** respectfully requests an injunction to stop the **illegal unconstitutional retalitory action against the him by the above named individuals, and their superiors.** On March 26, 2008 prisoner was taken to annual classification revue. Instead of having points removed from his classification status and reducing restrictions (prisoner was in minus point status) which is the usual function of revue board, prisoner's class status was raised and **an adverse and arbitrary ruling was made which will put prisoner in harms way, by placing him in a higher level prison.** The prisoner believes that this a retailatory action for the filing of the above numbered civil action, which first named thirty-five CDCR officials and employees. (later reduced to 8 by by judge) Since this suit was filed CDCR officials have three times

-1-

to adversely transfer prisoner to either make certain claims against them 'moot,' or make it difficult to impossible to locate/and or serve certain individuals named in suit.

> A transfer may violate some constitutional protection. See Farmer v Brennan (1994) 511 U.S. 825 [114 S.Ct 1970; L.Ed. 2d 811] "prison officials have a duty to protect prisoners from violence at the hands of other prisoners; (and/or prison officials) A constitutional violation occurs when the danger of harm is "sufficiently serious" and the prison officials act with "deliberate indifference" to inmates' health or safety.

II. The heightening of prisoner's classification level is from level II, to level III, points from 19 to 28. Normally, and for 14 years, this prisoner's points have dropped 4 to 6 per year, for good behavior. I started at 60 points, down to minus point status for that. The arbitrary and selective placement of certain prisoners who may, or may not fit a "special category of new interpretations" of people who have murder convictions, and only at level II, CDCR prisons. Some of which 1st degree murders don't, and 2nd degree convicted convicted persons, "Only by stretching of definition." This person fits, "Only because he he exercises his first amendment rights of appealing and filing suit against illegal and unconstitutional treatment." That puts this request under this court's jurisdiction.

> Per CCR Title 15 an inmate is classified in an uniform manner as he comes through the reception center. This classification shall continue through-out the time the individual remains under CDCR jurisdiction. Per CCR Title 15 "mandatory score-points" are determined to "fit execptional crimes; Multiple murders, high notoriety or execution style murders, history of escape, or unusually violence." these may dictate that a person's custody level stay level 3 or above."

> By legal definition an "Execution Style Homicide" is when the victim must have been bound, cuffed, gagged, blindfolded or forced to assume a position from which the victim is unable to resist or flee. The court looks to whether the victim was under complete control of the perpetrator or in a kneeling or prone position, or the manner of death demonstrates that the victim had no opportunity to flee or defend himself. If an inmate is not given such restrictions as described above when he comes through the reception center, then he does not fit

-2-

the criteria for above named "mandatory scoring." One of the purposes of an annual revue is to improve the inmate's conditions of confinement by reducing or removing a previously imposed resttriction. It is difficult to discern how this prisoner's crime can now be considered anything other than the minimum required to sustain his 2nd degree murder conviction. In my particular circumstance I was running away from my attacker's rush. Now the board is picking and choseing whose murders they can "recalculate to fit a new mandatory scoreing." **"Now, my selection was the filing of this suit."**

> **"Prison officials also cannot transfer or otherwise punish a prisoner through classification action solely in retaliation for the prisoner's exercise of constitutional protected rights." PRATT v ROWLAND (9th Cir. 1995) 65 F.3d 802 RIZZO v DAWSON (9th Cir. 1985) 778 F.2d 527 LUCERRO v HENSLEY (C.D. Cal 1996) 920 F. Supp. 1067: SCOTT v RENO (C.C. Cal 1995) 902 F.Supp. 1190**

Although UCC, ICC, and CSR is given wide discretion in its recommendation of prisoners transfer and placement, this discretion can not be impartial, arbitrary and capricious. Whenever, the exercise of discretion exceeds the bounds of reason of all the circumstance before it being considered. This discretion becomes abusive when it appears that CTF-Central is attempting to reduce this population by arbitrarily increasing inmates custody based on a new phantom classification process within 3375.2.(a)(7)(A) Then forcing the inmate to have to fight the increased custody in the courts.

CDCR has created a phantom classification for the determination of CCR Title 15, 3375.2.(a) i.e., Execution type/style murder/unusual violence. This new phantom classification is being applied in abusive, arbitrary and capricious manner, in that any homicide, where the victim died as a result of an up close upper body injury is now an execution type/stlye murder or is classified as **unusual** violence. It should be noted that there is a pontential that this new specious procedure will be also used against an inmate at his board hearing.

-3-

It will then be used as a ground to deny parole, thus creating a liberty interest concern.

In particular this new policy is only targeting inmates on a level II yard. Inmates who have **programmed** from a high level to a low level prison. These inmates have a state-created liberty interest due to their having a classification status below level II, and/or lowest point level possible for life inmate(s)...i.e. (mandatory 19 points)

This group of inmates have successfully participated in positive programs, from more restrictive conditions, which has subsequently resulted in their being granted approval for release from close custody, and yards where there is tower coverage within the units referenced as 180° and/or 270° designs. Inmates from this class have regulatory rights to be separated from inmates having higher custody status due to their reasonable and forseeable conflict in positive program objective. To now **create** an arbitrary phantom classification is specious, in that there appears to be an undertone of discrimination against a certain group of inmates who have stayed out of trouble. These factors are not considered by UCC, ICC, or CSR when reviewing placement of these inmates under this new review.

These inmates' crimes are now being recharacterized, in violation of their constitutional rights. This new phantom classification is also in violation of the Office of Administrative Law,(OAL) and the Administrative Procedure Act (APA). In order to implement this new policy inmates shall be given notice, such policy has to to through the proper channels. in addition '<u>Substantive</u>' Due Process requires that all legislation, state or federal, must '<u>Reasonably</u>' be related to a legitimate government objective. The concept

of procedure due process guarantees procedure fairness, where the government attempts to deprive one of his property or liberty; This requires fair notice, and fair hearings prior to a deprivation of life, liberty or property be given. Because of this new policy, level II inmates are being singled out due to an unauthorized new classification procedure that increases their custody and forces them back into a higher security setting. These level II inmates are "the only ones who are being affected by this phantom policy," because the new application of 3375 UCC, ICC, and CSR is able to creat a classification 'on the fly.' Thus, this new classification policy is discriminatory, and being used to 'disperse trouble-making i.e. those who file suit(s) inmates behind the cover of CDCR policy.

> "For the CDCR to make an inmate re-serve time at a level III custody institution after he has already served his time at that security level in an exemplary fashion, and expose him to violence and restriction he does not deserve is to recharacterize his commitment offense beyond that pronounced at trial. see Kring v Missouri (1883) 2 S.Ct. 443, 444, 107 U.S. 221-224; Green v Unites States (1957) 355 U.S. 184, 190 78 S.Ct. 221-225 Recharacterization of a crime is unconstitutional."
>
> United States Const. " Article 1, sections 9-10; "Congress shall pass no ex post facto law." Fifth Amend. prohibits double jeopardy. "no person shall be placed in jeopardy for the same offense. see Arave v Creech, (1993) 507 U.S. 463, 472 475, 113 S.Ct. 1543; the United States Supreme Court held "A murder carried out with anger or emotion is not a passionless, execution style murder." (which I think I was accused of)

V. This petitioner is currently appealing the classification decision and order through normal CDCR channels. This appeal could take anywhere from one to three years to rise through the court system. "This punishment of the plaintiff is unlawful and must be stopped by the court,' as you are plaintiff's only recourse. The plaintiff told the commitee that placement in a medical facility, either at CMC or Vacaville is the only acceptable transfer to prisoner, since prisoner has an incureable blood disease, "Chronic Lymphocyatic Leukemia."    The health-care officials here have been indif-

ferent and negligent to plaintiff's health anyway, as is verified and testified in the suit before this court. Even though the plaintiff would consent to the transfer, only on those conditions, he would non-the-less still appeal and continue in the court the action against raising his custody level and custody points, and against going to "any level three prison," where not only are the inmate's more aggressive, but the guards still shoot a lot on those yards, making total safety extremely more hadarzdous for a person who has already proved by his behavior for the last 14 years, he has earned the right to be at a lower level prison. As the plaintiff states, the majority of persons with 1st degree murder convictions don't fit the arbitrary standard set by the Title XV regulation, which I have been informed was repealed, and due to housing space, persons are just arbitrary and vindictively chosen "to be punished" for voicing their rights.

The plaintiff pleads the court order the defendants to stop and desist the transfer of this prisoner, and the raising of his poing level. (Accepting on the transfer for Medical needs.)

The plaintiff also has a knee operation which was to be scheduled, as well as a fitting for podiatric fitting.

Dated March 31, 2008                     Signed *Ronald Bratton*
                                         RONALD BRATTON

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, _____Ronald Bratton_____, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

Ronald Bratton, CDCR #: J-45341
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: CW-133L
SOLEDAD, CA 93960-0689.

On __MARCH 31, 2008_____, I served the attached:

Court Injunction Request (Stop custody transfer to Level III prison, except medical facility (CMC or Vacaville) Freeze heightenint of points

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

United States District Court          Office of the Attorney General
Northern District of CA               455 Golden Gate Ave. Ste. 11000
450 Golden Gate Avenue                San Francisco, CA 94102-7004
P.O. BOX 36060
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on __March 31, 2008__.

*Ronald Bratton*
RONALD BRATTON
Declarant