RONALD BRATTON J-45341
CTF           CW-133L
P.O. BOX 689
SOLEDAD, CA 93960-0689

FILED
08 APR 15 PM 1:00

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


RONALD BRATTON,
    Plaintiff, in pro per
    in Forma Pauperis         Case No. C 07-2928 JSW

v

BEN CURRY, CTF Warden, et al.,    MOTION BY PLAINTIFF TO
    Defendants,                                 ADD SUPPLEMENTAL PLEADING
                                                        AND/or "RELATION BACK OF
                                                        AMENDMENTS"


1. I RONALD BRATTON, declare that I am the plaintiff named in the above named case, and that pursuant to The Federal Rules of Civil Procedure Rule 15,(c) RELATION BACK OF AMENDMENTS. An amendment of a pleading relates back to the date of the original pleading when; (2) the the claim asserted in the amended pleading arose out of the conduct, transaction, or occurence set forth or attempted to be set forth in the original pleading, **and Rule 15(d) SUPPLEMENTAL PLEADINGS.** Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading <u>setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.</u>

2. The defendants have retaliated against inmates, and particularly this inmate for utilizing legal procedures and court properly against

-1-

continuous grevious violations of prisoner's rights. The California Department of Corrections and Rehabilitation has unilaterally initiated an illegal program whereby prisoner' crimes of commitment are recharacterized negatively and those prisoners, no matter how exemplary their conduct for many years, **are repunished by being forced to higher level security institititutions, where violence and rules violations are exponentially worse that at Level II institutions.** The plaintiff states those chosen are being applied in an abusive arbitrary, and capricious manner. The CDCR officials are "by the re-created interpretation of CCR Title 15 3375.2(a)(7)(A) increasing "selected individuals" custody level, to shuffle "three-strike inmates" who entered prison with non-violent crimes for their strike, and had low custody points, but have "close custody" standing, to replace long term "good conduct lifers," in lower level II institutions,"ONLY!" The choosing of these inmates is by "case by case," those like myself, who are litigating issues against CTF are of course, shuffled to the front of the line.

3. These violations endanger plaintiff's necessity to stay discipline-free, as well as my safety from officials, as well as violent inmates housed in those higher level prisons. The higher level custody reflect on this prisoner's record, thus giving the Parole Board a negetave image of the prisoner, or a "Ah ha" moment, "Even though the CDCR Psycatrist Evualation Has Already Classified The plaintiff As Low Risk, To Moderate," in accessment for parole release. The Parole Board already has lied in the inmate's parole hearing and plaintiff is now litigating the denial for parole on "phantom reasoning" as this 'new assessment' parrots. This is a "gross violation of the XIV Amendment, Due process Clause.

4. Since this suit was filed CDCR officials have three times tried

-2-

to adversely transfer prisoner to either make certain claims against them 'moot,' or make it difficult to impossible to locate/and or serve certain individuals named in suit.

> A transfer may violate some constitutional protection. See Farmer v Brennan (1994) 511 U.S. 825 [114 S.Ct 1970; L.Ed. 2d 811] "prison officials have a duty to protect prisoners from violence at the hands of other prisoners; (and/or prison officials) A constitutional violation occurs when the danger of harm is "sufficiently serious" and the prison officials act with "deliberate indifference" to inmates' health or safety.

5. The heightening of prisoner's classification level is from level II, to level III, points from 19 to 28. Normally, and for 14 years, this prisoner's points have dropped 4 to 6 per year, for good behavior. I started at 60 points, down to minus point status for that. The arbitrary and selective placement of certain prisoners who may, or may not fit a "special category of new interpretations" of people who have murder convictions, and only at level II, CDCR prisons. Some of which 1st degree murders don't, and 2nd degree murder convicted persons, "Only by stretching of definition." This person fits, "Only because he he exercises his first amendment rights of appealing and filing suit against illegal and unconstitutional treatment." That puts this request under this court's jurisdiction.

> Per CCR Title 15 an inmate is classified in an uniform manner as he comes through the reception center. This classification shall continue through-out the time the individual remains under CDCR jurisdiction. Per CCR Title 15 "mandatory score-points" are determined to "fit execptional crimes; Multiple murders, high notoriety or execution style murders, history of escape, or unusually violence." these may dictate that a person's custody level stay level 3 or above."

> By legal definition an "Execution Style Homicide" is when the victim must have been bound, cuffed, gagged, blindfolded or forced to assume a position from which the victim is unable to resist or flee. The court looks to whether the victim was under complete control of the perpetrator or in a kneeling or prone position, or the manner of death demonstrates that the victim had no opportunity to flee or defend himself. If an inmate is not given such restrictions as described above when he comes through the reception center, then he does not fit the criteria

for above named "mandatory scoring." One of the purposes of an annual revue is to improve the inmate's conditions of confinement by reducing or removing a previously imposed restriction. It is difficult to discern how this prisoner's crime can now be considered anything other than the ninimum required to sustain his "2nd degree murder" conviction.

In my particular circumstance I was running away from my attacker's rush. Now the CDCR is picking and choosing whose murders they can "re-calculate to fit a new mandatory scoring."

> "Prison officials also cannot transfer or otherwise punish a prisoner through classification action solely in retaliation for the prisoner's exercise of const. protected rights." PRATT v ROWLAND (9th Cir.1995) 65 F.3d 802 RIZZO v DAWSON (9th Cir.1985) 778 F.2d 527 LUCERRO v HENSLEY (C.D. Cal 1996) 920 F.Supp. 1067: SCOTT v RENO (C.C. Cal 1995) 902 F.Supp. 1190

6. Although UCC, ICC, and CSR is given wide discretion in its recommendation of prisoners transfer and placement, this discretion can not be impartial, arbitrary and capricious. Whenever, the exercise of discretion exceeds the bounds of reason of all the circumstance before it being considered. This discretion becomes abusive when it appears that CTF is attempting to reduce its population by arbitrarily increasing inmates custody based on a new phantom classification process within 3375.2(a)(7)(A) Then forcing the inmate to have to fight the increased custody in the courts.

7. CDCR has created a phantom classification for the determination of CCR Title 15, 3375.2(a) i.e., Execution type/style murder-unusal violence. This new phantom classification is being applied in abusive, arbitrary and capricious manner, in that any homicide, where the victim died as a result of an up-cloce upper body injry is now an execution style murder "or is classified as unusual violence. It should be noted that there is a potential that this new specious procedure will be also used against an inmate at his board-hearing.

-4-

It will then be used as a ground to deny parole, thus creating a liberty interest concern.

8. In particular this new policy is only targeting inmates on a level II yard. Inmates who have programmed from a high level to a low level prison. These inmates have a state created liberty interest due to their having a classification status below level II, and/or lowest point level possible for life inmate(s)...i.e. (mandatory 19 points)

This group of inmates have successfully participated in positive programs, from more restrictive conditions, which has subsequently resulted in their being granted approval for release from close custody, and yards where there is tower coverage within the units referenced as 180° and/or 270° designs. Inmates from this class have regulatory rights to be separted from inmates having higher custody status due to their reasonable and forseeable conflict in positive program objective. To now create an arbitrary phantom classification is specious, in that there appears to be an undertone of discrimination against a certain group of inmates who have stayed out of trouble. These factors are not considered by UCC, ICC, or CSR when reviewing placement of these inmates under this new review.

9. These inmates' crimes are now being recharacterized, in violation of their constitutional rights. This new phantom classification is also in violation of the Office of Administrative Law,(OAL) and the Administrative Procedure Act (APA). In order to implement this new policy inmates shall be given notice, such policy has to to through the proper channels. In addition 'Substantive' Due Process requires that all legislation, state or federal, must 'Reasonably' be related to a legitimate government objective. The concept

of procedure due process guarantees procedure fairness, where the government attempts to deprive one of his property or liberty; This requires fair notice, and fair hearings prior to a deprivation of life, liberty or property be given. Because of this new policy, level II inmates are being singled out due to an unauthorized new classification procedure that increases their custody and forces them back into a higher security setting. These level II inmates are "the only ones who are being affected by this phantom policy," because the new application of 3375 UCC, ICC, and CSR is able to creat a classification 'on the fly.' Thus, this new classification policy is discriminatory, and being used to "disperse trouble-makers," i.e. those who file suit(s) inmates behind the cover of CDCR policy.

> "For the CDCR to make an inmate re-serve time at a level III custody institution after he has already served his time at that security level in an exemplary fashion, and expose him to violence and restriction he does not deserve is to recharacterize his commitment offense beyond that pronounced at trial. see Kring v Missouri (1883) 2 S.Ct. 443, 444, 107 U.S. 221-224; Green v Unites States (1957) 355 U.S. 184, 190 78 S.Ct. 221-225 Recharacterization of a crime is unconstitutional."
>
> United States Const. " Article 1, sections 9-10; "Congress shall pass no ex post facto law." Fifth Amend. prohibits double jeopardy. "no person shall be placed in jeopardy for the same offense. see Arave v Creech, (1993) 507 U.S. 463, 472 475, 113 S.Ct. 1543; the United States Supreme Court held "A murder carried out with anger or emotion is not a passionless, execution style murder." (which I think I was accused of)

10. This petitioner is currently appealing the classification decision and order through normal CDCR channels. This appeal could take anywhere from one to three years to rise through the court system. "This punishment of the plaintiff is unlawful and must be stopped by the court,' as you are plaintiff's only recourse. The plaintiff told the commitee that placement in a medical facility, either at CMC or Vacaville is the only acceptable transfer to prisoner, since prisoner has an incureable blood disease, "Chronic Lymphocyatic Leukemia." The health-care officials here have been indif-

-6-

ferent and negligent to plaintiff's health anyway as documented in plaintiff's "original pleading." The court took it upon itself to dismiss several of the "documented violations of plaintiff's rights, (without prejudice) some of which directly link to those involved in the illegal raising of plaintiff's custody.

11. Even though the plaintiff would consent to the transfer, only on the condition for medical, he would non-the-less still appeal, and continue this court action against raising his custody level, and would want removal of this "non-adverse, adverse action" from my files, as well as "Declaratory Rights" being established as to his position against such arbitrary actions being taken against him, now, as well as in the future by the methods being currently employed against him. The Court is the only one which could, and should decide, not the "random phantom regulation" currently threattening him, as well as the other inmates at Level II prisons with long term "clean records of confinement" all the way from Level 4 to Level 2, and has earned the privilege of being in a less hostile and violent surrounding than a Level 3 prison. Even the 1st degree 'general convictions' don't fit some of the standards set by CDCR in this instance.

12. This belated maneuver by defendants was imposed on plaintiff without any warning or Due Process afforded, because he supposedly cannot appeal an action by the Commitee until that misdeed has been committed. Therefore, the defendant's actions violate the 14th Amendment's prohibition against just such activity; See, HAMDI v RUMSFELD, 378 F.3rd 426 (4th Cir. 2004) p.2650-2651; quoting, St.Cyr, 533 U.S. at 301, 121 S.Ct. 2271 ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality

of Executive detention, and it is in that context that its protections have been strongest.")  Further on 2650; HAMDI says, ".. it would turn our system of checks and balances on its head to suggest that a citizen could not make his way to court with a challenge to the factual basis for his dentention by his government, simply because  the Executive opposes making available such a challenge.  Absent suspension of the writ a citizen detained.... is entitled to this process available at the institutions, but defendants delay the steps of appeal so that it takes a year or more, for a final determination, to hand down a final grant or denial of the CDC-602 inmate appeal.  By that time a sick man could die, unforseen riots, assaults, or stress  may kill him before the defendants, even if they rule in his favor, decide upon the action. Plaintiff has filed an Emergency expedite request" just as he requests action on this motion.  As a result of the aforementioned plaintiff is left only with the prayer to the Court for a prayer of relief, to challlenge his illegal condition of incarceration as described herein.

13.  Defendants will complain that Plaintiff has not exhausted his administrative remedies before approaching the courts on this issue, and they will aslo deny that their actions are gross violations, of the ex post facto restrictions described.  But see BOUIE V. Columbia, 378 S.Ct. 1697 (1964) p.895; Const. Law § 75 Ex post facto law decision of Courts. 4. "An unfavorable judicial enlargement of a criminal statute, applied retroactively , operates precisely like an ex post facto law, such as Article 1 § 10, of the United States Constitution forbids; the principle that the required criminal law must have existed when the conduct in issue occurred applies "to bar retroactive criminal prosecutions

emanating from Courts as well as from Legislatures." see, CALDER v BULL, # Dall 386,390, 1 L.Ed. 648,653 (1798); To punish a prisoner more harshly later that when he was initially punished is an ex post facto violation. and, "Punishment for status is an 8th Amendment violation"; **ROBINSON v STATE OF CALIFORNIA**, 82 S.Ct. 1417 (1962) **"Contradictory Statutory Schemes Violate the XIVth Amendment."** See Hicks v Oklahoma, 447 U.S. 343 (1980) quoting opt v Utah, 110 U.S. 574 (1884) "Federal Due Process is violated when a state fails to follow its established criminal provisions." Finally see, DeShaney v Winnebago County Department of Social Security Service, "THe Due Process Clause of the 14th Amendment was intended to secure the individual from arbitrary exercise of the power of government."

Also Plaintiff would also have noted the CDCR-CTF officials refused to accept his appeal, until it is accompanied by the "Chrono" which notates the action taken against him, which by the way they refuse (hold back) to send him, in hopes of him being transfered and gone before he can contest the action. Not acknowledgeing this civil matter already before the court, which contains some of those named. At this time without the "chrono" I can only refer to those involved as Ben Curry, et, al.,

14. The Plaintiff argues that "Irreparable Injury" in that a real and immediate threat is facing him to be removed to a higher level Institution, will or may occur if the Court does not grant him protection from this retalitory act, and unconstitutional move being forced upon him. He will move the Court for Declaratory Relief, Emergency Expedite Status, Protective Order from further retalitory action and tempory & permanent Injunction against

-9-

the raising of his custody status, and adverse move. I state again, if the move was to place plaintiff in one of the hospital facilities, at either Vacaville or CMC to have him where his health could be better monitered as to his "Chronic Leukemia Status," fine! But to put adverse and negative connotations in his file and record which will definitely effect his paroleability Status is not acceptable to this prisoner.

    WHEREFORE" Plaintiff prays this Court issues an Order To allow the Civil Case to proceed, and Order the defendants to STop and desist the "unlawful punishment of plaintiff," and allow his case to continue, without being impeded by unjust actions and illegal and retailatory transfer.

Dated: April 14, 2008

                                  Respectfully submitted,

                                  *Ronald Bratton*

                                  RONALD BRATTON
                                  Plaintiff in pro per.,
                                    in forma pauperis

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, __RONALD BRATTON__, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

RONALD BRATTON, CDCR #: J-45341
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: CW-133L
SOLEDAD, CA 93960-0689.

On __April 14, 2008__, I served the attached:

"MOTION/RELATION BACK OF AMENDMENTS" 10pgs

Supplemental Pleading

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

United States District Court
Northern District of CA
450 Golden Gate Avenue
P.O. Box 36060
San Francisco, CA 94102

Office Of The Attorney General
455 Golden Gate Ave. Ste. 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __April 14, 2008__.

_Ronald Bratton_
RONALD BRATTON
Declarant