1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  LISA SCIANDRA, State Bar No. 246532
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5846
     Fax: (415) 703-5480
8    Email: Lisa.Sciandra@doj.ca.gov

9  Attorneys for Defendants Curry, Chudy, Hill, Hedrick,
   Raghunath, Grannis, Aboytes, and Klein[1/]

10

11                   IN THE UNITED STATES DISTRICT COURT

12                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14

15  **RONALD BRATTON,**                              Case No. C 07-2928 JSW

16                                    Plaintiff,

17               v.

18  **BEN CURRY, et al.,**

19                                   Defendants.

20

21       **NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR**

22                       **SUMMARY JUDGMENT**

23

24

25

26

27

28       1. To the best knowledge of the Attorney General's Office, Defendant Jannah has not been
served. Accordingly, the Attorney General's Office makes no appearance on his behalf.

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

PROCEDURAL BACKGROUND ........................................... 2

SUMMARY OF ARGUMENT ........................................... 3

ISSUE STATEMENT ........................................... 3

STATEMENT OF FACTS ........................................... 4

ARGUMENT ........................................... 6

I.  PLAINTIFF'S EIGHTH AMENDMENT AND SUPPLEMENTAL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES. ........................................... 6

A.  Under the PLRA Inmates Must Exhaust Available Administrative Remedies. ........................................... 6

B.  Plaintiff's Administrative Appeals. ........................................... 7

C.  Plaintiff Failed to Exhaust the Appeal Concerning His Eighth Amendment Claim. ........................................... 7

1.  Plaintiff Failed to Follow Instructions from the Appeals Coordinator to Challenge a Screen-Out. ........................................... 8

2.  Plaintiff Failed to Exhaust His Appeal Through the Requisite Third Level of Review. ........................................... 9

D.  Plaintiff Could Not Possibly Have Exhausted His Supplemental Claim *Before* He Filed this Action Because the Allegations in the Supplemental Claim Occurred *After* Plaintiff Filed this Action. ........................................... 9

II.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT. ........................................... 10

A.  Legal Standard for Summary Judgment. ........................................... 10

B.  Plaintiff's Eighth Amendment Claim Fails Because CDCR's Religious Vegetarian Diet Has Not Had Any Adverse Effects on His Health and it is Adequate to Maintain His Health. ........................................... 11

1.  Defendants Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs Because CDCR's Religious Vegetarian Diet Has Not Had Any Adverse Effects on Plaintiff's Health. ........................................... 11

a.  Plaintiff's Medical Records Show that He Does Not Have an Objectively Serious Medical Need to Eat Meat and that Defendants' Alleged Indifference Did Not Harm Him. ........................................... 12

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

i

**TABLE OF CONTENTS  (continued)**

Page

1.  Plaintiff's Blood Tests Show He Does Not Have Any Nutritional Deficiencies and that His CLL is Stable.    12

2.  CDCR's Religious Vegetarian Diet Does Not Violate the Eighth Amendment Because it is Adequate to Maintain Health.    13

    a.  CDCR's Religious Vegetarian Diet Exceeds Minimum Nutritional Requirements.    13

    b.  CDCR's Religious Vegetarian Diet is Adequate to Maintain Plaintiff's Health.    14

C.  Plaintiff's RLUIPA Claim Fails Because He Fails to Meet His Burden of Proof to Demonstrate Prima Facie Evidence of a "Substantial Burden" on His Religious Exercise.    14

1.  Plaintiff Fails to Meet His Burden of Proof that a Vegetarian Diet Constitutes a Substantial Burden on His Religious Exercise.    15

    a.  Plaintiff Fails to Demonstrate *Any* Burden on His Religious Exercise.    15

    b.  Plaintiff Fails to Demonstrate that the Religious Vegetarian Diet Has Any Adverse Health Effects that Substantially Burden His Religious Exercise.    16

    c.  CDCR's Religious Diet Program Does Not Intentionally Put Significant Pressure on Plaintiff to Abandon His Religious Beliefs.    16

2.  CDCR Has a Compelling Governmental Interest in Saving the Prohibitive Expense of Providing Jewish Kosher Meals to Muslim Inmates.    17

3.  CDCR's Religious Vegetarian Diet is the Least Restrictive Alternative to Accommodate Muslim Inmates.    18

D.  Plaintiff's Equal Protection Claim Fails Because CDCR's Religious Diet Program is Reasonably Related to Legitimate Penological Interests.    19

1.  CDCR Has a Valid, Rational Connection Between its Religious Diet Program and its Legitimate Governmental Interests    19

2.  Plaintiff Does Not Allege that He Lacks Alternative Means to Practice His Religion.    20

3.  Providing Jewish Kosher Meals to Over Five Thousand Muslim Inmates Would Have a Substantial Impact on the Allocation of Prison Resources.    20

Not. of Motions & Motions to Dismiss & Summ. J.    *R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

ii

**TABLE OF CONTENTS  (continued)**

Page

E.    Plaintiff Fails to State Any Claim Against Defendants Curry or Hill
Because there is No *Respondeat Superior* or Vicarious Liability
Under 42 U.S.C. § 1983.                                                                    21

F.    Plaintiff Fails to State a Claim Against Defendants Grannis or Aboytes for
their Handling of Inmate Appeals Because There is No Constitutional
Right to a Prison Grievance System.                                                21

III.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.          22

A.    Defendants are Entitled to Qualified Immunity Because Plaintiff Failed to
Show Defendants' Actions Violated a Constitutional Right.              23

B.    Defendants are Entitled to Qualified Immunity Because It Would Not
Have Been Clear to Reasonable Officials that the Conduct at Issue was
Unlawful.                                                                                        23

CONCLUSION                                                                                       24

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

iii

1                              **TABLE OF AUTHORITIES**

2                                                                      **Page**

3   **Cases**

4

5   *Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)                                                   10
6
    *Antonelli v. Sheahan*
7   81 F.3d 1422 (7th Cir. 1996)                                          22

8   *Burns v. Reed*
    500 U.S. 478 (1991)                                                   22
9
    *Celotex Corp. v. Catrett*
10  477 U.S. 317 (1986)                                                   10

11  *Crawford-El v. Britton*
    523 U.S. 574 (1998)                                                   23
12
    *Cutter v. Wilkinson*
13  544 U.S. 709 (2005)                                                   18

14  *DeHart v. Horn*
    227 F.3d 47 (3d Cir. 2000)                                            19
15
    *Dombrowski v. Eastland*
16  387 U.S. 82 (1967)                                                    10

17  *Estelle v. Gamble*
    429 U.S. 97 (1976)                                                    11
18
    *Farmer v. Brennan*
19  511 U.S. 825 (1994)                                                11, 12

20  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*
    391 U.S. 253 (1968)                                                   10
21
    *Harlow v. Fitzgerald*
22  457 U.S. 800 (1982)                                                22, 23

23  *Hoptowit v. Ray*
    682 F.2d 1237 (9th Cir. 1982)                                         13
24
    *Jeffers v. Gomez*
25  267 F.3d 895 (9th Cir. 2001)                                          23

26  *Jett v. Penner*
    439 F.3d 1091 (9th Cir. 2006)                                         12
27
    *Jones v. Bock*
28  127 S. Ct. 910 (2007)                                              6, 7, 9

Not. of Motions & Motions to Dismiss & Summ. J.                *R. Bratton v. B. Curry, et al.*
                                                                   C 07-2928 JSW

                                      iv

## TABLE OF AUTHORITIES  (continued)

**Page**

*Keenan v. Hall*
83 F.3d 1083 (9th Cir. 1996) ............................................. 11, 13

*LaMaire v. Maass*
12 F.3d 1444 (9th Cir. 1993) ............................................. 13

*Mann v. Adams*
855 F.2d 639 (9th Cir. 1988) ............................................. 22

*McGuckin v. Smith*
974 F.2d 1050 (9th Cir. 1992) ............................................ 11

*McKinney v. Carey*
311 F.3d 1198 (9th Cir. 2002) ........................................... 6, 9, 10

*Monell v. Dep't of Social Services*
436 U.S. 658 (1978) ...................................................... 21

*O'Lone v. Estate of Shabazz*
482 U.S. 342 (1987) ...................................................... 20

*Palmer v. Sanderson*
9 F.3d 1433 (9th Cir. 1993) ............................................. 21

*Porter v. Nussle*
534 U.S. 516 (2002) ...................................................... 6

*Ramirez v. Galaza*
334 F.3d 850 (9th Cir. 2003) ............................................ 22

*Resnick v. Adams*
348 F.3d 763 (9th Cir. 2003) ............................................ 19

*Ruffin v. County of Los Angeles*
607 F.2d 1276 (9th Cir. 1979) ........................................... 10

*Saucier v. Katz*
533 U.S. 194 (2001) ...................................................... 22, 23

*Shakur v. Schriro*
514 F.3d 878 (9th Cir. 2008) ............................................ 15, 16, 18, 19

*Smith v. Nonan*
992 F.2d 987 (9th Cir. 1993) ............................................ 22

*Steckl v. Motorola, Inc.*
703 F.2d 392 (9th Cir. 1983) ............................................ 10

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989) ........................................... 21

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

v

1

**Page**

2

*Toguchi v. Chung*
3    391 F.3d 1051 (9th Cir. 2004)                                                    12

4    *Turner v. Safley*
     482 U.S. 78 (1987)                                                         19-21

5
     *Vaden v. Summerhill*
6    449 F.3d 1047 (9th Cir. 2006)                                             9, 10

7    *Warsoldier v. Woodford*
     418 F.3d 989 (9th Cir. 2005)                                              15-19

8
     *WMX Techs., Inc. v. Miller*
9    104 F.3d 1133 (9th Cir. 1997)                                                11

10   *Woodford v. Ngo*
     126 S. Ct. 2378 (2006)                                                        6

11
     *Wyatt v. Terhune*
12   315 F.3d 1108 (9th Cir. 2003)                                              2, 6

13   **Constitutional Provisions**

14
     United States Constitution
15        Eighth Amendment                                    2-4, 6, 7, 11-14, 24

16   **Statutes**

17
     United States Code, Title 28
18        § 1915A                                                                    2

19   United State Code, Title 42
          § 200cc-1                                                                 2
20        § 1983                                                            2, 21, 22
          § 1997e(a)                                                         6, 9, 10
21        § 2000cc-1(a)                                                            14
          § 2000cc-2(b)                                                            16
22        § 2000cc-5(7)(A)                                                         15

23   **Court Rules**

24
          Rule 12(b)                                                             1, 6
25        Rule 56                                                                   2
          Rule 56(c)                                                              10

26

27

28

Not. of Motions & Motions to Dismiss & Summ. J.                    *R. Bratton v. B. Curry, et al.*
                                                                   C 07-2928 JSW

vi

**TABLE OF AUTHORITIES  (continued)**

Page

**Other Authorities**

California Code Regulations, Title 15
§§ 3054-3054.4 .......................................... 12, 17
§ 3054(a) .................................................. 17, 19
§ 3054.3(b)(1) ............................................ 17
§ 3084.1(a) ................................................ 8, 9
§ 3084.2 ................................................... 8
§ 3084.2(c) ................................................ 8
§ 3084.3(d) ................................................ 8
§ 3084.5 ................................................... 8
§ 3084.5(d) ................................................ 9
§ 3084.5(e)(2) ............................................ 8, 9
§ 3084.6(c) ................................................ 8
§ 3210(a) .................................................. 20

Prison Litigation Reform Act (PLRA) ......... 2, 3, 6, 9, 10, 24

Religious Land Use and Institutionalized Persons Act (RLUIPA) ......... 2-4, 14-17, 19, 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

vii

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  LISA SCIANDRA, State Bar No. 246532
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5846
    Fax:  (415) 703-5480
8   Email:  Lisa.Sciandra@doj.ca.gov

9  Attorneys for Defendants Curry, Chudy, Hill, Hedrick,
   Raghunath, Grannis, Aboytes, and Klein[1/]

10

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15  **RONALD BRATTON,**                    Case No. C 07-2928 JSW

16                          Plaintiff,     **NOTICE OF MOTIONS AND
                                           MOTIONS TO DISMISS AND**
17          **v.**                         **FOR SUMMARY JUDGMENT**

18  **BEN CURRY, et al.,**

19                          Defendants.

20

21      TO PLAINTIFF RONALD BRATTON, PRO SE:

22      PLEASE TAKE NOTICE that Defendants Curry, Chudy, Hill, Hedrick, Raghunath,

23  Grannis, Aboytes and Klein (Defendants) move the Court to dismiss this action under the non-

24  enumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure because Plaintiff

25  Ronald Bratton (Plaintiff) failed to exhaust his administrative remedies before filing this action,

26

27  ─────────────────────────────────────────

28      1. To the best knowledge of the Attorney General's Office, Defendant Jannah has not been
    served.  Accordingly, the Attorney General's Office makes no appearance on his behalf.

1   as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff may

2   provide evidence to the Court to dispute the evidence Defendants present. *Wyatt v. Terhune*, 315

3   F.3d 1108, 1119-20 n.14 (9th Cir. 2003).

4        PLEASE TAKE FURTHER NOTICE that under Rule 56 of the Federal Rules of Civil

5   Procedure, Defendants move this Court for summary judgment on the grounds that there are no

6   genuine issues of material fact, that Defendants are entitled to judgment as a matter of law, and

7   that Defendants are entitled to qualified immunity.

8        This motion is based on this Notice, the following Memorandum of Points and

9   Authorities, the declarations and exhibits filed in support of this motion and the pleadings and

10   records on file with the Court in this action.

### MEMORANDUM OF POINTS AND AUTHORITIES

### PROCEDURAL BACKGROUND

13        Plaintiff, a state prisoner incarcerated in the California Department of Corrections and

14   Rehabilitation (CDCR) filed this action under 42 U.S.C. § 1983. He alleges that Defendants

15   have given him a religious vegetarian diet instead of a Jewish kosher diet in violation of his

16   constitutional rights and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42

17   U.S.C. § 200cc-1. (2d Am. Compl., Docket No. 5, at 4-12; Order of Service, Docket No. 8, at 1-

18   2.)

19        This Court screened Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A

20   and recognized the following claims against Defendants Raghunath, Hedrick, Klein, Curry, Hill,

21   Jannah, Chudy, Aboytes, and Grannis: (1) claims under the Eighth Amendment for the

22   deprivation of a diet including meat that complies with his religious dietary restrictions and

23   meets his nutritional needs for his health condition (Docket No. 8 at 4:16-20); (2) a claim under

24   RLUIPA for failure to provide halal meat (*Id.* at 6:16-18); and (3) an Equal Protection claim for

25   failure to provide a halal diet including meat to Muslims, while providing a Jewish kosher diet to

26   observant Jews (*Id.* at 6:1-3).

27        The Court dismissed Plaintiff's claims regarding Free Exercise, inmate appeals, dental

28   care, provision of glasses and prescription medication, work assignments, interference with

Not. of Motions & Motions to Dismiss & Summ. J.                   *R. Bratton v. B. Curry, et al.*

                                                        C 07-2928 JSW

1   parole, and mental health care. (*Id.* at 5:13-19; 7:20-24; 8:7-11.) Additionally, the Court

2   dismissed the State of California and CDCR as defendants, along with all other named

3   defendants. (*Id.* at 8:26-9:1; 9:8-13.)

4        The Court later granted Plaintiff's motion to add a supplemental claim concerning a

5   change in his classification status that occurred after Plaintiff filed this action. (*See* Docket Nos.

6   14, 16, 21.)

7        Defendants now move this Court to dismiss Plaintiff's Eighth Amendment claim and his

8   supplemental claim for failure to exhaust administrative remedies as required under the PLRA,

9   and because Defendants are entitled to judgment as a matter of law and qualified immunity on all

10   claims.

11                    **SUMMARY OF ARGUMENT**

12        Plaintiff's Eighth Amendment and supplemental claims should be dismissed for failure to

13   exhaust his administrative remedies under the PLRA. Defendants are also entitled to summary

14   judgement on Plaintiff's Eighth Amendment, RLUIPA, and Equal Protection claims for these

15   reasons: (1) Plaintiff's Eighth Amendment claims fail because CDCR's religious vegetarian diet

16   has not had any adverse effects on his health and it is adequate to maintain his health; (2)

17   Plaintiff's RLUIPA claim fails because he fails to meet his burden of proof to demonstrate prima

18   facie evidence of a "substantial burden" on his religious exercise; and (3) Plaintiff's Equal

19   Protection claim fails because CDCR's Religious Diet Program is reasonably related to

20   legitimate penological interests. Additionally, Plaintiff fails to state a claim against Defendants

21   Curry, Hill, Grannis, or Aboytes, and all Defendants are entitled to qualified immunity.

22                      **ISSUE STATEMENT**

23        1.    The PLRA requires inmates to exhaust their available administrative remedies

24   before filing a federal civil rights action. Plaintiff failed to properly exhaust his administrative

25   remedies for his Eighth Amendment and supplemental claims before he filed this action. Should

26   this Court dismiss those claims for failure to exhaust under the PLRA?

27        2.    To establish an Eighth Amendment violation for deliberate indifference to serious

28   medical needs, a prisoner-plaintiff must show that defendants' alleged indifference caused the

Not. of Motions & Motions to Dismiss & Summ. J.                              *R. Bratton v. B. Curry, et al.*
                                                                            C 07-2928 JSW

1  plaintiff harm.  Plaintiff's medical records show that he has not been harmed by CDCR's

2  vegetarian diet.  Were Defendants deliberately indifferent to Plaintiff's serious medical needs?

3        3.      To establish an Eighth Amendment violation for inadequate food, a prisoner-

4  plaintiff must show that the food is not adequate to maintain health.  CDCR's vegetarian diet

5  exceeds minimum nutritional requirements.  Did Defendants provide Plaintiff with inadequate

6  food?

7        4.      To establish a claim under the Religious Land Use and Institutionalized Persons

8  Act (RLUIPA), a prisoner-plaintiff has the burden of proof to demonstrate prima facie evidence

9  of a "substantial burden" on his religious exercise.  Plaintiff fails to demonstrate any burden on

10  his religious exercise.  Did Defendants substantially burden Plaintiff's exercise of religion in

11  violation of RLUIPA?

12        5.      To establish an Equal Protection claim, a prisoner-plaintiff must show that the

13  policy at issue is not reasonably related to legitimate penological interests.  Plaintiff fails to show

14  that the Religious Diet Program is not reasonably related to legitimate penological interests.

15  Does the Religious Diet Program violate Equal Protection?

16                              **STATEMENT OF FACTS**

17  1.    Plaintiff is incarcerated at the Correctional Training Facility and receives the religious

18        vegetarian diet under CDCR's Religious Diet Program.  (Decl. Sciandra at Ex. B.)

19  2.    In appeal log number CTF-07-00286, Plaintiff alleges that although CDCR's Jewish

20        kosher diet is religiously acceptable to Muslims, only Jewish prisoners are being allowed

21        to have the Jewish kosher diet.  (Decl. Santiago at Ex. B; 2d Am. Compl. at Ex. A, A31.)

22        This appeal was denied at the third level of review.  (Decl. Grannis at 2 ¶ 6a, Ex. C; 2d

23        Am. Compl. at Ex. A, A41-42.)

24  3.    In an unnumbered appeal that bears a stamp which says it was received by CTF Appeals

25        on March 28, 2007, Plaintiff alleges that the food manager is not honoring Plaintiff's

26        medical chrono to receive Jewish kosher meals.  (2d Am. Compl. at Ex. B, B44.)  This

27        appeal was screened out at the informal level of review on March 30, 2007, because the

28        appeals coordinators determined that it duplicated appeal log number CTF-07-00286.

Not. of Motions & Motions to Dismiss & Summ. J.                                     *R. Bratton v. B. Curry, et al.*
                                                                                     C 07-2928 JSW

1    (Decl. Santiago at 2 ¶ 5c; 2d Am. Compl. at Ex. B, B48.)  This appeal was also screened

2    out at the third, or Director's Level, of review on June 12, 2007, because Plaintiff failed

3    to submit the appeal through the second level of review before seeking third level review.

4    (Decl. Grannis at 3 ¶ 6b, Ex. C; 2d Am. Compl. at Ex. B, B49.)

5    4.    Laboratory results from Plaintiff's blood tests between 2002 and 2008 show that his liver,

6        kidney, blood sugar, albumin, iron, cholesterol, and triglycerides are all within normal

7        range.  (Decl. Chudy at 2 ¶ 4, Ex. B.)

8    5.    Plaintiff's medical records show that his blood chemistry is consistent with chronic

9        lymphocytic leukemia (CLL).  (Decl. Chudy at 2 ¶ 3, Ex. A.)  His recommended

10       treatment plan has been to monitor his white blood count by taking a complete blood

11       count about every four months.  (Id.)

12   6.    Plaintiff's blood tests show that his white blood count has remained elevated but stable

13       since 2002, which indicates that his CLL is not worsening.  (Decl. Chudy at 2 ¶ 4a, Ex.

14       B.)

15   7.    Plaintiff's medical records show that he has been diagnosed with thalassemia trait. (Decl.

16       Chudy at 2 ¶ 5, Ex. C.)  Individuals who have thalassemia trait generally have a low to

17       normal iron level that is considered adequate.  (Id. at 2 ¶ 5.)  If those individuals take iron

18       supplements, then periodic blood tests are needed to monitor their iron levels so that

19       excessive iron does not lead to liver toxicity.  (Id.)

20   8.    CDCR's religious vegetarian diet contains 2898.63 calories and exceeds 100 percent of

21       the nutritional standards for men, as set by the Food and Nutrition Board of the Institute

22       of Medicine, National Academy of Sciences, for: calories, protein, carbohydrates, dietary

23       fiber, fat, cholesterol, vitamin A, thiamin-B1, riboflavin-B2, niacin-B3, vitamin B6,

24       vitamin B12, vitamin C, vitamin D IU, folate, calcium, iron, magnesium, sodium, and

25       zinc.  (Decl. Summersett at 2 ¶ 2a, Ex. A.)  The religious vegetarian diet provides 176

26       percent of the recommended daily protein and 280 percent of the recommended daily

27       iron.  (Id.)

28   9.    CDCR's food costs per day, per inmate are as follows: (1) the religious vegetarian diet

Not. of Motions & Motions to Dismiss & Summ. J.                          R. Bratton v. B. Curry, et al.
                                                                        C 07-2928 JSW

1  costs $2.6268; (2) the regular diet costs $2.8066; and (3) the Jewish kosher diet costs

2  $7.1840.  (Decl. Summersett at 2 ¶ 3, Ex. A.)

3  10.  There are approximately 10,000 Muslim inmates in the CDCR system.  (Decl.

4  Summersett at 2 ¶ 3.)

5  11.  None of the food CDCR serves contains any pork products or pork derivatives.  (Decl.

6  Summersett at 3 ¶ 4.)

7  12.  CDCR's religious vegetarian diet serves fish at least once a week in a dinner meal, and

8  sometimes also serves tuna fish in lunch meals.  (Decl. Summersett at 3 ¶ 4.)

9  **ARGUMENT**

10  **I.**

11  **PLAINTIFF'S EIGHTH AMENDMENT AND SUPPLEMENTAL CLAIMS**
   **SHOULD BE DISMISSED FOR FAILURE TO EXHAUST**

12  **ADMINISTRATIVE REMEDIES.**

13  **A.    Under the PLRA Inmates Must Exhaust Available Administrative Remedies.**

14  The PLRA requires that inmates exhaust their available administrative remedies before

15  filing civil rights actions in federal courts.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516,

16  524 (2002); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  The Supreme Court

17  has held that exhaustion of available remedies requires that a prisoner "properly exhaust," which

18  means that "prisoners must complete the administrative review process in accordance with the

19  applicable procedural rules, . . . rules that are defined not by the PLRA, but by the prison

20  grievance process itself." *Jones v. Bock*, 127 S. Ct. 910, 922 (2007) (internal citations and

21  quotation marks omitted) (quoting *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006)).  Therefore,

22  "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to

23  'properly exhaust.'" *Id.*

24  When an inmate-plaintiff fails to exhaust, a defendant may file a non-enumerated Rule

25  12(b) motion to dismiss.  *Wyatt*, 315 F.3d at 1119-20 (9th Cir. 2003).  In ruling on such a motion

26  a court may look beyond the pleading to decide disputed issues of fact.  *Id.*  The proper

27  disposition for failure to exhaust is dismissal without prejudice.  *Id.* at 1120.  If the court

28  determines that any claims have not been exhausted, then the court should dismiss only those

Not. of Motions & Motions to Dismiss & Summ. J.                                    *R. Bratton v. B. Curry, et al.*
                                                                                               C 07-2928 JSW

6

1  unexhausted claims. *Jones*, 127 S. Ct. at 924-25.

2      **B.    Plaintiff's Administrative Appeals.**

3          In his Second Amended Complaint, Plaintiff alleges that he exhausted his inmate appeals,

4  and he attaches sixteen inmate appeals in Exhibits A through H. (2d Am. Compl. at 1 ¶¶ D-F;

5  Exs. A-H.) Most of the appeals attached to the Second Amended Complaint either concern

6  claims that the Court already dismissed in this action or which are irrelevant to any claim in this

7  action. Only the following two appeals that Plaintiff attaches to his Second Amended Complaint

8  are relevant to the recognized claims in this action:

9          In appeal log number CTF-07-00286, Plaintiff alleges that although CDCR's Jewish

10  kosher diet is religiously acceptable to Muslims, only Jewish prisoners are being allowed to have

11  the Jewish kosher diet. (Decl. Santiago at Ex. B; 2d Am. Compl. at Ex. A, A31.) This appeal

12  was denied at the third level of review. (Decl. Grannis at 2 ¶ 6a, Ex. C; 2d Am. Compl. at Ex. A,

13  A41-42.)

14          In an unnumbered appeal that bears a stamp which says it was received by CTF Appeals

15  on March 28, 2007, Plaintiff alleges that the food manager is not honoring Plaintiff's medical

16  chrono to receive Jewish kosher meals. (2d Am. Compl. at Ex. B, B44.) This appeal was

17  screened out at the informal level of review on March 30, 2007, because the appeals coordinators

18  determined that it duplicated appeal log number CTF-07-00286. (Decl. Santiago at 2 ¶ 5c; 2d

19  Am. Compl. at Ex. B, B48.) This appeal was also screened out at the third, or Director's Level,

20  of review on June 12, 2007, because Plaintiff failed to submit the appeal through the second level

21  of review before seeking third level review. (Decl. Grannis at 3 ¶ 6b, Ex. C; 2d Am. Compl. at

22  Ex. B, B49.)

23

24      **C.    Plaintiff Failed to Exhaust the Appeal Concerning His Eighth Amendment
             Claim.**

25          In his Second Amended Complaint, Plaintiff admits that he failed to follow prison

26  grievance procedures for the submission of his inmate appeal concerning the alleged denial of a

27  medically adequate diet. Therefore Plaintiff failed to properly exhaust. *Jones v. Bock*, 127 S. Ct.

28  at 922.

1    The prison grievance process in California consists of an informal level of review and

2    three formal levels of review. Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal

3    level, or Director's Level, is final and exhausts all available administrative remedies. *Id.* §§

4    3084.1(a), 3084.5(e)(2). To initiate the inmate appeal process, inmates must use a CDC Form

5    602 to describe the problem complained of and the action requested. *Id.* § 3084.2; (*see* Decl.

6    Grannis at Ex. B). Inmates must submit appeals to the Appeals Coordinator at the institution

7    within fifteen working days of the event or decision being appealed, or of receiving an

8    unacceptable lower level appeal decision. Cal. Code Regs. tit. 15, §§ 3084.2(c), 3084.6(c);

9    (Decl. Santiago at 2 ¶ 2).

10

11    **1.    Plaintiff Failed to Follow Instructions from the Appeals Coordinator
          to Challenge a Screen-Out.**

12    The Appeals Coordinator screened out Plaintiff's unnumbered appeal (concerning the

13    alleged refusal to serve Plaintiff Jewish kosher meals) at the informal level of review on March

14    30, 2007, because the Appeals Coordinator determined that the appeal duplicated appeal log

15    number CTF-07-00286. (Decl. Santiago at 2 ¶ 5c; 2d Am. Compl. at Ex. B, B48.) Plaintiff

16    alleges in his Second Amended Complaint that he disagrees with this action. (2d Am. Compl. at

17    6 ¶ V.) The screen-out form, however, states that if an inmate believes the screen-out is in error,

18    then the inmate should return the screen-out form to the Appeals Coordinator with an

19    explanation of why the inmate believes the screen-out to be in error, along with supporting

20    documents. (Decl. Santiago at 2 ¶ 4; 2d Am. Compl. at Ex. B, B48); *see also* Cal. Code Regs. tit.

21    15, § 3084.3(d). Although there is a typewritten paragraph on the screen-out form that appears to

22    have been written by Plaintiff in which he discusses the screen-out, this paragraph is not dated

23    and there is no indication whether it was written at the time of the screen-out or if it was added

24    for litigation purposes. (2d Am. Compl. at Ex. B, B48.) Moreover, Plaintiff's Exhibit B does

25    not contain any response to this paragraph from the Appeals Coordinator, which indicates that

26    Plaintiff did not challenge the screen-out.

27    Thus Plaintiff failed to comply with the prison grievance procedure for challenging a

28    screen-out. Cal. Code Regs. tit. 15, § 3084.3(d). Because Plaintiff failed to comply with prison

Not. of Motions & Motions to Dismiss & Summ. J.                    *R. Bratton v. B. Curry, et al.*
                                                                   C 07-2928 JSW

1    grievance procedures, he failed to properly exhaust. *Jones v. Bock*, 127 S. Ct. at 922.

2

3            **2.**      **Plaintiff Failed to Exhaust His Appeal Through the Requisite Third Level of Review.**

4           Plaintiff failed to exhaust this appeal to the requisite third level of review.  This appeal

5    was not only screened out at the informal level of review as discussed above, but it was also

6    screened out at the third, or Director's Level, of review.  (Decl. Grannis at 3 ¶ 6b, Ex. C; 2d Am.

7    Compl. at Ex. B, B49.)  The appeal was screened out at the third level of review because Plaintiff

8    failed to submit it through the second level of review before seeking third level review, as

9    required by prison regulations.  Cal. Code Regs. tit. 15, § 3084.5(d); (Decl. Grannis at 3 ¶ 6b, Ex.

10   C; 2d Am. Compl. at Ex. B, B49).  Thus Plaintiff failed to exhaust this appeal through the

11   requisite third level of review, and he failed to comply with the prison grievance procedures for

12   filing a third-level appeal.  Therefore he failed to properly exhaust.  Cal. Code Regs. tit. 15, §§

13   3084.1(a), 3084.5(e)(2); *Jones v. Bock*, 127 S. Ct. at 922.

14           **D.**      **Plaintiff Could Not Possibly Have Exhausted His Supplemental Claim *Before* He Filed this Action Because the Allegations in the Supplemental Claim**

15               **Occurred *After* Plaintiff Filed this Action.**

16          Under the PLRA, "no action shall be brought . . . until such administrative remedies as

17   are available are exhausted."  42 U.S.C. § 1997e(a).  Courts have interpreted this provision to

18   mean that exhaustion of administrative remedies must be completed before the complaint is filed.

19   *McKinney*, 311 F.3d at 1199.  The Ninth Circuit recognizes that "the PLRA requires that a

20   prisoner exhaust his administrative remedies before submitting any papers to the federal courts,"

21   noting that "[t]he bottom line is that a prisoner must pursue the prison administrative process as

22   the first and primary form for redress of grievances."  *Vaden v. Summerhill*, 449 F.3d 1047,

23   1048-50 (9th Cir. 2006).  Allowing prisoners to exhaust administrative appeals any later in the

24   process "would be inconsistent with the objectives of the [PLRA]."  *Id.* at 1051.

25          Here, Plaintiff brought this action on June 5, 2007.  In his supplemental claim, Plaintiff

26   alleges that unspecified defendants changed his classification status after this action was filed.

27   (Docket No. 16 at 2 ¶ 4.)  In a request for injunction that this Court denied, Plaintiff previously

28   made similar but substantially more detailed factual allegations concerning this claim, in which

Not. of Motions & Motions to Dismiss & Summ. J.          *R. Bratton v. B. Curry, et al.*
                                                  C 07-2928 JSW

1  he alleged that unspecified defendants changed his classification status during his annual

2  classification review on March 26, 2008—which occurred almost 10 months after Plaintiff

3  brought this action. (*See* Docket No. 21 at 2:7-13; Docket No. 14 at 1.)

4     Therefore, because the alleged actions in Plaintiff's supplemental claim occurred almost

5  10 months *after* he brought this action, he cannot possibly have exhausted the supplemental

6  claim *before* he brought this action. 42 U.S.C. § 1997e(a); *McKinney*, 311 F.3d at 1199; *Vaden*,

7  449 F.3d at 1048-50. Thus Plaintiff's supplemental claim should be dismissed for failure to

8  exhaust under the PLRA.

9                                   **II.**

10         **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

11     **A.    Legal Standard for Summary Judgment.**

12     Summary judgment is appropriate "where there is no genuine issue as to any material

13  fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material

14  facts are those that may affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477

15  U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of

16  identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence

17  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

18     Once the moving party meets its initial burden, entry of summary judgment is mandated

19  where the nonmoving party fails to "set forth specific facts showing that there remains a genuine

20  issue for trial" and evidence "significantly probative as to any [material] fact claimed to be

21  disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (internal quotation marks

22  omitted) (citing *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

23     If the evidence presented by the nonmoving party is "merely colorable, . . . or is not

24  sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

25  (internal citations omitted; citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam), and

26  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). There is no triable issue

27  of fact unless the nonmoving party submits sufficient evidence for a jury to return a verdict in the

28  nonmoving party's favor. *Id.* at 249.

1

2      **B.    Plaintiff's Eighth Amendment Claim Fails Because CDCR's Religious
              Vegetarian Diet Has Not Had Any Adverse Effects on His Health and it is
3              Adequate to Maintain His Health.**

4           In its Order of Service, this Court found that Plaintiff stated an Eighth Amendment claim

5    "with regard to the deprivation of a diet including meat that complies with his religious dietary

6    restrictions and meets his nutritional needs with regard to his health condition" against all

7    Defendants.  (Docket No. 8 at 4:16-20.)  Even if, arguendo, the Court finds that Plaintiff

8    exhausted his Eighth Amendment claim, then Defendants are still entitled to judgment as a

9    matter of law on this claim.  The Eighth Amendment's prohibition on cruel and unusual

10   punishment extends to deliberate indifference to serious medical needs and to adequate food.

11   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

12   Here, Plaintiff's Eighth Amendment claim fails because CDCR's religious vegetarian diet has

13   not had any adverse effects on his health and it is adequate to maintain his health.

14                **1.    Defendants Were Not Deliberately Indifferent to Plaintiff's Serious
                        Medical Needs Because CDCR's Religious Vegetarian Diet Has Not
15                      Had Any Adverse Effects on Plaintiff's Health.**

16          To establish an Eighth Amendment claim arising out of inadequate medical care, a

17   prisoner-plaintiff must prove "deliberate indifference to serious medical needs." *Estelle,* 429

18   U.S. at 104.  In the Ninth Circuit, deliberate indifference is shown by a two-prong test.

19   *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) *overruled on other grounds by WMX*

20   *Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

21          First, the plaintiff must show an objectively "serious medical need" by demonstrating that

22   "failure to treat a prisoner's condition could result in further significant injury or the

23   'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing *Estelle*, 429 U.S. at 104).

24          Second, the plaintiff must show that the defendant acted with deliberate indifference,

25   which is a subjectively "sufficiently culpable state of mind" that is more than mere negligence

26   but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511

27   U.S. 825, 837 (1994).  This second prong is satisfied by showing: (a) a purposeful act or failure

28   to respond to a prisoner's pain or possible medical need; and (b) harm caused by the indifference.

Not. of Motions & Motions to Dismiss & Summ. J.                              *R. Bratton v. B. Curry, et al.*
                                                                              C 07-2928 JSW

1 | *Jett v. Penner*, 439 F.3d 1091,1096 (9th Cir. 2006). Indeed, a prison official is only liable under

2 | the Eighth Amendment if the official "knows that inmates face a substantial risk of serious harm

3 | and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at

4 | 847. Allegations of negligence, gross negligence, civil recklessness, and medical malpractice are

5 | all insufficient to establish a constitutional violation. *Toguchi v. Chung*, 391 F.3d 1051, 1060

6 | (9th Cir. 2004); *Farmer*, 511 U.S. at 836.

7 |
8 |
> **a.   Plaintiff's Medical Records Show that He Does Not Have an Objectively Serious Medical Need to Eat Meat and that Defendants' Alleged Indifference Did Not Harm Him.**

9 |     In his Second Amended Complaint, Plaintiff alleges that he has Chronic Lymphocytic

10 | Leukemia (CLL) for which he needs to eat meat and take iron supplements. (2d Am. Compl. at

11 | 5-6, 8-9, 12, 14.) As this Court noted in its Order of Service, Plaintiff alleges that Plaintiff's

12 | "dietary and health *preference* is to have a religiously permissible diet that includes meat."

13 | (Docket No. 8 at 5:17-19; emphasis added.) Plaintiff's medical records, however, show that he

14 | does not have an *objectively* serious medical need to eat meat, because the vegetarian diet he

15 | receives under CDCR's Religious Diet Program (*see* Cal. Code Regs. tit. 15, §§ 3054-3054.4)

16 | has not resulted in any injury or unnecessary and wanton infliction of pain. Moreover, Plaintiff's

17 | medical records show that the vegetarian diet has not had any adverse effects on his health.

18 |
19 |
> **1.   Plaintiff's Blood Tests Show He Does Not Have Any Nutritional Deficiencies and that His CLL is Stable.**

20 |     Laboratory results from Plaintiff's blood tests between 2002 and 2008 show that his liver,

21 | kidney, blood sugar, albumin, iron, cholesterol, and triglycerides are all within normal range.

22 | (Stmt. Facts at ¶ 4.) This indicates that Plaintiff does not have any nutritional deficiencies and is

23 | consuming adequate amounts of protein and iron, among other nutrients. (Decl. Chudy at 2 ¶ 4.)

24 | This further indicates that his vegetarian diet has not adversely affected him. (*Id.*) Additionally,

25 | Plaintiff's blood tests show that his white blood count has remained elevated but stable since

26 | 2002, which indicates that his CLL is not worsening. (Stmt. Facts at ¶ 6.) Finally, Plaintiff's

27 | medical records show that he has thalassemia trait, which means that he is likely to have an iron

28 | level that is in the low to normal range but which is considered adequate for an individual with

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

1  thalassemia trait. (Stmt. Facts at ¶ 7.) If people with thalassemia trait take iron supplements,

2  then periodic blood tests are needed to monitor their iron levels so that excessive iron does not

3  cause liver toxicity. (Stmt. Facts at ¶ 7.)

4       Thus Plaintiff fails to show that he has an objectively serious medical need to eat meat,

5  the denial of which could result in significant injury or the unnecessary and wanton infliction of

6  pain. Plaintiff also fails to show that he has been harmed by Defendants' alleged indifference.

7  Therefore Defendants' are entitled to summary judgment on Plaintiff's claim as a matter of law.

8

     **2.**    **CDCR's Religious Vegetarian Diet Does Not Violate the Eighth**

9            **Amendment Because it is Adequate to Maintain Health.**

10       Although Plaintiff has a preference for a diet that includes meat, CDCR's religious

11  vegetarian diet is adequate to maintain his health. "Adequate food is a basic human need

12  protected by the Eighth Amendment." *Keenan*, 83 F.3d at 1091 (citing *Hoptowit v. Ray*, 682

13  F.2d 1237, 1246 (9th Cir. 1982)). "While prison food need not be 'tasty or aesthetically

14  pleasing,' it must be 'adequate to maintain health.'" *Id.* at 1091 (citing *LaMaire v. Maass*, 12

15  F.3d 1444, 1456 (9th Cir. 1993)). Thus for purposes of the Eighth Amendment, it is irrelevant

16  whether Plaintiff has a dietary preference for meat, as long as the vegetarian diet he is offered is

17  adequate to maintain his health.

18

     **a.**    **CDCR's Religious Vegetarian Diet Exceeds Minimum**

19            **Nutritional Requirements.**

20       CDCR's religious vegetarian diet is more than adequate to maintain health. It contains

21  2898.63 calories and exceeds 100 percent of the nutritional standards for men, as set by the Food

22  and Nutrition Board of the Institute of Medicine, National Academy of Sciences, for: calories,

23  protein, carbohydrates, dietary fiber, fat, cholesterol, vitamin A, thiamin-B1, riboflavin-B2,

24  niacin-B3, vitamin B6, vitamin B12, vitamin C, vitamin D IU, folate, calcium, iron, magnesium,

25  sodium, and zinc. (Stmt. Facts at ¶ 8.) More specifically, the religious vegetarian diet provides

26  176 percent of the recommended daily protein and 280 percent of the recommended daily iron.

27  (Stmt. Facts at ¶ 8.) Therefore the religious vegetarian diet exceeds minimum nutritional

28  requirements and is thus adequate to maintain health under the Eighth Amendment.

Not. of Motions & Motions to Dismiss & Summ. J.          *R. Bratton v. B. Curry, et al.*
                                                 C 07-2928 JSW

1

2
       **b.**     **CDCR's Religious Vegetarian Diet is Adequate to Maintain Plaintiff's Health.**

3        The religious vegetarian diet is also adequate to maintain Plaintiff's health.  As discussed

4 in part II.B.1.a. above, Plaintiff's medical condition does not require that he consume meat for

5 the following reasons: (1) his liver, kidney, blood sugar, albumin, iron, cholesterol, and

6 triglycerides are all within normal range, which indicates that he is receiving adequate nutrition;

7 (2) his white blood count is elevated but stable, which means that his CLL is not worsening.

8 (Stmt. Facts at ¶¶ 4-6.)  These factors taken together suggest that the religious vegetarian diet is

9 adequate to maintain Plaintiff's health despite his diagnosis of CLL.  Thus the religious

10 vegetarian diet does not deprive Plaintiff of adequate nutrition in violation of the Eighth

11 Amendment.  Therefore Defendants are entitled to summary judgment on Plaintiff's claim as a

12 matter of law.

13

14
    **C.**    **Plaintiff's RLUIPA Claim Fails Because He Fails to Meet His Burden of Proof to Demonstrate Prima Facie Evidence of a "Substantial Burden" on His Religious Exercise.**

15        In its Order of Service, this Court recognized Plaintiff's RLUIPA claim, but noted that

16 "[w]hile it is *certainly questionable whether the failure to provide halal meat constitutes a*

17 *substantial burden* on the exercise of Plaintiff's religion, the claim is sufficient to be served

18 against the . . . Defendants." (Docket No. 8 at 6:16-18.)  Indeed, Plaintiff fails to meet his burden

19 of proof to demonstrate a prima facie claim that CDCR's Religious Diet Program constitutes a

20 substantial burden on the exercise of his religious beliefs.

21        The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides that, "No

22 government shall impose a substantial burden on the religious exercise of a person residing in or

23 confined to an institution . . . even if the burden results from a rule of general applicability,"

24 unless the government demonstrates that the burden is "in furtherance of a compelling

25 governmental interest" and "is the least restrictive means of furthering that compelling

26 governmental interest."  42 U.S.C. § 2000cc-1(a).

27        To state a claim under RLUIPA, the plaintiff bears the burden of proof to demonstrate a

28 prima facie claim that a policy constitutes a substantial burden on his exercise of religion.

Not. of Motions & Motions to Dismiss & Summ. J.                        *R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

14

1  *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005).  If the plaintiff establishes a

2  substantial burden, then the defendants must establish that the policy serves a compelling

3  government interest.  *Id.* at 995-96.  If the defendants establish that the policy serves a

4  compelling governmental interest, then the defendants must also establish that the policy is the

5  least restrictive alternative to achieve that interest.  *Id.* at 998.  Here, Plaintiff fails to meet his

6  burden to prove that he has been substantially burdened in the exercise of his religion, and so the

7  RLUIPA analysis should end after the "substantial burden" inquiry.  *Warsoldier*, 418 F.3d at 995.

8

9  **1.    Plaintiff Fails to Meet His Burden of Proof that a Vegetarian Diet
       Constitutes a Substantial Burden on His Religious Exercise.**

10      RLUIPA defines "religious exercise" as "any exercise of religion, whether or not

11  compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  RLUIPA

12  does not define "substantial burden," but the Ninth Circuit has explained that "a burden is

13  substantial under RLUIPA when the state denies an important benefit because of conduct

14  mandated by religious belief, thereby putting substantial pressure on an adherent to modify his

15  behavior and to violate his beliefs." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (citing

16  *Warsoldier*, 418 F.3d at 995) (internal quotation marks and brackets omitted).

17

18  **a.    Plaintiff Fails to Demonstrate *Any* Burden on His Religious
       Exercise.**

19      Plaintiff does not allege *any* sort of burden—substantial or insubstantial—on the exercise

20  of his religion.  Instead, Plaintiff alleges medical rather than religious concerns.  As this Court

21  observed in its Order of Service, "Plaintiff has not alleged that his religion requires the

22  consumption of meat, only that his dietary and health preference is to have a religiously

23  permissible diet that includes meat."  (Docket No. 8 at 17-19.)

24      More specifically, Plaintiff alleges that "[a] substantial burden was imposed on plaintiff

25  due to exercising of his religion."  (2d Am. Compl. at 10.)  Plaintiff does not clearly allege the

26  cause or effect of the alleged substantial burden, but he requests relief in the form of an

27  injunction to receive the "diet as first ordered by the doctor" and any medication or vitamin

28  supplements he may need.  (*Id.*)  Thus Plaintiff alleges an unsubstantiated medical concern, *not* a

Not. of Motions & Motions to Dismiss & Summ. J.                    *R. Bratton v. B. Curry, et al.*
                                                                     C 07-2928 JSW

15

1  substantial burden on his religious exercise.

2      Additionally, Plaintiff alleges that in violation of RLUIPA's section 2000cc-2(b) he was

3  not given vitamins or diet supplements for his alleged anemic condition. (2d Am. Compl. at 11.)

4  Here again, Plaintiff alleges an unsubstantiated medical concern and *not* a substantial burden on

5  his religious exercise.

6      Thus Plaintiff fails to demonstrate any sort of burden on the exercise of his religion.

7              **b.    Plaintiff Fails to Demonstrate that the Religious Vegetarian**
               **Diet Has Any Adverse Health Effects that Substantially**
8              **Burden His Religious Exercise.**

9      The Ninth Circuit has found that "adverse health effects from a prison diet can be relevant

10  to the substantial burden inquiry." *Shakur*, 514 F.3d at 888-89. In *Shakur*, the prisoner-plaintiff

11  alleged that the prison's vegetarian diet had an adverse health effect that burdened his religious

12  exercise because it gave him gas and irritated his hiatal hernia, which in turn interfered with the

13  state of "purity and cleanliness" he needed for Muslim prayer. *Id.* at 882.

14      By contrast, Plaintiff does not allege that CDCR's religious vegetarian diet has any

15  adverse health effects that burden his religious exercise in any way. Instead, as discussed

16  immediately above, Plaintiff only alleges unsubstantiated medical concerns. His medical records

17  show, however, that: (1) his liver, kidney, blood sugar, albumin, iron, cholesterol, and

18  triglycerides are all within normal range, which indicates that he is receiving adequate nutrition;

19  and (2) his white blood count is elevated but stable, which means that his CLL is not worsening.

20  (Stmt. Facts at ¶ 4-6.) Thus Plaintiff fails to demonstrate that the religious vegetarian diet has

21  any adverse health effects that substantially burden his religious exercise.

22              **c.    CDCR's Religious Diet Program Does Not Intentionally Put**
               **Significant Pressure on Plaintiff to Abandon His Religious**
23              **Beliefs.**

24      Plaintiff does not allege that CDCR's Religious Diet Program puts substantial pressure on

25  him to modify his behavior in violation of his religious beliefs. Indeed, a burden is substantial

26  when the state "denies an important benefit because of conduct mandated by religious belief,

27  thereby putting substantial pressure on an adherent to modify his behavior and to violate his

28  beliefs." *Warsoldier*, 418 F.3d at 995 (internal brackets omitted).

Not. of Motions & Motions to Dismiss & Summ. J.                      *R. Bratton v. B. Curry, et al.*
                                                                     C 07-2928 JSW

1    In *Warsoldier*, a Native American inmate refused to cut his hair in compliance with the

2  prison's grooming policy because it violated his tribe's religious beliefs. *Id.* at 991-92. The

3  prison responded by taking several punitive measures against the inmate, including: loss of out-

4  of-cell time; imposition of additional duty hours; reclassification into a workgroup with lesser

5  privileges; loss of telephone privileges; expulsion from vocational classes; removal from

6  leadership roles; prohibitions on yard recreation; reduced monthly draw at the prison store;

7  prohibition from making special purchases at the prison store. *Id.* at 992. The Ninth Circuit held

8  that by withholding such important benefits, the prison substantially burdened the inmate's

9  religious exercise by intentionally putting significant pressure on him to abandon his religious

10  beliefs by cutting his hair. *Id.* at 995-96.

11    Unlike the prisoner-plaintiff in *Warsoldier*, Plaintiff does not allege that he has been

12  subjected to any sort of punishment or loss of privileges for following his religious beliefs.

13  Moreover, CDCR's Religious Diet Program is not punitive in nature. *See* Cal. Code Regs. tit.

14  15, §§ 3054-3054.4. Instead, the Religious Diet Program is intended to accommodate inmates

15  who have been determined to require a religious diet. *Id.* at §§ 3054(a), 3054.3(b)(1).

16    Plaintiff fails to meet his burden of proof under RLUIPA to demonstrate prima facie

17  evidence of a substantial burden on his religious exercise because: (1) he fails to demonstrate *any*

18  burden on his religious exercise; (2) he fails to demonstrate that the religious vegetarian diet has

19  any adverse health effects that substantially burden his religious exercise; and (3) CDCR's

20  religious diet program does not intentionally put significant pressure on Plaintiff to abandon his

21  religious beliefs. Therefore the RLUIPA analysis should end here, and summary judgment

22  should be granted in Defendants' favor as a matter of law.

23    **2.    CDCR Has a Compelling Governmental Interest in Saving the Prohibitive Expense of Providing Jewish Kosher Meals to Muslim**

24    **Inmates.**

25    A plaintiff's failure to meet his burden of proof to demonstrate a substantial burden on

26  religious exercise ends the RLUIPA analysis in the defendants' favor. *Warsoldier*, 418 F.3d at

27  995. Although the RLUIPA analysis in this action need not proceed further, Defendants assert

28  —for the sake of preserving their argument—that there is a compelling governmental interest for

Not. of Motions & Motions to Dismiss & Summ. J.                          *R. Bratton v. B. Curry, et al.*
                                                                          C 07-2928 JSW

1    the policy at issue.

2    More specifically, Defendants assert that the cost of providing a Jewish kosher diet to all

3    Muslim inmate who requested it would be prohibitive. The Supreme Court has acknowledged

4    that "'maintain[ing] good order, security and discipline, *consistent with consideration of costs*

5    *and limited resources,*' is a compelling government interest." *Shakur*, 514 F.3d at 889 (citing

6    *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)) (emphasis added).

7    Here, the food costs per day, per inmate are as follows: (1) the religious vegetarian diet

8    costs $2.6268; (2) the regular diet costs $2.8066; and (3) the Jewish kosher diet costs $7.1840.

9    (Stmt. Facts at ¶ 9.) There are approximately 10,000 Muslim inmates in the CDCR system.

10   (Stmt. Facts at ¶ 10.) If all 10,000 Muslim inmates chose the religious vegetarian diet option,

11   then this would cost $9,587,820 per year, and if only 5,000 Muslim inmates chose the religious

12   vegetarian diet option, then this would cost $4,793,910. (Decl. Summersett at 2 ¶ 3a.) By

13   contrast, if all 10,000 Muslim inmates chose the Jewish kosher diet, then this would cost

14   $26,221,600 per year, and if only 5,000 Muslim inmates chose the Jewish kosher diet, then this

15   would cost $13,110,800 per year. (Decl. Summersett at 2 ¶ 3b.)

16   Thus the Jewish kosher diet would cost CDCR $16,633,780 more per year than the

17   religious vegetarian diet for 10,000 Muslim inmates. (Decl. Summersett at 2 ¶ 3c.) For only

18   5,000 Muslim inmates, the Jewish kosher diet would cost CDCR $8,316,890 more per year than

19   the religious vegetarian diet. (*Id.*) This substantial cost makes it prohibitively expensive to offer

20   the Jewish kosher diet to Muslim inmates.

21

22   **3.    CDCR's Religious Vegetarian Diet is the Least Restrictive Alternative to Accommodate Muslim Inmates.**

23   If the defendants establish that the policy serves a compelling governmental interest, then

24   the next step is for the defendants to establish that the policy is the least restrictive alternative to

25   achieve that interest. *Warsoldier*, 418 F.3d at 998. Here, Defendants assert for the sake of

26   preserving their argument that CDCR's religious vegetarian diet is the least restrictive alternative

27   to accommodate Muslim inmates because it exceeds nutritional requirements, contains no pork

28   or pork derivatives, and provides fish at least once a week. (Stmt. Facts at ¶¶ 11-12.)

Not. of Motions & Motions to Dismiss & Summ. J.                                          *R. Bratton v. B. Curry, et al.*
                                                                                        C 07-2928 JSW

1

      **D.**    **Plaintiff's Equal Protection Claim Fails Because CDCR's Religious Diet**

2               **Program is Reasonably Related to Legitimate Penological Interests.**

3       The Ninth Circuit has instructed that the proper standard for analyzing a prisoner-

4 plaintiff's Equal Protection claim is the four-part balancing test required by *Turner v. Safley*.

5 *Shakur*, 514 F.3d at 891 (citing *Turner v. Safley*, 482 U.S. 78 (1987)).  Under the *Turner* test,

6 Plaintiff "can succeed only 'if the difference between the defendants' treatment of him and their

7 treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'" *Shakur*,

8 514 F.3d at 891 (citing *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)).  This is a

9 lower standard than RLUIPA's "compelling government interest" standard.  *Warsoldier*, 418

10 F.3d at 998.

11

12       **1.**    **CDCR Has a Valid, Rational Connection Between its Religious Diet Program and its Legitimate Governmental Interests.**

13       The first *Turner* factor requires a "'valid, rational connection' between the prison

14 regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at

15 89-90.  Here, the legitimate government interest is the efficient administration the Religious Diet

16 Program to accommodate the religious dietary needs of thousands of prisoners within CDCR's

17 budgetary constraints.  The Ninth Circuit has recognized that administrative and budgetary

18 concerns are legitimate governmental interests in the context of the *Turner* test as applied to

19 religious diets.  *See Resnick v. Adams*, 348 F.3d 763, 769 (9th Cir. 2003).  Under the Religious

20 Diet Program, CDCR strives to "make *reasonable efforts*, as required by law, to accommodate

21 those inmates who have been determined . . . to require a religious diet." Cal. Code Regs. tit. 15,

22 § 3054(a) (emphasis added).  As discussed in part II.C.2. above, it would be prohibitively

23 expensive and would cost at least an additional $8,316,890 more per year to provide the Jewish

24 kosher diet instead of the religious vegetarian diet to a minimum of five thousand Muslim

25 inmates. (Decl. Summersett at 2 ¶ 3c.)  Thus the first *Turner* factor is satisfied.

26 ///

27 ///

28 ///

Not. of Motions & Motions to Dismiss & Summ. J.                *R. Bratton v. B. Curry, et al.*
                C 07-2928 JSW

1

2         **2.**    **Plaintiff Does Not Allege that He Lacks Alternative Means to Practice His Religion.**

3         The second *Turner* factor requires the Court to consider whether there are alternative

4 means by which an inmate can practice his religion. *Turner*, 482 U.S. at 90. Here, although

5 Plaintiff alleges that the prison has interfered with the practice of his religion by providing him

6 with a vegetarian diet, he does not allege that he has been denied any other means of practicing

7 his religion. (*See* 2d Am. Compl. at 4-14.) Defendants assert that, as required by prison

8 regulations, they "make every reasonable effort to provide for the religious and spiritual welfare

9 of all interested inmates." Cal. Code Regs. tit. 15, § 3210(a). Therefore Plaintiff is afforded

10 alternative means by which he can practice his religion. Thus the second *Turner* factor is

11 satisfied.

12         **3.**    **Providing Jewish Kosher Meals to Over Five Thousand Muslim Inmates Would Have a Substantial Impact on the Allocation of Prison Resources.**

13

14         The third *Turner* factor requires the Court to consider "the impact accommodation of the

15 asserted constitutional right will have on guards and other inmates, and on the allocation of

16 prison resources generally." *Turner*, 482 U.S. at 90. As discussed above in parts II.C.2. and

17 II.D.1., providing Jewish kosher meals to upwards of five thousand Muslim inmates would have

18 a substantial impact on the allocation of prison budgetary resources. Thus the third *Turner* factor

19 is satisfied.

20

21         **4.**    **Plaintiff Fails to Meet His Burden to Show Any Obvious, Easy Alternatives to the Religious Diet Program.**

22         The fourth and final *Turner* consideration is the availability of "obvious, easy

23 alternatives." *Turner*, 482 U.S. at 90. The burden is on the prisoner who is challenging the

24 regulation—not on the prison officials—to show that there are obvious, easy alternatives to the

25 policy. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987). Here, Plaintiff does not

26 allege that his religion requires the consumption of meat, only that his dietary and health

27 preference is to have a religiously permissible diet that includes meat. (Docket No. 8, 5:17-19.)

28 As discussed above, Plaintiff is being provided with a diet that includes fish and vegetarian meat-

Not. of Motions & Motions to Dismiss & Summ. J.

*R. Bratton v. B. Curry, et al.*
C 07-2928 JSW

1  alternatives that are adequate to maintain his health.  Moreover, Plaintiff fails to meet his burden

2  to show any obvious, easy alternatives to the Religious Diet Program that would accommodate

3  his perceived dietary needs and Defendants' legitimate penological interests.  Thus the fourth

4  *Turner* factor is satisfied.

5  　　　　Because Defendants have satisfied all four *Turner* factors, they are entitled to summary

6  judgment on Plaintiff's claim as a matter of law.

7  　　　　**E.**　　**Plaintiff Fails to State Any Claim Against Defendants Curry or Hill Because**
   　　　　　　　　**there is No *Respondeat Superior* or Vicarious Liability Under 42 U.S.C. §**
8  　　　　　　　　**1983.**

9  　　　　Plaintiff fails to state any claim against Defendants Curry or Hill because he alleges only

10 *respondeat superior* or vicarious liability.  The law is clear that there is not any *respondeat*

11 *superior* or vicarious liability in actions, such as this one, that are brought under 42 U.S.C. §

12 1983.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 692 (1978); *Palmer v. Sanderson*, 9

13 F.3d 1433, 1437-38 (9th Cir. 1993).  A supervisor, like wardens Curry or Hill, is "only liable for

14 constitutional violations of his subordinates if the supervisor participated in or directed the

15 violations, or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040,

16 1045 (9th Cir. 1989).

17 　　　　Here, however, Plaintiff does not allege that Defendants Curry or Hill participated in or

18 directed the alleged constitutional violations.  Instead, Plaintiff merely alleges that Defendant

19 Curry is responsible for religious and medical programs at CTF, and Defendant Hill is

20 responsible for religious programs at CTF.  (*See* 2d Am. Compl. at 3, 6, 8.)  Plaintiff does not

21 make any other allegations against either Defendant Curry or Hill.  Thus Plaintiff fails to state a

22 claim against Defendants Curry or Hill under a theory of either *respondeat superior* or vicarious

23 liability, and so Defendants Curry and Hill should be dismissed with prejudice.

24 　　　　**F.**　　**Plaintiff Fails to State a Claim Against Defendants Grannis or Aboytes for**
   　　　　　　　　**their Handling of Inmate Appeals Because There is No Constitutional Right**
25 　　　　　　　　**to a Prison Grievance System.**

26 　　　　Plaintiff fails to state a claim against Defendants Grannis (as Chief of CDCR's Inmate

27 Appeals Branch) or Aboytes (as Appeals Coordinator) because, as this Court noted in the Order

28 of Service, there is no constitutional right to a prison administrative appeal or grievance system.

Not. of Motions & Motions to Dismiss & Summ. J.　　　　　　　　　　　　*R. Bratton v. B. Curry, et al.*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　C 07-2928 JSW

1   *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th

2   Cir. 1988); (*see also* Docket No. 8 at 6-7; 2d Am. Compl. at 3-5).  Under California Code of

3   Regulations, title 15, prisoners have a purely procedural right to prison appeals that cannot form

4   the basis of a constitutionally cognizable liberty interest and therefore is not actionable under 42

5   U.S.C. § 1983.  *See Smith v. Nonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli v.*

6   *Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Ramirez*, 334 F.3d at 860; (*see also* Docket No. 8

7   at 6-7).  Additionally, this Court already dismissed Plaintiff's claim that his appeal was denied.

8   (Docket No. 8 at 6-7.)

9                                                    **III.**

10              **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

11         The defense of qualified immunity applies to "government officials performing

12   discretionary functions," who are "generally are shielded from liability for civil damages insofar

13   as their conduct does not violate clearly established statutory or constitutional rights of which a

14   reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation

15   omitted).  The rule of qualified immunity "provides ample protection to all but the plainly

16   incompetent or those who knowingly violate the law."  *Burns v. Reed*, 500 U.S. 478, 494-495

17   (1991) (citation omitted).

18         In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a sequence of

19   questions to be considered in determining whether qualified immunity is applicable.  First, a

20   Court must consider this threshold question: "Taken in the light most favorable to the party

21   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

22   right?"  *Id.* at 201.  If no constitutional right was violated under the alleged facts, the inquiry ends

23   and defendants prevail.  *Id.*  If, however, "a violation could be made out on a favorable view of

24   the parties' submissions," then the next sequential step is to ask whether the right was clearly

25   established.  *Id.*

26   ///

27   ///

28   ///

1

**A.    Defendants are Entitled to Qualified Immunity Because Plaintiff Failed to Show Defendants' Actions Violated a Constitutional Right.**

2

3      The first step under *Saucier* is to determine whether, taken in the light most favorable to

4  the party asserting the injury, the facts alleged show that the officer's conduct violated a

5  constitutional right. *Saucier*, 533 U.S. at 201. As discussed in detail in section II above, Plaintiff

6  fails to show that any Defendants' actions violated his constitutional rights.

7

**B.    Defendants are Entitled to Qualified Immunity Because It Would Not Have Been Clear to Reasonable Officials that the Conduct at Issue was Unlawful.**

8

9      Assuming arguendo that a constitutional violation could be found, then the next step

10  under *Saucier* is to ask whether the right violated was a clearly established right. More

11  specifically, the "relevant, dispositive inquiry in determining whether a right is clearly

12  established is whether it would be clear to a reasonable officer that his conduct was unlawful in

13  the situation he confronted." *Id.* at 202.

14      Additionally, the Ninth Circuit has held that to prevail on a motion for summary

15  judgment a plaintiff "must put forward specific, nonconclusory factual allegations that establish

16  improper motive causing cognizable injury." *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001)

17  (internal quotation marks omitted) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

18  The Supreme Court further held that to deny summary judgment any time a material issue of fact

19  remains on a claim could undermine the goal of qualified immunity to "avoid excessive

20  disruption of government and permit the resolution of many insubstantial claims on summary

21  judgment." *Saucier*, 533 U.S. at 202 (citing *Harlow*, 457 U.S. at 818).

22      Here, it would not have been clear to a reasonable officer that such conduct as alleged

23  was unlawful in the context of providing Plaintiff with a religious vegetarian diet under CDCR's

24  Religious Diet Program. As described in section II above, Plaintiff's medical records show that

25  religious vegetarian diet did not adversely affect Plaintiff's health, and that the religious

26  vegetarian diet is more than adequate to maintain plaintiff's health. Additionally, it would not

27  have been clear to Defendants that the regulations at issue were unlawful, if in fact they were.

28  Moreover, Plaintiff did not put forward any specific, nonconclusory factual allegations that

Not. of Motions & Motions to Dismiss & Summ. J.                              *R. Bratton v. B. Curry, et al.*
                                                                                      C 07-2928 JSW

23

1   establish improper motive causing cognizable injury.

2       Thus because Defendants' actions did not violate a constitutional right, and because it

3   would not have clear to Defendants that their actions may have been unlawful in the context of

4   providing Plaintiff with a religious vegetarian diet, Defendants are entitled to qualified immunity.

5                                           **CONCLUSION**

6       Defendants respectfully request that the Court: (1) dismiss Plaintiff's Eighth Amendment

7   and supplemental claims for failure to exhaust his administrative remedies under the PLRA; (2)

8   grant summary judgment in Defendants' favor on Plaintiff's Eighth Amendment, RLUIPA, and

9   Equal Protection claims; (3) dismiss Defendants Curry, Hill, Grannis, and Aboytes for failure to

10  state a claim; and (4) grant Defendants qualified immunity.

11      Dated:  June 23, 2008

12                          Respectfully submitted,

13                          EDMUND G. BROWN JR.
                            Attorney General of the State of California

14                          DAVID S. CHANEY
                            Chief Assistant Attorney General

15                          FRANCES T. GRUNDER
16                          Senior Assistant Attorney General

17                          MICHAEL W. JORGENSON
                            Supervising Deputy Attorney General

18

19

20                          LISA SCIANDRA
21                          Deputy Attorney General
                            Attorneys for Defendants Curry, Chudy, Hill, Hedrick,
22                          Raghunath, Grannis, Aboytes and Klein

23  40244034.wpd
    SF2008400402

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **R. Bratton v. B. Curry, et al.**

No.:    **C 07-2928 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 23, 2008,** I served the attached

**NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

**DECLARATION OF P. SANTIAGO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS w/Exhibits A & B**

**DECLARATION OF N. GRANNIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS w/Exhibits A , B, & C**

**DECLARATION OF J. CHUDY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT w/Exhibits A, B, & C**

**DECLARATION OF L. SCIANDRA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT w/ Exhibit A & B**

**DECLARATION OF S. SUMMERSETT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT w/Exhibit A**

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Ronald Bratton (J-45341)
Correctional Training Facility
P.O. Box 689
Soledad, CA  93960-0689


I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on **June 23, 2008,** at San Francisco,
California.


| | |
|---|---|
| M. Luna | *M. Luna* |
| Declarant | Signature |

20118287.wpd