Orginal

RONALD BRATTON J-45341
CTF-NORTH      LA 120L
P.O. BOX 705
SOLEDAD, CA 93960-0705

FILED

AUG 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**RONALD BRATTON**
      Plaintiff,

**v**

**BEN CURRY, et al.,**
      Defendants

Case No. C 07-2928 JSW

**ANSWER TO MOTION AND MOTION
TO DISMISS AND OPPOSITION TO
REQUEST FOR DISMISSAL FOR
SUMMARY JUDGEMENT**

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTORITIES                          iv

PROCEDURAL BACKGROUND

SUMMARY OF ARGUMENT                                          i,ii

ISSUE STATEMENT                                             1,2

STATEMENT OF FACTS                                         2-14

ARGUMENT

I.  PLAINTIFF'S EIGHT AMENMENT AND SUPPLEMENTAL CLAIMS
SHOULD NOT BE DISMISSED DUE TO STATUTE WHICH DOES
NOT REQUIRE EXHAUSTION.

A.  THE PLRA ONLY REQUIRES 'A GOOD FAITH ATTEMPT' ON THE
PART OF PRISONER TO GO RESOLVE ISSUES.

B.  DEFENDANT'S OWN REFUSALS TO PROCESS APPEALS, WITH NO
GOOD FAITH ATTEMPTS TO RESOLVE ISSUES AT LOWER LEVELS

C.  PLAINTIFF FOLLOWED RULES IN FRCP

1.  Plaintiff followed instructions of 'EMERGENCY
APPEAL' and received no good faith from defendants

2.  Plaintiff followed rules set by CDCR in attempt to
resolve issues at all levels

D.  Defendants are voicing 'fanthom law' which does not
apply to plaintiff's case.

II  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT

A.  The defendant's request does not meet legal standard
for summary judgement.

B.  Plaintiff's Eighth Amendment Claim Stands because it
has nothing to do with the Vegetarian Diet.

1.  Defendant's were "Deliberately Indifferent to Plain-
health and formed and executed a conspiracy to do so.

a.  Plaintiff's Medical Records show that every six
months or so, that plaintiff has been treated for
various infections, and is currently doing so.

b.  The scientific information and research show that
Person's who have Plaintiff's disease need 'special
treatment and should take all known precautions
against possible harm.  To not do so is reckless.

c.  Defendants denied, delayed, and interfered with
plaintiff's medical care, "fully knowing his Chronic

incurable Desease required special attention.

1. Defendants belie truth to say plaintiff's Blood tests does not show nutritional deficiencies. If tests were normal, he wouldn's have a disease.

2. CDCR's refusial to supply plaintiff "prescribed medical diet, **simply because he is Muslim is "constitutional violation.**

    a. CDCR's Vegetarian Diet does not meet "Special Needs Diet" that helps plaintiff fight off infections

    b. Vegetarian Diet does not supply nutrients needed needed to allow patient's own immuno-system to synthesize immunoglobulins needed for "only possible known" immunotherapy to possibly cure disease.

C. The defendants failure to provide plaintiff with prescribed diet after they were put on notice the plaintiff was ADA qualified individual and his care was an "Reasonable Accommodation." The fact the "permanent Medical Diet" was rescinded, Because plaintiff was Muslim, makes it an RLUIPA CLAIM.

1. The response to plaintiff, after it was disclosed plaintiff was Muslim bears 'concrete proof' of bias and prejudice.

    a. The plaintiff is only concerned with the "known effects on his health 'scientifically proven' to nuture his health. The "Red Herring Defense" of defendants have no ball on this court.

    b. The officials and their "allies in the conspiracy to take the "medically prescribed diet""tailored" for his condition" was 'deliberate and vindictive.'

D. CDCR's Equal Protection Violation defense fizzles out when you see that inmates at CMC, San Quentin, Solano, Vaccaville and I have been told Donovan (if I's wrong on that one please forgive me) all have policies whereby, "anyone who wants to can have the Kosher Diet, with permission from the Director of CDCR, while an ADA patient cannot, because he's Muslim tells you they are playing three-card-monty in trying not to be found liable in plaintiff's case for the flagrant abuse of his rights.

1. CDCR has "No Legitimate, Valid, or Rational interest in depriving "One" person who would be medically helped by his diet.

2. Plaintiff alleges, by reason of fact and rational thought "but for not his religion, he would have been eating "The Koser Meal" at CTF since March 2007."

3. The CDCR has been serving the Kosher Meal to whomsoever has wanted one, with-out it being medically necessary, How would one-person break the bank, if not by this suit.

E.   Plaintiff states that Defendants Curry acted as supervisor
     &/or cohort of Those directly involved in denying plaintiff
     his constitutional right to have a medically prescribed Diet,
     and knew, or should have known the rescindion of the medi-
     cally prescribed diet, "because plaintiff was Muslim was
     unconstitional." Defendant Hill was acting in official
     capacity as appeals coordinator, and or deputy warden as
     was also responsible for overseeing appeals.

F.   Plaintiff's were responsible for upholding constitutional
     rights of prisoner, which were ignored by officials. includ-
     ing themselves.

III. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

A.   The United States Supreme Court has held that violations
     of federal law that occur pursant to an official government
     policy or custom the municipality, (CDCR). State of CA) and
     its officials may be found liable when their conduct
     violates clearly established statuary or cohnstituional
     rights of which a reasonable person would have known.

B.   When the Cook refused to serve the prescribed diet for ADA
     "qualified plaintiff" for his health, the clear answer is
     they not only violated plaintiff's "right to medically a
     needed diet, but the "conspiracy that occurred after," then
     added another violation by opening "The United State Mail
     prior to mailing it," was a violation of federal law,"
     The perimeters for handling "legal mail are clear. If
     the officials thought there was anything in the mailed
     item which should'nt have been there, then the mial should
     have opened in the presence of the plaintiff. With-out a
     doubt the defendant's knew or should have known, opening
     the United States Mail, Not inter-office mail, reading it
     and taking "adverse actions" against the plaintiff was
     a flagrant violation of his rights.

C.   All of the individuals named in plaintiff's complaint knew
     they were violating plaintiff's rights doing what they did.
     They just cavalierly dismissed his rights, as they always do
     with no thought of repercussions, because "they feel they can.

POINTS AND AUTHORITIES

The Information and Authorities of Drafted Suit have been gleaned from "Chronic Lymphocytic Leukemia," "CLL A Guide for Patients and Families," "Immunotherapy," all booklets put out by the Leukemia & Lymphoma Society, and "The Merck manual of Medical information," and "The John Hopkins Medical Handbook."

**Case Citings and References;**

U.S.C, Const. Amend. 1;Religious Land Use and Institutionalized Persons Act pf 2000.§ 3(a) 42 U.S.C.A § 2000cc 1(a); 15 CCR§§ 2062(m),3287(b)3315(f), Mayweather v Newland 314 F.3d 1062(9th Cir 2002) Mayweathers v Newland 258 F.3d 930,934-35 (9th Cir 2001) CIV. S96-1582LKKGGH [FN1] 328F.Supp.2d 1086, Alameida v Mayweathers, 540 U.S. 815, 124 S.CT. 66,157 L.Ed. 2d 30 (2003, Thomas v Gunther, 32 F.3d 1258, 1260 (8th Cir. 1994), L4th Amend. U.S.C. 42 U.S.C. 1983, California Code of Regulations Title 15 3004(c), Holy Quran sura 5, ayat 3,5,;. California Penal Code § 2653, Williams v Morton, 343 F.3d 212 (3rd Cir 2003) Id pg 221 Id at 90-91, 107 S.Ct. 2254, Turner v Safley, 482 U.S. 78, 107Sct 2254, (6 Led 2d 64 (1987), Will v Michigan Dept of State Police, (1989 491 U.S. 58 [109 S.ct. 2304, 105 L.ed. 2nd45], Estell v Gamble, (1976) 429 U.S. 294, 302 [111 S.ct. 2321; 115 L.Ed. 2d 64, American With Disabilaties Act, and The Rehabilitation Act of 1973, 42 U.S.C. § 12131 et Seg (ADA) 29 U.S.C. § 794 (Rehabilitation Act) Pensylvania Dept of Corrections v Yeskeg, (1998) 524 U.S. 206 [118 S.Ct. 1952, 141 L.Ed. 2d 215]

* **"THERE ARE NUMEROUS CASE CITINGS AND AUTHORITIES THROUGH-OUT THIS ANSWER IN THEIR APPROPRIATE PLACES. They are not listed in the memorandum as plaintiff never had 'law library time' to include them. "Only 2 days library time since deadline given."**

RONALD BRATTON J-45341
CTF-NORTH      LA 120L
P.O. BOX 705
SOLEDAD, CA 93960-0705

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RONALD BRATTON,                         Case No. C 07-2928 JSW
             Plaintiff,

                                        ANSWER TO MOTION AND
                                        AND MOTION TO DISMISS AND
                                        OPPOSITION TO REQUEST
V                                       FOR SUMMARY JUDGEMENT

BEN CURRY, et al.,
             Defendants,

TO ALL DEFENDANTS IN THE ABOVE NAMED CASE:

PLEASE TAKE NOTICE that ; Prisoners are not required to
exhaust administrative remedies if they seek monetary damages
for which the administrative process allows no reward. See Rum-
bles v Hill, 182 F.3d 1064, 1069 (9th Cir.1999)  Plaintiff is
seeking injunctive, declaratory, and monetary in this case.
Please also note that the plaintiff has sought administrative
remedies all along in this case, and all along the defendants
have evaded the issue as well as address issues that do not
concern plaintiff.  The defendants falsification of information
is appalling and it is a mystery to me why they have just not
conceded the case as everything in plaintiff's claims are true
and documented information.  A claim to an administrative re-
remedy is not a constitutional issue, and this claim is founded

-1-

securely on violations of plaintiff's constitutional rights.
Plaintiff's RLUIPA Claim began in January of 2007. This is when
a flagrant violation of 'Equal Protection' claim occurred by of-
ficials when they 'voiced' a policy of not allowing Muslim Inmates
to participate in the "Kosher Diet Program" while Jewish and other
inmates were, and it was introduced as "Policy by the CDCR first
by the Jewish Rabbi, then the business manager, with the warden,
appeals coordinator, and Sacramento officials agreeing." I have
been in the CDCR for 14 years, and I have known since 2004 Muslim
inmates at other institutions in the CDCR have made 'settlement
agreements where," any Muslim as well as any inmates in those in-
stitutions received 'blanket OK's to anyone who wanted to participate.'

Prisoners have "an absolute right, guarantee by the Eighth Amend.
to the U.S. Constitution to be free from cruel and unusal punish-
ment. Unlike other federal const. rights, which must be balanced
against security and other concerns when applied to prisoners, viola-
tions of the Eighth Amendment can never be justified. "The Eighth
Amendment is not a 'maybe' or 'sometimes' proposition Toussant v
McCarthy (9th Cir.1986) 801 F.2d 1080, 107S.Ct 2462. (exhibit B 28-36)

To determind whether a deprivation violates the Eighth Amendment,
a court must apply a two-part test with an objective and subjective
component (1) objective component' Seriousness of deprivation, Whether
the deprivation was sufficiently serious. (in plaintiff's case, pos-
sibility of life-threatening) Serious or significant injury is not
always required for an Eighth Amendment Claim. A condition which has
not caused any present injury may still violate the Eighth Amend-
ment if there is "imminent danger" and the condition is sure or very
likely to cause serious illness and needless suffering. Helling v
McKinney (1993) 509 U.S. 1,3[113 S.Ct.2475; 125 L.Ed.2d.,156. Accord-

to the Ninth Cir. Court of Appeals, what the general public would think about a particular condition is more important than expert opinion. (Hoptowit v Ray (9th Cir.1982)682 F.2d 1237; see also Keenan v Hall (9th Cir.1996) 83F.3d 1083 (numerous issues that can raise Eighth Amend concerns. (2) Subjective Component' Prison Officials state of mind; Whether the prison officials conduct was "wanton." Wanton means with "deliberate indifference." Johnson v Lewis (9th Cir.2000) 217 F.3d 776 Estelle v Gamble (1976)429 U.S.97, 104(97S.Ct.285; 50 L.Ed.2d 251] Wilson v. Seiter (1991)501 U.S. 294.302 "wanton" in general prison conditions for example concerning serious medical and mental health needs. "A prison official acts with deliberate indifference if he or she knows of and disreguards an inhuman condition or action that constitutes an excessive risk to inmate's health or safety." A prison official's knowledge can be proved by showing that he or she had actual notice of the offending condition or action (prisoner should present complaint in writing at the time condition occurs, or by showing that a condition or excessiv risk was obvious Farmer v Brennon (1994) 511 U.S. 828,842-843[114 S.Ct.1970; 128 L.Ed.2d 811] (exb. B 28-36)

    The cook 'Raghunath' (CTF food manager) refused to serve the plaintiff the "medically prescribed" diet when the accommodation chrono was presented to him. PC § 2653;   Medical treatment required to prevent injury or serious harm to health of prisoner; (a)"If a physician employed by the Department of Corrections or the Department of the Youth Authority certifies in writing (the plaintiff's chrono) that a particular medical treatment is required to prevent a violation of Section 147,673,2650, or 2652, or is required to prevent serious and imminent harm to to the health of a prisoner, the order for that particular medical treatment may not be modified or canceled by any employee of the department without the approval of the Chief Medical

-3

Officer of the institution." (exb. B 35-36)

There was no 'if's, buts or any's in petitioner's case.  The
cook refused to honor the doctor's order.  After the plaintiff filed
an citizen's complaint against the cook.  Actully, as plaintiff tried
to file a 'Staff Complaint' against the cook, via the U.S. Mail, the
mail was opened before it was mailed by only God knows who?  The
mail was intercepted before its' mailing, and a conspiracy ensued
which ended up with the "Medically Prescribed Diet" being recinded,
**"BECAUSE THE PLAINTIFF WAS MUSLIM"** Noone cared or thought about the
reason the diet was approved, just a spiteful move on the part of
all concerned to "punish the plaintiff, because he was Muslim, and
Muslims at CTF could not have the 'kosher diet' at any cost." Their
was "no legitimate penal interest served by the move, just overt
racism and religious intolerence." The 'spirit of the offenders was
clear when the Business Manager, B.Hedrick, told the plaintiff that
"They didn't follow or obey the law, but what CDCR says." Making
plain that it official policy to abuse the rights of prisoners and
not worry about the consequences.  Just as now the defendants attorneys
misstateing facts, and perjuring information concerning these instances.

The statement about "the other Eighth Amendment violation, that
the plaintiff filed premature belies the truth also.  First the claim
was filed by plaintiff as an 'emergency appeal' because plaintiff
was about to be moved into a dangerous and 'adverse' situation, simply
as retaliation for filing the civil suit against the particulars in
this case.  There is **"NO CLOSE PROXIMITY"** shootings to be encased in
the Mandatory 28 points, and Level III housing of plaintiff.  The Court
has found In Re Samble H030843 In the Court Of Appeal of The State
Of California, Sixth Appellate District (Santa Clara County Super.
Ct. NO. 75735)that "Samble's crime does not measure up to the fore-

-4-

going instances of an "execution style murder" (refering to instances
where the victim is shot from close range in the forehead in circum-
stances showing no evidence of a struggle, which are the archetypical
execution style killings of a conscious victim where the perpetrator
kills, at close range, a victim who is under his or her complete
physical control and who has been left with no way to resist or
escape) There is nothing in the record to support the inference that
the victim was under Samble's complete physical control as with a
kneeling or prone victim. There is no indication of the direction-
ality of the shot, i.e. if the bullet was fired from above the vic-
tim, or how close Samble was to the victim when he shot him. Accord-
ingly, the Board's recitation of the facts of the crime as leading
to the conclusion that this was an execution style murder lead us to
conclude that the Board's decision was arbitrary and capricious."

    In this plaintiff's case the same is true. Nothing was alleged
but what was needed to convict the plaintiff by the minimally necessary
to convict him.   The counselor does not tell the truth when she says
"I said I shot my attacker/deseased at close range." I have always
made it plainly clear that "I was running backwards, away from my
attacker **when he grabbed my weapon making it discharge, and conse-
quently he was shot in the head."** He was not in my control at any
time of my encounter with him, which in fact resulted in his demise.

    As a result of the action of this civil case, this claim came
about and is being presented via Rule 15(d) "a transaction or occur-
rences or events which have happened since the date of the plead-
ing sought to be supplemented. (c) RELATION BACK OF AMENDMENTS.
(2) the claim asserted in the amended pleading arose out of the con-
duct, or occurrence set forth or attempted to be set forth in the

original pleading. The plaintiff was forced to go to a Level III yard which has been in lock-down prior to his being sent hear for six months for Whites and Northern Hispanics, and following a riot, the last month and a half for Black and Southern-Hispanic inmate. Plaintiff has not been able to earn prison pay for the barest of condiments nor permitted visits, store, telephone and/or any privilege that have been taken as retaliation for trying to obtain his prisoner rights. There is no other choice but that the plaintiff seek redress from the court. (exb. F 60-69)

"Liberty interest" in state inmates to retain or attain particular security or custody classification may be created by state law having very specific quality; state law's effect must be to place substantive limitations on official discretion thereby giving rise, at limits imposed upon discretion, to legitimate claims of entitlement to classification sought and administratively denied. U.S.Const.

Constitutionally protected "liberty interest" in state prison inmates as to their custody and confinement classifications are only created by state law regimes which in end effectively say to inmates: "If facts A,B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable security or custody classification than you presently," you are legally entitled not to be placed in a less favorable classification than you now have." U.S.C.A. Const. Amend.14  (quotes from Slezak v. Evatt, 21 F.3d 590, (C.A.4.(S.C.)1994) (exb. F 60-62)

The Title 15, 3375(a) "The classification process shall be uniformly applied commencing upon reception of a person committed to the custody of the director and shall continue throughout the time the individual remains under the director's jurisdiction" If such restrictions are not placed on the inmate upon him coming through the rection center, then he does not fit within that standard.

-6-

CDCR Title 15, 3375.2(7) "An inmate serving any life term shall not be housed in a Level I or II facility if any of the following case factors are present: (A) The commitment offense involved multiple murders, unusual violence or execution-type murders or received high notoriety." (None of the classifications appear in plaintiff's 2nd degree murder conviction) **NO CLOSE PROXIMITY INCLUSSIONS** PRISONER' RIGHTS; Corrections officials retaliated against inmates who utilized legal procedures and court properly imposed sanctions against state's attorneys for acting in bad faith. GOMEZ et al., v VERNON, et al, BRANT v CARL No. 99-35930 (D.C.No.CV-91-00299-LMB United States Court of Appeals, Ninth Cir, July 10,2001

"The record demonstrates that continued retaliation for inmates' exercise of their constitutional rights is a real threat. As found by the district court, the inmates have proven that the Department retaliated against them for exercising their right to access the courts on a number of occasions spanning a decade, and that the re-taliation was pursuant to a custom or policy. Despite supervisors' knowledge of this pattern, no investigation, no discipline and no discipline and no corrective action followed. Now the Department claims that its employees will not retaliate again. The district court however, found little comfort in that proclamation because no policy or mechanism is in place to back up that promise. Cf. United States v Odessa Union Warehouse CoOp. 833 F.2d 172, 176 (9th Cir. 1987) ("Courts must be aware of attempts to forstall injunctions through remedial efforts and promises of reform that seem timed to anticipate legal action, especially when there is the likelihood of recurrence")

Just as the case mentioned above, in plaintiff's case "no officer or employee was ever investigated or displined for retalitory action,

despite the fact the warden knew of, or should have known of, hence
the reason for the UNITED STATES MAILING of the Employee/Staff Com-
plaint which was never answered by the way, despite the wardens'
"knowledge of the complaint."

The defendant's attorney's then have the gall to send a copy
of the numerous complaints the plaintiff has sent through to the
Sacramento Appeals administration, with no help no matter how blatant
the violation, or how much harm the actions, or in some cases in-
action was being done to inmate. The plaintiff is "one of the "ADA'
qualified individuals for who was represented in the "Plata Decision."
Case No. C01-1351 TEH, The U.S. District Court from which the CDCR
has been recorded as having five years of "Complete and utter fail-
ure" by the defendants to cure the constitutional deficiencies in
their delivery of medical care to prisoners. Yet CDCR feels it's
an honor to mistreat chroniclly-ill prisoners like myself;  It is
beyond reason that a willing and competent institution would not be
able to show-over a period of several years and with the court vir-
tually screaming at every step of the way- significant improvements
in the hiring of medical help. Yet that is precisely what has hap-
pened in their case, and it is why the appointment of the receiver
ship became necessary. The defendants' attorney's only try to ' flim-
flam' the court for not covering their responsibilities of the treat-
ment of patients like me. Over the same years that cover that moni-
toring by the court, I have been imprisoned at CTF in the CDCR.

The defendant's arguments are bold and irresponsible. First they
try to turn the court's head to a subject that is not part of the
plaintiff's claims, the vegatarian diet. Then they make as about
a ridiculous a claim as can be made, and a first grade student can
tell you, if you dismiss one of the food groups the body will suffer.

-8-

All of the top scientists researchers and doctors agree that "Their are certain proteins the body produces, immunoglobulins. Immunoglobulins are proteins that help the body fight infection. CLL patients may not have enough of these proteins. With more advanced CLL, low levels of immunoglobulins may be a cause of repeated infections. The plaintiff has had repeat instances of infection all of the time he has been in the CDCR. In fact he just got over being treated for one this week. The defendants argument that the vegaratian diet is doing no harm to the plaintiff. That is about a bold-face-speculation as can be made. The plaintiff's disease operates at the molecular level. If your knowledge is that great, even though the greatest scientists on on the planet cannot tell how and why this disease operates, and can document how the various treatments act after a cytogenetic analysis.

These top scientists say that **"THE ONLY POSSIBLE CURE FOR BLOOD DISEASES PROBABLY WILL BE FOUND IN THE BODY'S OWN IMMUNE SYSTEM."** They also state thet **"THEIR ARE CERTAIN PROTEINS THAT THE BODY CAN ONLY PRODUCE BY EATING MEAT."** How come now, a cook and the attorney's know what is best for the plaintiff's health. (See exhibit: **D 45-51)**

The attorney's for the defendants keep referring to claims and a menu which is not a part of plaintiff's claim at all. The plaintiff had a **"permanant reasonable accommodation chrono for the kosher diet, based on his medical need."** It was rescinded, only after the cook refused to serve it to him, in defiance of the laws, and only after a conspiracy ensued, after his religious affiliation was known. **"(exb. C41 )**

The authorities that be, took a staff complaint, ignored it and retaliated against the inmate, first by denying him a proper diet for his condition, then transfering him to a higher level institution with none of the privileges he had earned for the 14 years "Good Behavior." None of the officials named in he suit, nor the enities named,

the CDCR, nor the State of California are exempt by 'qualified immun-
ity. If any names were left out of the original suit, or what part
they played in the 'conspiracy to deny plaintiff's rights.'
It was merely because the plaintiff named them as Jane or John Does,
because he was unaware of exactly all persons known. The defendants
kept requesting time extensions, even before discovery could be asked
for by plaintiff. It is the common practice used by the CDCR as
stated earlier in this brief; **Discovery should connect these.**
MALIK v BROWN, 71 F.3d 724,730 (9th Cir.1995) Qualified immunity in-
applicable because inmate's 1st Amendment interest in using religious
name clearly established)

HARRIS v VICTORIA INDEP. SCH.DIST. 168 F.3d 216,223 (fth Cir 1991)
2-step analysis for whether police entitled to qualified immunity
(1) whether plaintiff violation of clearly established donstitutional
right, and (2) whether conduct objectively reasonable (1) objective
component-seriousness of deprivation (2) subjective component, prison
official's state of mind

PENROD v ZAVARAS, 94 F.3d 1399,1404-05 (10th Cir.1996) Qualified im-
imunity inapplicable because prison officials violated well-established
law that prison officials many not harass or retaliate against inmates
for exercising right to petition government for redress of grievances.
McMILLIAN·v JOHNSON, 88F.3d 1554,1570 (11th Cir.1996) qualified
immunity inapplicable because "clearly established law" and should
have known that coercing witness to testify falsely would violate
arrestee's constional rights.

    The Supreme Court has held that a municipality maybe liable
for damages under 1983 for violations of federal law that occur
pursuant to an official government policy or custom. "The employee
 must be acting pursuant to an official policy before the municipal-

-10-

ity may be found liable." See CITY OF CANTON v HARRIS, 489 U.S. 489

378,387 (1989) Municipality may be held liable under § 1983 for fail-

ure to train police officers only when failure to train amounts to

deliberate indifference to rights of persons when police interact

and when policy caused injury. (In plaintiff's case policy that ex-

cludes Muslims, only at certain prisons) **(exhibit A20)**

PEMBAAR v CINCINNATI, 475 U.S. 469 (1986) County may be held liable

under § 1983 for prosecutor's actions when prosecutor acted as final

decision maker for County Krulik v Board of Education 781 F.2d 15,23

(2nd Cir.1986) dictum(municipality maybe held liable when municipal

supervisors knowingly acquiesced official's behavior because indivi-

dual official's act rises to level of "policy" for purposes of § 1983

Carter v Philadelphia 181 F.3d 339,350 (3d Cir.1999) District Attorney's

Office is part of County and therefore is not immune as arm of State.

    The defendant's either mistate plaintiff's claims, lies about

them, and/or makes arguments that do not apply to plaintiff's claims,

seeking to confuse the court about the issues bought forth.The plain-

tiff's first claim is against the officials, and the CDCR, and state

because the officials named make policies or allow "customs that serve

as policies" to be implemated which are clearly against prisoner's

constitutional rights.  The refusal of the Jewish Rabbi to allow the

Muslim inmates participate in the kosher food program, because they

were Muslim began a "Equal Treatment" violation which plaintiff first

filed on.  After the plaintiff was given the 'kosher meal chrono' as

a therapeutic aid,' needed because of his medical condition, Chronic

Lymphocytic leukemia," a third violation of plaintiff's constiturional

rights ensued. (The RLUPIA Violation, being the second) That third

violation was the refusal of the 'cook' to serve the 'prescribed

diet to plaintiff which endangered his health and openly defied Penal

Code § 2653. The plaintiff then, 'Filed (or attempted to file a "Staff Complaint," legally through the United States Mail, to the warden of the prison to announce to him that his constitutional rights to medical care was being denied,"; Not a '602' Appeal, but a "Staff Complaint." The officials known, and unknown then proceeded to deny and obstruct plaintiff's access to the courts by, Acting in a conspiracy of opening and reading the mail before its' mailing, then acting in retaliation against plaintiff by having the Chief Medical Officer "rescind the permanent diet chrono, because plaintiff is Muslim." "RIGHT TO ACCESS TO COURT: Constitution guaaantees prisoners the right to meaningful access to court. BOUNDS V SMITH 430 u.s. 817,824,828 919770 prisoners have fundamental constitutional right to adequate, effective and meaningful access to courts to challange violations of constituional rights. JOHNSOV V AVERY, 393 U.S. 483,485 9L969) PRISONER'S RIGHT OF ACCESS TO COURT MAY NOT BE DENIED OR OBSTRUCTED AND PRISON OFFICIALS MAY NOT RETALIATE AGAINST PRISONERS WHO EXERCISE THAT RIGHT." LEMON V DUGGER, 931 F.2d 1465,1467-68 "Right of acess violated because prison officials opened,read, and confiscated letter and photo contents of mail 'marked legal' and bearing attorney's return address; if concerned about contraband, officials may open and inspect mail in presence in presence of Inmate. Prison officals may not interfere with a prisoner's exercise of his First Amendment rights unless the interference is reasonably related to a legitimate penal interest; Nor may prison officials retaliate against a prisoner for exercising his first Amendment rights of Freedom of Religion. Prisoners must demonstrate actual injury resulting from a denial of access to court in order to allege a constitutional violation ('plaintiff was removed from Kosher food program, "The day he gave it to prison officials, to be processed and mailed through the U.S. mail.")(exhibit C41)

See e.g. BROOKS    DOLINA , 826 F.2d 1266,.    (3d Cir 1987) "1st

Amendment violated because prisoner disciplined for writing letter

to NAACP complaining about prison guards conduct. "

After the prison officials engaged in conspiracy to deny plain-

tiff his constitutional right of excess to court. (He could not make

his claim of denial of medical without notifying warden, who is super-

visor of inmate's care at this level) and medical care, the complaint

them included "deliberate indifference," because of the 'cold-calculat-

ed response to plaintiff's notice of constitutional violation of

rights by cook"by filing "Staff Complaint." (which was never answered,

and said by the appeals coordinator to be the same appeal denied

in January. Plaintiff clearly writes on Form 695 that he had not

filed such a complaint because the cook had not made the violation

until March. As usual staff complaints are usually changed to some-

thing else by the coordinator, and not filed as inmates file them.

Then they argue points never bought up by the inmate and cry that

you did not follow procedures. A complaint and a '602' are two

different actions, and not to be hidden in double-talk as the de-

fendants are doing in this case. **(exhibit B 28-36)**

The defendants are arguing against plaintiff's right to medi-

cal ordered diet because he was refused it in a 'deliberatelly

indifferent" manner, without consideration to his health needs.

In <u>VICTOR WAYNE COOPER V State of California; Gray Davis et als</u>

Settlement agreement  was made in november 2003, whereby "Any in-

mate who subits a request for participation it the Kosher Diet

porgram can." No other restrictions.   (see Exhibit A **27 a-d.)**

Case No. CO2-3712 JSW(agrement filed 12/18/2003) This agreement

covered several instutions in the CDCR; California men's Colony

CA State prison Solano, CA State prison Folsom. on Jan.14.San Quen-

tin was added   in <u>Shakur v Schrio</u>,(05-16705 99th Cir,1/23/08)**(A27e)**

-13-

Again the CDCR imposed a substantial burdon on my free exercise of my religion by first making a policy against Muslims being included in the kosher meal program at CTF-Soledad, against "Equal Protection Rights," then again when "deliberate indifference" occurred to plaintiff's health care by multiple staff, and official monitoring CDCR officials, and CDCR policy. **(exb. A19-20)**

The retaliation against plaintiff by the arbitrary and adverse placement of him in a higher security prison, without any concern for his safety or rights to a program that is run by excessive lockdowns is cruel and punishment. The plaintiff is locked down 24 hours and seven days a week. He has no exercise periods and has suffered physical and psychological injury including excessive stress, anxiety depression, and musclel cramps. Plaintiff has not had any oppoortunity to rehab from his recent surgery. Being locked down with another person who passes gas excessively, does not bathe or wash his hands even after using the toilet, anytime. The plaintiff had a pay-number job position where he was placed, and has not had a pay period, or went to the canteen for cosmetics, toiletries, and/or food items, used the telephone, had access to visits since the so-called "non-adverse move." All because he is an African-American, and for retailiation because he has filed this suit in the first place.

> "Prison officials also cannot transfer or otherwise punish a prisoner through classification action solely in retaliation for the prisoner's exercise of constitutional protected rights." PRATT v ROWLAND (9th Cir. 1995) 65 F.3d 802 RIZZO v DAWSON (9th Cir. 1985) 778 F.2d 527 LUCERRO v HENSLEY (C.D. Cal 1996) 920 F.Supp. 1067: SCOTT v RENO (C.C. Cal 1995) 902 F.Supp.1190

Even inmates in adminstrative segretation, those who have seriously mis-behaved receive normal continuing outdoor exercise periods, canteen and visits while those in general population do not. There is common knowledge of the damaging effect on human beings due to extended denial of fresh air and excercise.

-14-

On May 30,2008 several Southern Hispanic inmates attacked a single African-American inmate at CTF-North. After several African-American inmates moved to the the person being attacked a small melee encued. The entire yard of African-American and Southern Hispanic inmates have been locked-down every since. This plaintiff was transferred to this yard in retaliation for fighting for his rights, and it has been known that this yard "Operates in that manner" 365 days a year "before he was transfered here," for 'non-adverse reasons'? These pervasive lock-downs has caused the plaintiff to endure the indignities of this lock-down, "merely because he is African-American and "combative to the degree he files grievances angainst his captors. The lock-down is unconstitutional because it is based solely on ethnicity and not on individual actions of us other prisoners. The two combatants were immediately removed from the yard, and a week later, those people went home!!! We are still suffering!!!    WALKER v GOMEZ (9th Cir 2004) 370 F.3d 969 ESCALERA v TERHUNE (Del NOrte Sup.CT) No.HCPB 00-5164, Decisions and orders re: Habeas Corpus., filed Dec. 10,2002

It took plaintiff six years to get a paying job position since he came to CTF due to prejudice and constitional rights violations, all documented and charged in his civil suits. Plaintiff was not even given a 'choice of prisons he would have liked to go. He was told he was waiting for a medical facility transfer, then forced to come to this"no program-program" prison.

The plaintiff states that defendants should not be awarded 'summary judgement' because all plaintiff's accusations are true. The defendants do not even address any of plaintiff's charges and only obsess over their "mis-direction of the issues."

Dated: August 17,2008

*Ronald Bratton*
RONALD BRATTON

-15-

# EXHIBIT   "A"

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No. 07-00286    Category 9-14

1. _____ CTF-S         1. FEB 8 2007
2. _____               2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Bratton, Ronald | J-45341 | C-Wing Porter | C-W 133 L |

A. Describe Problem: On 12-27-06 In a meeting for Islamic discussion we (Muslims and other holders of Special Religious Diet cards were told a new system for religious diet was being introduced. We were told we could request to have "Jewish Kosher Diet" plates or "Vegitarian Meals." According to Islamic Diet conferred on us by God, the Jewish diet though Kosher, but not "Halal", it is never the less meets a standard of acceptibility for us as our diet does for them (Sura 5 ayats 3-5) Since the CDC does not offer "Halal" Diets, it is the lesser of evil that us Muslims defer to the Kosher Diet. We we told the Jewish Chaplain or adviser would approve our meal selection by January 1, 2007 that did not happen and the "food manager" refused to serve Muslims "Kosher Meals" on 1/2/07.

If you need more space, attach one additional sheet. (SEE Attached Sheet (side #2))

B. Action Requested: That you the Jewish Chaplain (or adviser) OK the Kosher meals for Muslims who have requested such. I'm sure you can confer with the Iman of the institution and find it proper to do so. Just as we Muslims acknowledge and respect the law of Moses and detary laws, we know the reciprocal is acknowledge for us Muslims of the Holy Quran's diet.

Inmate/Parolee Signature: Ronald Bratton                Date Submitted: 1-2-07

C. INFORMAL LEVEL (Date Received: 1-9-07)

Staff Response: Op. 67 clearly states that the Kosher Food Diet is only available for Jewish inmates who wish to practice the standards of Judaism. Therefore as you aren't Jewish your appeal is denied.

Staff Signature: _____    Date Returned to Inmate: 1-9-07

AWBS OFFICE

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This argument has already been found in the U.S. District Court to be invalid. (Northern District, Cooper vs State of CA. case no. CO2 3712 JSW (2003) "No later than 60 da from the full execution of the settlement agreement. All inmates who request participation will be allowed to" (see attached sheet)

Signature: Ronald Bratton    RECEIVED    Date Submitted: Jan. 18, 2007
                                          CDC Appeal Number:

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    RECEIVED    RECEIVED
                                                                   JAN 2 3 2007

RECEIVED
FEB 14 2007

FEB 0 7 2007

CTF APPEALS
AWBS OFFICE    AWBS OFFICE    CTF APPEALS

07-00286

A16

I don't have a OP's, '05,' but I do know that prejudice and favoritism is being practed by the exclusion of 'Muslim inmates' from the Kosher diet program under implementation here at CTF, Soledad, Central, in defiance of the California Code of Regulations Title 15, 3004(c)

"Inmates, parolees and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap."

And also in violation of federal regulation "Right to equal treatment "14th Amendment U.S.C., also 42 U.S.C. 1983

"Prisoners donot  forfeit all equal protection rights upon incarceration, however, practices that result in unequal treatment among prisoners are permissible 'if such practices bear a rational relation to a legimate penal interest,' To successfully claim a violation of the right to equal treatment, an inmate must prove that **(1) similary situated inmates are treated differently by the government, and (2) there is no rational basis for the dissimilar treatment."**

Thomas v. Gunter, 32 F. 3d 1258, 1260 (8th Cir. 1994) "Equal protection violated when inmates of one religion denied access to lodge for prayer that prisoners of other religion used 'if denial of access not rationally related to legitimate penological interests'."

"Prison officials must afford prisoners opportunity to exercise our religious freedoms.

The Title 15 states "Any inmate who claims to require a religious diet shall be responsible for completing a CDCR form 3030 (09/05), Religious Diet Request which is incorporated by reference, and submitting it to the appropriate chaplain."
This inmate did that, and was told the 'Jewish Chaplain' would determine whether or not he would be allowed to participate in the program, which was strange since the Muslim Chaplain was supposed to know what dietary restrictions applied to Muslims, and whether or not it was appropriate for the Muslims to be in the program.  The institution does not have a 'Halal diet program' specificly designed for the Muslim inmates, but the Title 15 3054(a) rule states "Each institution shall make reasonable efforts, as required by law, to accommodate those inmates who have been determined to require a religious diet." Religious meals shall not be restricted from inmates based on their classification. (being Muslim is a classification), or housing placement. The institution cannot qualify an inmate's religious diet based specifically on its' own whim.' The law states, "A prisoner asserts his or her right of religious liberty by establishing that his or her beliefs are sincere and religious in nature." This is done in Islam by stating the "Declaration of Faith," that there is no God but God (Allah), and Muhammad is his messenger." Then we pray the five daily prayers, pay the zaqat, fast, and go on hajj if possible, at least once in life.  Jewish Rabbis do not determine the perimeters of our religion. The revelation from God (Allah) determines our diet as given in "The Holy Quran," the last in a series of revelations from him.  We acknowledge the revelations to the prophets Jesús, Moses, David, Adam, and Muhammad, but the mean spitited "people of the Book" do not acknowledge God's(Allah's) last revelation, and are unable to judge us

(over)

A17

in matters in religion. The ideology of intollerant and impious people is not 'rational and reasonable,' and the fanatical enmity they have has shown because the Jewish Rabbi has denied all Muslim inmates the right to participate in the kosher diet program. The two diet religious programs now being implemented in CTF-Central do not specifically address the "Muslim diet standard," (Halal meats) therefore persons of Islamic faith must. 'bear the oppression' of our captors and 'make-do' with what is offered nearest to our dietary needs. The Holy Quran describes our restrictions;

> Sura 5, ayat 3,5; "Forbidden to you for food are; dead meat, blood, the flesh of swing, and that on which hath been invoked the name of other than Allah.  That which hath been killed by strangling or by a violent blow, or by a head long fall, or by being gored to death; That which hath been partly eaten by a wild animal, unless ye are able to slaughter it (in due form0.  That which is sacrificed on stone alters.  This day have those who reject faith given up hope of your religion.  Yet fear them not, but fear me.  This day have I perfected your religion for you, completed my favor upon you, and have chosen for you Islam as your religion.  But if any is forced by hunger, with no inclination to transgression, Allah is indeen oft-forgiving most merciful."
> (5) "This day are all things good and pure made lawful unto you.  The food of the people of the book is lawful unto you, and yours is lawful unto them."

As you can see, God(Allah) our creater, gives '**Both Muslims and the people of the book'** (known universally as the Children of Isreal) **the same dietary restrictions.** In fact, the Jews' only restrictions are what the put on themselves; The priests and rabbis 'jocking for special positions' among themselves by imposing restrictions on their own people **'NOT SANCTIONED BY GOD.'**

> Holy Quran, Sura 4, ayat 160 states; "For the iniquity of the Jews we made unlawful for them certain foods good and wholesome which had been lawful for them,-in that they hindered many from Allah's way."
> Sura 3, ayat 93; "All food was lawful to the Children of Isreal, except what Isreal made unlawful for itself, before the law of Moses was revealed.  Say, You bring the law and study it, if you be men of truth."
> Sura 10, ayat 59; "Say, Do you see what things Allah has sent down to you for sustenance? Yet you hold forbidden some things thereof and lawful.  Say, Has Allah indeed permitted you, or do you invent things to attribute to Allah."

Since the CDC is allowing the Jewish chaplain to monitor the meal program, he has used this as an opportunity to show his bias, enmity, favortism, and prejudice by 'banning Muslim inmates' from it.  THE FEDERAL STANDARD UNDER THE 14th AMENDMENT, AND 42 U.S.C. 1983 IS WE CAN BE DENIED OUR RELIGIOUS FREEDOMS 'ONLY IF NO AL- TERNATIVE EXISTS.' "NO ONLY PROGRAMS IN THE FEDERAL OR STATE RE- LIGIOUS RIGHTS RULES CAN EXIST 'ONLY   THOSE PRIORLY STATED', IF DENIAL OF ACCESS RELATED TO RATIONAL LEGITIMATE PENOLOGICAL IN- TEREST." Here, the only interest is the mockery the Jewish rabbi is making of legitimate Muslim religious rites, and the enmity he is fermenting between inmates, and or staff.

STATE OF CALIFORNIA
**RELIGIOUS DIET REQUEST**
CDCR 3030 (09/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

DISTRIBUTION:
ORIGINAL – C-FILE
COPY – INMATE
COPY – CHAPLAIN
COPY - CORRECTIONAL FOOD MANAGER

| | |
|---|---|
| INMATE NAME: Bratton, R | FACILITY: CTF Central |
| CDCR NO.: J-45341 | HOUSING UNIT: CW - 133L |
| SIGNATURE: Ronald Bratton | DATE OF REQUEST: 12-27-06 |

| | |
|---|---|
| RELIGION: Muslim | RELIGIOUS GROUP (optional): Muslim |
| I HAVE BEEN PRACTICING THIS RELIGION | Islame Center, GROUP ADDRESS: 400 S Vermont |
| SINCE: 1953 | Lt. CA |
| | TELEPHONE NO: |

The California Department of Corrections and Rehabilitation offers two religious meal options:

- **Option 1**- Vegetarian meals (including dairy products and eggs) based on regular institution meals. Vegetarian protein substitutes are offered when meats are served. Fish may be included.

- **Option 2** – Jewish kosher meals. ~~This program is for Jewish inmates of who wish to follow the standards of Judaism.~~

What are the religious dietary laws to which you must adhere, and the tenets of your religion?
Halal

Can your religious dietary needs be met by not eating pork, and/or following a vegetarian diet? If not, please explain why.
No.    Does not contain Halal meal

*Attach documentation to support your request (optional)*
**INMATES DO NOT WRITE BELOW THIS LINE**

| | |
|---|---|
| DIET REQUEST: Jewish Religious Diet    ~~APPROVED~~ / **DENIED** | |
| If denied, give reason(s):    NOT df JEWISH FAITH | |
| Other Action Taken / Comments: | |
| CHAPLAIN'S SIGNATURE: | DATE: 1/2/07 |
| Date Application Received: 1/2/07 | Date Inmate Interviewed: 1/9/07 |

A19
A23

15 CA ADC § 3054.2

Term ▶

15 CCR s 3054.2

Cal. Admin. Code tit. 15, s 3054.2

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 15. CRIME PREVENTION AND CORRECTIONS
DIVISION 3. ADULT INSTITUTIONS, PROGRAMS AND PAROLE
CHAPTER 1. RULES AND REGULATIONS OF ADULT OPERATIONS AND PROGRAMS
ARTICLE 4. FOOD SERVICES
This database is current through 12/15/06, Register 2006, No. 50.

s 3054.2. Jewish Kosher Diet.

(a) Jewish kosher meals shall be available at designated institutions. Jewish inmates may participate in the program, as determined by a Jewish Chaplain.

(b) Jewish inmates with unmet kosher dietary needs may, when classification is appropriate, be considered for transfer to another institution that can provide the Jewish inmate with a kosher diet.

(c) Jewish inmates shall not give away, trade, or sell a sack meal. Doing so may result in a compliance violation of the Religious Diet Program Agreement.

(d) All institutions will adhere to standardized departmental Jewish kosher diet program menus and approved procedures for purchasing, preparing, and serving kosher meals.

(e) Observance of Passover constitutes a single religious event, requiring kosher for Passover foods to be provided during the eight days of observance.

(f) Each institution shall arrange for ongoing and appropriate training for all inmate workers, and custody and food service employees involved in the supervising, ordering, preparation, and serving of kosher meals.

(g) The Jewish kosher diet program shall be administered in accordance with the provisions of this Article. A Jewish Chaplain shall:

(1) Determine inmate entry into the Jewish kosher diet program, oversee the program, and determine Jewish inmate compliance violations.

(2) Review each institution's Jewish kosher diet program annually. Provide results of the review to the Correctional Food Manager (CFM).

A20

**Department of Corrections and Rehabilitation**
**Correctional Training Facility**
**Soledad, California**

## SUPPLEMENTAL PAGE

<u>RE:</u>    CTF APPEALS LOG # *CTF-C-07-00286*
First Level Reviewer's Response

**NAME: BRATTON**          **CDC# J-45341**          **HOUSING:**    **CW-133L**

<u>INTERVIEWED BY:</u> B. Hedrick, Correctional Business Manager II
Religious Coordinator

RECEIVED

FEB 0 7 2007

AWDG  OFFICE

<u>APPEAL DECISION:</u>

### *PARTIALLY GRANTED*

<u>APPEAL ISSUE:</u>    LIVING CONDITIONS

You believe you are being denied access to the Jewish Kosher Food Diet and that institutions are required to provide you with a religious diet if requested.

<u>APPEAL RESPONSE:</u>

You were interviewed by B. Hedrick Correctional Business Manager II and Religious Coordinator, on Friday, February 02, 2007, at approximately 1200 hours. A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

You are not a Jewish inmate and are therefore not entitled to the Jewish Kosher Diet. CCR Title 15 section 3054.2 (a) states, "Jewish inmates may participate in the program as determined by a Jewish Chaplain. This portion of your appeal is denied.

You have not been denied a diet that meets the expectations of your faith. You have failed to provide any information which indicates you were denied the Special Religious Diet Option 1- Vegetarian meals. You may complete a CDCR form 3030 Religious Diet Request, and forward it to the Muslim Chaplain for review. The Regular and Vegetarian diets contain no pork or pork products. The vegetarian diet serves no meat except fish and fish is Halal. Therefore, there is a dietary option that accommodates your religious beliefs.

Based on the information provided in ths appeal and a review of appeal number CTF-C-7-00286 and other information gathered **your appeal is PARTIALLY GRANTED.**

Reviewed by:

_____
A. Jannah
Muslim Chaplain

_____
B. Hedrick
Correctional Business Manager II

_2/6/07_
Date

_2/6/07_
Date

A21

## INMATE APPEAL ROUTE SLIP

To: AW - BUS SVCS                          Date: February 15, 2007

From: INMATE APPEALS OFFICE

Re: Appeal Log Number **CTF-S-07-00286** By Inmate **BRATTON, J45341**

Please assign this appeal to appropriate staff for **SECOND** level response.

Appeal Issue: **LIVING CONDITIONS**
Due Date: **03/15/2007**
Special Needs:

STAFF INSTRUCTIONS:
Second level appeals require a personal interview if not afforded at the first level.
Begin your response with: **GRANTED, DENIED, PARTIALLY GRANTED** or
**WITHDRAWN**. When complete, return to Appeals Office. Appeals that are
incomplete will be returned to the responding staff for appropriate completion.
Refer to D.O.M. 54100 for instructions.

**J. Aboytes, CCII / P.G. Dennis, CCII**
**Appeals Coordinators,**
**Correctional Training Facility**

RECEIVED

APBS   CFFICE

A 22
A 39
A22

First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _JAN 2 9 2007_ _____ Due Date MAR 0 8 2007

Interviewed by: _____
_See Attached_

Staff Signature: _____    Title: _Mush Chplm_    Date Completed: _2/10/07_

Division Head Approved: _____

Signature: _Hedrick_    Title: _CBMII_    Returned Date to Inmate: _2 FEB 8 2007_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

..t interview Ms. Hedrick was reminded "denial of Kosher meal was violations of law and rights as defined by court and const." She replied she was bound "not by law or court but by CDC policy," which banned Muslims from Kosher meal. Vegetarian meal offered is not an acceptable replacement to halal diet which includes meat. (see attached)

Signature: _Ronald Bratton_    Date Submitted: _February 11, 2007_

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _FEB 1 4 2007_ _____ Due Date: _MAR 1 5 2007_

☒ See Attached Letter

Signature: _____ AWBS _____    Date Completed: _2/27/07_

Warden/Superintendent Signature: _____    Date Returned to Inmate: _FEB 0 7 834_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

THe Muslim Halal diet contains meat. Plainly and flagrantly the warden is denying the only religious substitute allowable, that the CDC serves, which is the Kosher meal. The inmate has written clearly what Allah allows as a substitute, and what the law is concerning 'religious right to equal treatment.' The flagrant ridicule & prejudice shown us Muslims is not acceptable, Again see Thomas v. Gunther, 32 F. 3d. 1258, 1260 (8th Cir. 1994) for reference. Review requested.

Signature: _Ronald Bratton_    Date Submitted: _3.4.07_

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

RECEIVED

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

☑ See Attached Letter

CDC 602 (12/87)    Date: _MAY 2 1 2007_

A23

CTF APPEALS

**Department of Corrections and Rehabilitation**
**Correctional Training Facility**
**Soledad, California**

### S U P P L E M E N T A L  P A G E

**RE:**  CTF APPEALS LOG # *CTF-C-07-00286*
Second Level Reviewer's Response

**NAME: BRATTON**      **CDC# J-45341**      **HOUSING:**  **CW-133L**

**APPEAL DECISION:**

***PARTIALLY GRANTED***

**APPEAL ISSUE:**      LIVING CONDITIONS

You believe you are being denied access to the Jewish Kosher Food Diet and that institutions are required to provide you with a religious diet if requested. You believe the vegetarian diet is not acceptable.

**APPEAL RESPONSE:**

Several federal courts have concluded recently that a prison' refusal to provide inmates with halal meat was constitutionally adequate. *Williams v. Morton*, 343 F.3d 212 (3d. Cir. 2003); Hudson v. Maloney 326 F.Supp.2d 206 (D. Mass. 2004). Upon consulting the decisions of courts that considered the issue before September 2002, "the vast majority of these courts had determined that a prison permissibly discharged its constitutional duty to respect the dietary beliefs of Muslim inmates by offering an alternative, pork-free diet, and more broadly, that the law permitted prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population." *Hudson*, 326 F.Supp.2d at 211.

You have not been denied a diet that meets the expectations of your faith. You have failed to provide any information which indicates you were denied the Special Religious Diet Option 1- Vegetarian meals. You may complete a CDCR form 3030 Religious Diet Request, and forward it to the Muslim Chaplain for review. The Regular and Vegetarian diets contain no pork or pork products. The vegetarian diet serves no meat except fish and fish is Halal. Therefore, there is a dietary option that accommodates your religious beliefs.

Based on the information provided in ths appeal and a review of appeal number CTF-C-7-00286 and other information gathered your appeal remains **PARTIALLY GRANTED.**

Reviewed by:

_____      _____  2/27/07
W. J. Hill                                                      Date
Associate Warden Business Services

_____      _____  2/26/07
B. Curry                                                         Date
Warden (A)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    MAY 2 1 2007

In re:    Bratton, J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA  93960

IAB Case No.: 0611152          Local Log No.: CTF 07-00286

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner Michael H. Jensen, Facility Captain.    All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position there have been abuses of the Religious Diet program at Correctional Training Facility (CTF).    The appellant contends the vegetarian diet provided Muslim inmates should be replaced with Halal meals.    The appellant stated he wished to receive the Jewish Religious Diet, but was denied because he was not Jewish.    The appellant believes it is a violation of the equal rights clause to deny him the same meal as another inmate.    The appellant requests the Jewish Chaplain approve his receiving the Kosher meals.

**II    SECOND LEVEL'S DECISION:** The Second Level of Review (SLR) indicated that inmates with special religious dietary needs that prohibit them from consuming an item from the daily scheduled meal may be accommodated by being provided another item from that days' scheduled meal that is consistent with their dietary needs.    The staff response informed the appellant the institution does not offer Halal meats; however, vegetarian items can be substituted in place of meat.    The CTF appeal response noted the regular and vegetarian diets contain no pork or pork products.    It was noted the vegetarian diet serves no meat except fish and fish is Halal.    The SLR stated the fish option accommodates the appellant's religious beliefs, thus the appeal was considered granted in part.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** CDCR Operations Manual Section (DOM) 54080.14 provides the guidelines for an inmate to receive a Religious Diet.    In reviewing the requirements as stated in DOM, and the documentation submitted by the appellant, it appears CTF was correct in granting in part the appellant's appeal.

The Director's Level of Review (DLR) has reviewed the appellant's contention that the meals being prepared by the CTF Food Service section violate Muslim law.    If the appellant continues to believe this is true, the appellant may wish the Muslim Chaplin to speak to the Food Service Manager to discuss this issue.    The appellant has the right to receive a religious meal properly prepared by the CTF Food Service Department.

The DLR has reviewed the appeal documentation and has determined the appellant is not required to eat products forbidden by his religious beliefs.    The department has provided him a Heart Healthy alternative diet that meets all dietary requirements established by the Food and Nutrition Board of the National Research Council.    The DLR finds no basis on which to modify the SLR.

**B.    BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3001, 3051, 3052, 3054, 3084.2
DOM: 54080.1.5, 54080.3, 54080.6

**C.    ORDER:** No changes or modifications are required by the institution.

A25





BRATTON, J-45341
CASE NO. 0611152
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, CTF
        Appeals Coordinator, CTF

\* Note from plaintiff: Nowhere in my 602's did I request an "Halal meal" as fabricated by Examiner Jensen, facility captain in "appellant's argument." Clearly in action requested I asked "only for the religious meal that "only Jewish Inmates" are allowed here even though they are clearly marked Halal/Kosher. This is a flagrant and blatant mis-direction and abuse that the prison system systematically uses to practice open racisms and prejudice.

Rev. Bratton


A26

1    BILL LOCKYER, Attorney General
     of the State of California
2    ROBERT R. ANDERSON
     Chief Assistant Attorney General
3    FRANCES T. GRUNDER
     Senior Assistant Attorney General
4    MICHAEL G. LEE
     Supervising Deputy Attorney General
5    GREGORY T. FAYARD, State Bar No. 212930
     Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 327-7858
8    Fax: (916) 324-5205

9    Attorneys for Defendants State of California,
     California Department of Corrections, Davis,
10   Alameida, Carey, Kephart, Blanks, and
     Campbell
11   SA2002100262

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                        San Francisco Division

16

17   VICTOR WAYNE COOPER,                    Case No. C02-3712 JSW

18            Plaintiff,                     SETTLEMENT AGREEMENT AND
                                             RELEASE OF ALL CLAIMS
19       v.

20   THE STATE OF CALIFORNIA; GRAY DAVIS,
21   Governor of the State of California; THE
     CALIFORNIA DEPARTMENT OF
22   CORRECTIONS; EDWARD S. ALAMEIDA,
     JR., the Director of the California Department of
23   Corrections; THOMAS L. CAREY, the Warden
     of the California State Prison - Solano; S.
24   KEPHART, Associate Warden of the California
     State Prison - California Men's Colony; LESLIE
25   R. BLANKS, Warden of the California State
     Prison - California Men's Colony; and
26   ROSANNE CAMPBELL, Warden of the
     California State Prison - Folsom,
27
              Defendants.
28

#2745v1SF
                                1

Plaintiff VICTOR WAYNE COOPER ("Plaintiff") and defendants THE

CALIFORNIA DEPARTMENT OF CORRECTIONS and EDWARD S. ALAMEDIA, JR., in his

official capacity as the Director of the California Department of Corrections (collectively "CDC")

hereby enter this settlement agreement ("Settlement Agreement"), dated for reference November 10,

2003.

## I.     RECITALS

WHEREAS, Plaintiff Victor Wayne Cooper is a kosher-observant Jew currently

incarcerated by the State of California in California State Prison – Solano;

WHEREAS, Plaintiff desires wholesome meals consistent with the dietary laws and

obligations of his faith;

WHEREAS, a dispute arose regarding Defendants' alleged duty to provide Plaintiff

meals consistent with the dietary laws and obligations of his faith;

WHEREAS, Plaintiff filed an action in the United States District Court, Northern

District of California, entitled *Victor Wayne Cooper v. The State of California; Gray Davis, Governor

of the State of California; The California Department of Corrections; Edward S. Alameida, Jr., the

Director of the California Department of Corrections; Thomas L. Carey, the Warden of the California

State Prison – Solano; S. Kephart, Associate Warden of the California State Prison – California

Men's Colony; Leslie R. Blanks, Warden of the California State Prison – California Men's Colony;

and Rosanne Campbell, Warden of the California State Prison - Folsom,* case no. C 02 3712 JSW, for

damages, injunctive relief and declaratory relief for violations of (1) The Civil Rights Act of 1871 (42

U.S.C. § 1983); and (2) The Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C.

§ 2000);

WHEREAS, Plaintiff and Defendants (collectively, the "Parties") now desire to resolve

their dispute and have arrived at a settlement of all claims they may have against each other;

NOW, THEREFORE, in order to implement the settlement, the Parties hereby enter

into the following Settlement Agreement.

#2745v1SF

A 376)

## II.    TERMS

1.    **Provision of Kosher Meals Under a Kosher Diet Plan to Victor Wayne Cooper**: In full and complete compromise and settlement of all claims, the Parties agree to the following:

(a)    **Requirements:** No later than 60 days from the full execution of this Settlement Agreement, Defendants shall begin and continue on a daily basis to provide wholesome kosher meals to Plaintiff, referred to as the Kosher Diet Program. The kosher meals provided to Plaintiff under the Kosher Diet Program shall comply with the guidelines established under the "CDC Kosher Meal Provision Plan," attached as Exhibit A hereto and incorporated herein by reference, including the guidelines for "Foods Used," "Preparation Methods," and "Sanitation and Safety" as described in Exhibit A.

(b)    **Continuing Obligation:** Defendants' obligation under this Section shall continue so long as Plaintiff is housed by the California Department of Corrections. Further, Defendants' obligation under this Section shall continue even if Plaintiff is transferred, re-located, or removed to another prison, institution, facility, division, or section within the California Department of Corrections and/or even if Plaintiff is assigned or transferred to another security level. In the event Plaintiff is transferred, re-located, or removed to another prison, Defendants shall make best efforts to provide kosher meals to Plaintiff as soon as possible, but in no event later than 60 days from the time the transfer is endorsed or the Plaintiff's last kosher meal, whichever was earlier, absent exigent circumstances. Also, before transferring Plaintiff, the transferring prison shall make best efforts to notify the new facility of the anticipated transfer.  ·

2.    **Provision of Kosher Meals Under a Kosher Diet Plan to Other Inmates**: In full and complete compromise and settlement of all claims, the Parties further agree to the following:

(a)    **Announcement of Program:** No later than 30 days from the full execution of this Settlement Agreement, Defendants shall announce to all of the inmates at California State Prison - Solano ("Solano Inmates") by putting notices on bulletin boards in each facility chapel the anticipated implementation of the Kosher Diet Program.

#2745v1SF

1

2    (b)    Oversight: The Kosher Diet Program will be overseen by a Jewish

3    chaplain under the supervision of an orthodox or conservative rabbi. The rabbi shall be given access

4    to inspect the Kosher Diet Program (including all of its facilities) upon request. The rabbi shall make

5    the ultimate determination on violations of the Kosher Diet Program. An inmate against whom a

6    violation of the Kosher Diet Program is pending shall be entitled to consult with the rabbi before a

7    final determination regarding the alleged violation.

8    (c)    Solano Inmates with Diet Cards: All kosher-observant inmates who

9    currently possess a Special Religious Diet Card issued by the California Department of Corrections

10    shall be allowed to participate in the Kosher Diet Program. No later than 60 days from the full

11    execution of this Settlement Agreement, Defendants shall begin and continue on a daily basis to

12    provide wholesome kosher meals to all such inmates. Even inmates who possess a diet card must sign

13    the Kosher Diet Agreement. The kosher meals provided to Solano inmates who possess Special

14    Religious Diet Cards shall comply with the guidelines established under "CDC Kosher Meal Provision

15    Plan," attached as Exhibit A hereto and incorporated herein by reference, including the guidelines for

16    "Foods Used," "Preparation Methods," and "Sanitation and Safety" as described in Exhibit A.

17    (d)    All Other Solano Inmates: Inmates who do not already possess a

18    Special Religious Diet Card shall be permitted to submit a request for participation in the Kosher Diet

19    Program. Further, Defendants shall provide notice of the availability of the Kosher Diet Program to

20    all newly arriving inmates. No later than 30 days from the submittal of an inmate's request for

21    participation in the Kosher Diet Program, a rabbi shall determine the inmate's eligibility to participate

22    in the Kosher Diet Program. No inmate's request to participate in the Kosher Diet Program shall be

23    unconstitutionally denied. No later than 60 days from the full execution of this Settlement Agreement,

24    Defendants shall begin and continue on a daily basis to provide wholesome kosher meals; pursuant to

25    the Kosher Diet Program, to all inmates at California State Prison - Solano who request kosher meals

26    and who have been approved to participate in the Kosher Diet Program. The kosher meals provided to

27    approved inmates at California State Prison, Solano, shall comply with the guidelines established

28    under "CDC Kosher Meal Provision Plan," attached as Exhibit A hereto and incorporated herein by

Shakur v Schriro, 05-16705, 9th Cir, 1/23/08, in a Religious Land Use and Institutionalized Persons Act (RLUIPA) alleging violations of the Free Exercise Clause, and the Equal Protection Clause as to denial of Muslim inmate's request for religious dietary accommodation, summary judgment for defendants is reversed where (1) the district court made insufficient findings under Turner analysis; (2) as to the RLUIPA claim, summary judgement was inappropriate as there were factual disputes; (3) the district court applied the wrong standard of review on the Equal Protection claim and the identified penalogical interest was insufficient for summary judgement.

# SPECIAL DIET MEALS

San Quentin CA

January 14, 2008

Inmate Appeal Branch Case No.071900, Local Appeal Log No.: SQ-07-0121, was partially granted by the Director of the CDCR, stating "Muslim inmates can receive and are entitled to Kosher Meals." Submit your CDCR 3030 and CDCR 3030-A Forms to your local prison's Religious Review Committee (RRC). Soon this above-referenced appeal will be submitted to a court, requesting the CDCR to initiate an Islamic Halal Diet Program as the CCR initiated the Jewish Kosher Diet Program. For more information, have a family member write: Keith Allen Lewis Sr, P70532, S.O.S.P., San Oluentin CA 94964. No mail directly from prisoners.

A27(e)

# EXHIBIT "B"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown  inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disciplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

"Denial of Physician's Comprehensive Accommodation Chrono

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| BRATTON, RONALD | *Ronald Bratton* | March 14, 2007 | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| BRATTON, RONALD | *Ronald Bratton* | J-45341 | March 14, 2007 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| Ben Curry, acting warden | | | |

DISTRIBUTION:

ORIGINAL-
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC Form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

This process was circumvented by conspiracy of appeals coordinator, food manager, CMO and whom- ever else et al., It was never signed so anyone would take responsibility, but a 'chrono recind of permanent diet' was generated March 15, day after '602' was sent to warden as evidenced abov Even though this was clearly marked personal & confidential legal mail, no-one signed for it .



STATE OF CALIFORNIA                                                                      DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**            Location: Institution/Parole Region      Log No.              Category
**APPEAL FORM**              CTT      1. _____        1. _____      9-14
CDC 602 (12/87)                       2. _____        2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| BRATTON, RONALD | J-45341 | C-Wing porter | CW133L |

A. Describe Problem: I was issued a Medical Chrono to receive 'Kosher' meals from the prisons menu by Dr. Grewal. I have 'Chronic lymphatic leukemia' and anemia.(iron deficiency)  The food manager, RAGHUNATH, refuses to honor the chrono per Doctor's instruction. I require protein, minerals and other elements found in meat to balance my body and fight off maladies.  Since I am Muslim, the best remedy is to adhere to a suitable diet, rather than pills. A loss of pallor irregular heart beat, and general weakness. are possible side effects with my condition.  Raghunath states 'diet is not medicinal,'

If you need more space, attach one additional sheet.   food manager is flagrantly violating Penal Code 2653.

B. Action Requested: That the warden, Ben Curry ORDER the food department to stop 'practicing medicine' and comply with the doctor's prescription as stated in attached form CDC7410, and provide prompt accommodation with my medical condition.  Acid reflex is also a major difficultly to me.

Inmate/Parolee Signature: Ronald Bratton                          Date Submitted: March 14, 2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: By-pass per coordinator's order

Staff Signature: _____                              Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

By-pass per coordinator's order

Signature: _____                                    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed             CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

RECEIVED
MAR 2 8 2007
By CTFappeals

B29

## COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

None

| | | | |
|---|---|---|---|
| 1. Barrier Free/Wheelchair Access | P / T _____ | 4. Bottom Bunk | P / T _____ |
| 2. Ground Floor Cell | P / T _____ | 5. Single Cell (See 128-C date: _____ ) | P / T _____ |
| 3. Continuous Powered Generator | P / T _____ | 6. Permanent OHU / CTC (circle one) | P / T _____ |
| | | 7. Other _____ | P / T _____ |

### B. MEDICAL EQUIPMENT/SUPPLIES

None

| | | | |
|---|---|---|---|
| 8. Limb Prosthesis | P / T _____ | 16. Wheelchair: (type) _____ | P / T _____ |
| 9. Brace | P / T _____ | 17. Contact Lens(es) & Supplies | P / T _____ |
| 10. Crutches | P / T _____ | 18. Hearing Aid | P / T _____ |
| 11. Cane: (type) _____ | P / T _____ | 19. Special Garment: (specify) _____ | P / T _____ |
| 12. Walker | P / T _____ | 20. Rx. Glasses: _____ | P / T _____ |
| 13. Dressing/Catheter/Colostomy Supplies | P / T _____ | 21. Cotton Bedding | P / T _____ |
| 14. Shoe: (specify) _____ | P / T _____ | 22. Extra Mattress | P / T _____ |
| 15. Dialysis Peritoneal | P / T _____ | 23. Other _____ | P / T _____ |

### C. OTHER

None

| | | | |
|---|---|---|---|
| 24. Attendant to assist with meal access and other movement inside the institution. | P / T _____ | 26. Therapeutic Diet: (specify) Kosher Diet | P / T _____ |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | 27. Communication Assistance | P / T _____ |
| | | 28. Transport Vehicle with Lift | P / T _____ |
| | | 29. Short Beard | P / T _____ |
| 25. Wheelchair Accessible Table | P / T _____ | 30. Other _____ | P / T _____ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments? ☐ Yes ☐ No

If yes, specify: _____

| INSTITUTION C T F (C) | COMPLETED BY (PRINT NAME) I. GREWAL | TITLE M.D. |
|---|---|---|
| SIGNATURE _____ | DATE 3/1/07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| HCM/CMO SIGNATURE _____ | DATE 3/8/07 | BRATTON |
| APPROVED (list the number of items approved) | | T - 45341 |
| DENIED (list the number of items denied) | | C - 133 (L B30 |

**COMPREHENSIVE ACCOMMODATION CHRONO**

CDC 7410 (08/04)

1

2

3   California Penal Code § 2653
**Medical treatment required to prevent injury or serious harm to health of**
4   **prisoner**
(a) If a physician employed by the Department of Corrections or the Department
5   of the   Youth Authority certifies in writing that a particular medical
treatment is required to prevent a violation of Section 147,673,2650, or 2652,
6   or is required to prevent serious and imminent harm to the health of a
prisoner, the order for that particular medical treatment may not be modified
7   or canceled by any employee of the department without the approval of the
chief medical officer of the institution .....

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B31

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

March 30, 2007

**BRATTON, J45341**
*CFCWT1000000133L*

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have submitted an appeal that duplicates a previous appeal upon which a decision has been rendered or is pending (CCR 3084.3(c)(2)).*

*Appeal process abuse failure to cooperate.*

✓ *#07-00286 has been denied at 2nd level on 2/28/07. If you are disatissfied you can submit it to Director's Level. Second notice.*

J. Aboytes / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

```
"This appeal has never been answered as it was not file
until March 14, 2007.  The appeals co-ordinator is try-
ing to "cloud the issue" because he has become involved
in a conspiricy to discriminate and deny the prisoner
"both his denial of medical services, and religious
rights."  Two different issues which happen to cross
paths.  I am requesting director's level review on this
matter of  the conspiracy of denial of a medical trea
                                              nent
ment required to prevent serious and imminot harm to my
                                       e
health by refusal to impliment the "specific diet pre-
scribed by 'both the primary physican, and approved by
                                   rescine
the chief medical officer, then recinded after complain
```

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

| PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE |
| --- |

B 32

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: By-pass per coordinators order.  See attached CDC Form 695    .

_____

_____

_____

_____

_____

Staff Signature: _____  Title: _____  Date Completed: _____
Division Head Approved:                                                          Returned
Signature: _____  Title: _____  Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

The appeals coordinator refuses to process complaint after inmate filed '602' after 'cook' re

fused to serve inmate 'medically sound and prescribed diet.' The inmate sent '602 to warden,

which was opened before mailing, and CMO was contacted on March 15, and told inmate was a Mus

and therefore "his health was not the chief concern."  Immediately the CMO became involved in

conspiracy to recind "permanent medically prescribed diet  for his chronic anemic/leukemic statu

Signature: _____  Date Submitted: April 3, 2007

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____
☐ See Attached Letter

Signature: _____  Date Completed: _____

Warden/Superintendent Signature: _____  Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

The appeals coordinatorhas deemed this '602' exhausted per attachedCDC Form69!

attached.  The CMO was ordered on March 15, the day the '602' was sent legal m

to warden's office, but opened by ?  It was bought to prisoner's cell and pre-

tended to have been opened by mistake, even though it was torn open from the t

and opened by slit and taped together at the bottom.  The CMO then recinded "h

own permantly ordered diet for prisoner's condition" to join conspiracy agains

"all Muslim inmates's religous rights for clearly marked kosher/Halal meals."

Signature: _____  Date Submitted: April 3, 200

For the Director's Review, submit all documents to: Director of Corrections
                                                    P.O. Box 942883
                                                    Sacramento, CA 94283-0001
                                                    Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)                                                      Date: _____

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION.     ARNOLD SCHWARZENEGGER, GOVERNOR

### INMATE APPEALS BRANCH

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



June 12, 2007

BRATTON, CDC #J-45341
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

Re: Living Conditions

Dear Mr. BRATTON:

The enclosed documents are being returned to you for the following reasons:

This office provides the Director's Level Review of inmate/parolee appeals. The form must be completed through the Second Level of Review on behalf of the Warden or Parole Region Administrator. Your appeal was rejected, withdrawn or cancelled. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

Your assigned counselor, the Appeals Coordinator, or your Parole Agent can answer any questions you may have regarding the appeals process. Library staff can help you obtain any addresses you need.

N. GRANNIS, Chief
Inmate Appeals Branch



C.  COUNT II; Food Manager Refused to serve prisoner a medically
prescribed diet, ordered by DR. Grewal, MD, CTF -Soledad,
and authorized by J. Chudy, M.D. Chief Medical Officer, CTF.
The chrono was issued to prevent serious and imminent harm to
prisoner who was diagnosed with CHRONIC LYMPHOCYTIC LEUKEMIA in
August of 2002.  The diet was needed to boost prisoner's immuno-
globulins.  Immunoglobulins are proteins that help the body fight
infection.  The prisoner has been diagnosed as anemic "by CDC physicians.

C(1) plaintiff is informed and believes, and thereon alleges, that
defendant M.RAGHUNATH, is and at all times relevant herein was,
the Food Manager II at CTF-Soledad.  Defendant Raghunath is sued
in his official and individual capacities.  Plaintiff is further
informed and believes, and thereon alleges, the defendant Raghunath
is responsible for assisting as, the food manager at CTF-Soledad
and the welfare of all prisoners confined therein, including the
preparation of those prisoner's regular, religious, and health diets.

C(2) Plaintiff is informed and believes, and thereon alleges, that
defendant J.ABOYTES is and was at all relevant times therein, the
Appeals Coordinator at CTF-Soledad.  Defendant Aboytes is sued in
his official and individual capacities.  Plaintiff is further informed

Case No C07-2928 JSW (PR)    -5-

B35

and believes and alleges that the defendant is and was responsible
for the filing of prisoner complaints and appeals at CTF-Soledad.

V.   Statement of Claim   (See exhibit 'B')

The food manager refused to serve the plaintiff the medically
prescribed diet issued by chrono by DR. Grewal to help build anti-
bodies from his "anemically diagnosed" condition.   When the
prisoner wrote a '602' appeal the appeals coordinator refused
to accept the appeal and gave it no appeals number.   He wrote on
CDC Form 695 that another  appeal had been denied on 2/28/07.
The plaintiff could not understand the refusal to hear complaint
since the incident did not take place until 3/1507.   Evidently
the appeals coordinator thinks the refusal to grant a 'kosher
diet' for prejudicial and discriminatory reasons is the same as
refusal to treat a medically ordered treatment which is required
to prevent injury or serious harm to the health of a prisoner.
I disagree and am filing this count, as well as the next which is
in collaboration which the denial of medically needed treatment.
* _Plaintiff is informed and believes , and thereon alleges that
defendant Ben Curry is and all times relevant herein was, the
acting warden at CTF-Soledad in this count also.   Defendant Curry
is being sued in his official and individual capacities. Plantiff
is further informed and believes, and thereon alleges that defend-
and Curry was reaponsible for the welfare and supervision of the
care of all prisoners at this facility during these infractions.

VI Relief

The plaintiff requests that compensatory, punitive and declar-
atory damages be given.   The prisoner is burdened with a chronic
and sometimes deadly disease, in which immediate and long term
precautions, and all medically sound treatment be initiated A.S.A.P.
The plaintiff requests $15,00 each compensatory and maximum punitive
damages from defendants.      -6-                              B36

# EXHIBIT    "C"

STATE OF CALIFORNIA                                              DEPARTMENT OF CORRECTIONS

**CDC 1858 (2/97)**

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown   inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disciplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| Ronald Bratton | Ronald Bratton | March 27,07 | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| Ronald Bratton | Ronald Bratton | J.45341 | 3-27-07 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| | | | |

DISTRIBUTION:

ORIGINAL-
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC Form 602
Employee - Institution  Head/Parole Administrator
COPY - Complainant



STATE OF CALIFORNIA

RECEIVED

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**

MAR 2 9 2007

CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| 1. _____ | | 1. _____ | | 3 |
| 2. _____ | | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Bratton, Ronald | J-45341 | C-Wing Porter | CW-133 L |

A. Describe Problem: On March 14, 2007 I put legal mail addressed to the warden into the mail system via the Correctional Officer who was on duty that day. Two weeks later C.O. Wall bought me that same Legal Mail, opened and bought to me. In other words the legal 'order' was not observed and the Legal bond was not kept by the mail room. I told officer Wall not to return it to me but to call a lt. or Captain and ask the what to do since the legal line was not honored. The "Legal Mail" was properly addressed and a "Withdrawal slip was attached to leave a record. It should have been signed for and

If you need more space, attach one additional sheet. delivered to the warden's office as addressed.

B. Action Requested: That those who broke the order, 'The mail room as far as I know be reprimanded as per the system the 'state has ordered for those who do not follwo the legal order.' The personal who opened and tampered with the mail is in direct violation of §314(b) title 15 and federal mail violations

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: March 26, 2007

C. INFORMAL LEVEL (Date Received: 4.2.07 )

Staff Response: Please provide envelope so that it can be reviewed to see if postage was provided and it went through the United State Postage Service and delivered to Warden

Staff Signature: J. Markey    Date Returned to Inmate: 4-3-07

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

A copy of the envelope is attached. It had been opened at the bottom, slitted by what appeared to be a letter opener, and torn at the top, showing that it had clearly been opened twice. The adverse action taken toward the prisoner on the 15th of March clearly shows it was opened before the 16th, the date of the postmark. Therefore I am keeping the actual envelope for evidence on the litigation which is to follow. Form 1858 clearly shows noone signed as recipient of mail.

Signature: Ronald Bratton    Date Submitted: April 5, 2007

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

Attached is copy of outgoing mail log
Postmark is from San Jose distribution center
Mail room delivered to Warden Office unopened.

BB# C38

(Sent back to Mackey 4/5
returned to prisoner 4/18 but
not dated by Mackey)

RONALD BRATTON J #5 41
CTF CW-131L
P.O. BOX 689
SOLEDAD, CA 93960-0689

Appeals

Personal & Confidential Legal Mail

Personal & Confidential Legal Mail
SAN JOSE CA 951

16 MAR 2007 PM 3 L

93960+0689 8300

BEN CURRY, acting warden
P.O. BOX 689    CTF Soledad
SOLEDAD, CA 93960-0689

So Ewen 3-15-07

UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004230086
$ 00.63°
MAR16 2007
MAILED FROM ZIP CODE 93960

C39

CRI FACILITY OUTGOING CONFIDENTIAL AND LEGAL MAIL                    4/16/2007

| CDC # | SENDER | TREY | CITY/ST | DHW | DATE | TYPE |
|-------|--------|------|---------|-----|------|------|
| J45341 | BRATTON | BEN CURRY CTF WARDEN | SOLEDAD, CA | CW133L | 3/16/2007 | |

C 40

# COMPREHENSIVE ACCOMMODATION CHRONO

**INSTRUCTIONS**: A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

## A. HOUSING

None

| | | |
|---|---|---|
| 1. Barrier Free/Wheelchair Access P/T | 4. Bottom Bunk | P/T |
| 2. Ground Floor Cell     P/T | 5. Single Cell (See 128-C date: _____ ) | P/T |
| 3. Continuous Powered Generator P/T | 6. Permanent OHU / CTC (circle one) | P/T |
| | 7. Other _____ | P/T |

## B. MEDICAL EQUIPMENT/SUPPLIES

None

| | | |
|---|---|---|
| 8. Limb Prosthesis     P/T | 16. Wheelchair: (type) _____ | P/T |
| 9. Brace     P/T | 17. Contact Lens(es) & Supplies | P/T |
| 10. Crutches     P/T | 18. Hearing Aid | P/T |
| 11. Cane: (type) _____ P/T | 19. Special Garment: | |
| 12. Walker     P/T | (specify) _____ | P/T |
| 13. Dressing/Catheter/Colostomy Supplies     P/T | 20. Rx. Glasses: _____ | P/T |
| 14. Shoe: (specify) _____ P/T | 21. Cotton Bedding | P/T |
| 15. Dialysis Peritoneal     P/T | 22. Extra Mattress | P/T |
| | 23. Other _____ | P/T |

## C. OTHER

None

24. Attendant to assist with meal access   P/T _____
and other movement inside the institution.

Attendant will not feed or lift the inmate/patient
or perform elements of personal hygiene.

25. Wheelchair Accessible Table     P/T _____

26. Therapeutic Diet: (specify)  Diet    (P)/T _____
   *Rescind Kosher Diet*

27. Communication Assistance     P/T _____

28. Transport Vehicle with Lift     P/T _____

29. Short Beard     P/T _____

30. Other _____     P/T _____

## D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?     ☐ Yes     ☐ No
If yes, specify: * Note - Special Diets for religious needs are a custody issue. Not a medical issue.

| INSTITUTION | COMPLETED BY (PRINT NAME) | TITLE |
|---|---|---|
| CTF - Central | Joseph (Hurly m) | PMD (A) |

| SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| | 3/11/07 | |

| HCM/CMO SIGNATURE | DATE | |
|---|---|---|
| | 3/11/07 | Bratton T-45341 |

**APPROVED** (list the number of items approved)

**DENIED** (list the number of items denied)

(received by inmate March 28,07)
C 41

**COMPREHENSIVE ACCOMMODATION CHRONO**

Distribution: Original - Unit Health Record    Canary - Central File    Pink - Correctional Counselor    Gold - Inmate

CDC 7410 (08/04)

**DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**Correctional Training Facility, Soledad, California**
**SUPPLEMENTAL PAGE**

**RE:**    CTF APPEAL LOG No.  **CTF-S-07-01550**
Second Level Reviewer's Response

**NAME:**        **BRATTON**                    **J45341**                **CW133L**

**APPEAL DECISION:**    **DENIED**

**APPEAL ISSUE:**    **MAIL (Category 3)**

The appellant contends his confidential mailing privilege was compromised as a letter to the Warden was returned to him opened. He believes the mailroom opened the envelope and in doing so "broke the legal order"

**ACTION REQUESTED:**

The appellant requests the person who "broke the legal order" be reprimanded.

**APPEAL RESPONSE:**

All submitted documentation and supporting arguments of the parties have been considered.  The documentation and arguments presented are persuasive that this appeal was addressed appropriately at the First Level of Review.

This appeal was forwarded to the Second Formal Level without any additional information from the appellant. The First Formal Level reviewer clearly explained the envelope did in fact leave the mailroom intact and was entered into the USPS properly. The comments in section F of the CDCR Form 602 are dated April 18, 2007 and do not reflect any reason for the appellants dissatisfaction with the First Formal Level response.

 Reports reflect that appellant presented no new or compelling evidence in the appeal, which would warrant a modification of the findings of the FLR. This appeal remains DENIED.

Note: The Inmate Appeal system is not intended nor will it be used to generate apologies from employees or demand any form of disciplinary action. These are functions strictly within the purview of management. Further, neither of these actions is considered relief from adverse effect on your welfare.

Reviewed By: _____                    _____
                    J. Sisk, Associate Warden                            Date
                    Central Housing

Reviewed By: _____                    _____
                    Ben Curry, Warden (A)                            Date
                    Correctional Training Facility

cc:  Appeals Office File
      Inmate's Central File

C 42

# EXHIBIT  D

RONALD BRATTON J-45341
CTF          CW-133L
P.O. BOX 689
SOLEDAD, CA  93960-0689          "DRAFT OF PROPOSED STATE ACTION"


## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF MONTEREY


RONALD BRATTON                      Case No.
          Plaintiff,

                                    COMPLAINT FOR INTENTIONAL
v                                   INFLICTION OF PAIN/AND IM-
                                    PROPER CARE. VIOLATION OF
                                    PC § 2653, Medical treatment
Ben Curry, CTF acting warden, et al.,   required to prevent injury
M. Raghunath, food manager          or serious harm to health of
Sue Summersalt, RD RD Dept. food admin.  prisoner: Deliberate indifference,
L. Mackey, mailroom supervisor         Medical Malprictice
CTF mailroom staff, Jane and/or John Doe
J. Chudy, M.D. CMO, CTF Soledad
          Defendants,

The true name or capacities, whether individual, corporate,
associate, or otherwise, and defendarship of above named Jane
and John Does are unknown at the time of the filing of this com-
plaint to plaintiff, who therefore sues said defendants by such
ficititious names and will ask leave of the court to amend this
complaint to show their true names or capacities and defendant-
ship when the same have been ascertained. Plaintiff is informed
and believes, and based upon such information and belief, alleges
that each defendant designated herein as a Doe was responsible,
negligently or in some other actionable manner, for the events
and happenings referred to herein that proximately caused in-
jury to plaintiff as hereinafter alleged.

Plaintiff is now, and has been since May 2, 2002, a resident of
Monterey County housed as a prisoner at Dept. of Corrections,
CTF, Soledad.

The plaintiff alleges defendants willfully and maliciously acted

in concert to deny plaintiff a "Medically prescribed and sound

diet" designed to prevent and protect prisoner from infection,

and anemic diagonosed health condition, That the above named

people decided to put prisoner's health in jeopardy simply be-

cause he was not of their acceptable religious faith, and entered



-1-

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 5.25.07    Due Date: 6.20.07

Interviewed by: YOU ARE MISTAKEN. THE ENVELOPE WAS MAILED OUT AS LEGAL MAIL (SEE LOG ENTRY). THE LETTER WAS OPENED BY THE WARDEN'S OFFICE (THE ADDRESSEE). YOUR CONTENTION THE MAILROOM SOMEHOW "BROKE" THE LEGAL ORDER IS FALSE AND WITHOUT FOUNDATION. THE WARDENS' OFFICE SENT IT TO YOU FOR ACTION VIA THE APPEALS OFFICE.

Staff Signature: _____    Title: Visiting/Mail Lieutenant  LT. L. Talkington    Date Completed: 5-7-07

Division Head Approved:
Signature: _____    Title: Captain (A)    Returned
Date to Inmate: 5-10-07

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This prisoner knows that the answer is not the truth. First because there Was no signature on the '1858 form,' then because the adverse action taken against the prisoner was on the 15th, before the postmark, which could not have happened if the contents of the '602' was not known.

Signature: Ronald Bratton    Date Submitted: April 18, 07

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: MAY 1 0 2007    Due Date: JUN 8 '007

☒ See Attached Letter

Signature: X _____

Warden/Superintendent Signature: X _____

Date Completed: 5-23-07

Date Returned to Inmate: MAY 2 5 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

The '602' did not leave the mail room intake as the slit at the bottom of the envelope shows, and the retaliory action was taken against the prisoner in violation of Title 15 regulation 3141.1(d) on March 15, the evening the '602' was given to C.O. to be mailed. The reciever of the '602' "after the reprisal did not sign the CDC 1858 showing it was who accepted in warden's office. The '602' was bought to prisoner's door on March 26 and claime to be "opened by mistake," by the C.O. who bought it. The mail was clearly marked , and the reprisal was immediate.

Signature: Ronald Bratton    Date Submitted: June 5, 2007

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other
☒ See Attached Letter
CDC 602 (12/87)    Date: SEP 0 4 2007

C43

into a conspiracy to undermine the doctor's efforts to maintain the inmate's health to the best of available means. The participants not only moved to flagrantly deny prisoner his legal rights, but his right to available medical treatment, "to wit," a diet which would help to boost his immune system and protect im from fatally dangerous consequences bought on by **"his known vulnerable health condition."**

On or about August 2002, prisoner was diagnosed with Chronic lymphocytic leukemia. This was within three months following his being transferred to Soledad, CTF, and after being exposed to sewage three to ten times a week in "F" wing, a cellblock at CTF central, which had numerous "floodings" of the first tier by prisoners harrassing the correctional officers. Prior to this exposure "no appearance of disease had come to prisoner's attention, or been spoken of by medical staff in prisoner's eight years of incarceration. Since the diagnosis of disease prisoner has been told "no medical action would be taken other than monitoring of patient's blood count every ninety days or thereabout." **Prisoner was informed that he just had to watch out for exposure to other diseases and/or infections by flu shots, moderate exercise, cleanliness and good health habits.**

Since the diagnosis prisoner has read as much about his disease, and contacted the Leukemia and Lymphoma Society of America and researched as much about his disease as he could. He has found himself "having numerous infections, and being treated by antibiotics aproximately every three months or so. Other times the infections have left after growing to the size of large marbles, then bursting. **It is pointedly noted that CLL patients may**



p46

not have enough immunoglobulins . **Immunoglobulins are proteins that help the body fight infection. Low levels of immunoglobins may be a cause of repeated infections.** Knowing this the prisoner sought out way to lessen the "infectous nature of the disease."

In leukemia the body's natural immune protection system may not work as well as it should, and ways are sought to boost that system. The immune system helps to maintain our health by protecting us from infectious agents such as bacteria, viruses and fungi. The protection is accomplished by a network of cells that cooperate to identify and disarm "outsiders"- cells or foreign materials that should not be in the body - as compared to "insiders" - cell or or products of cells that are normal to the human body. There are three main branches of the immune system; The antibody-producing branch, which is composed of white cells, called B lymphocytes (B cells) B cells are specialized cells that recognize markers on the surface of foreign cells (such as bacteria, viruses and fungi) called antigens. B cells mature into plasma cells that secrete antibodies. **Antibodies are proteins that coat the invading cell** (bacteria, viruses or fungi) Each B cell produces one specifie antibody that recognizes one specific cell marker or antigen. The antibody coating is required for other white cells, called neutrophils and monocytes, to ingest and kill the invading cell. **Some proteins that the body utilizes cannot be produced except through the eating of meat.** There is no cure for CLL. Treatment goals are to: Protect patients from infection. Slow the piling up of CLL; Keep patients feeling well enough to carry on their day-to-day activities.

The symptoms of chronic lymphocytic leukemia usually develope gradually. Patients tire more easily and may feel short of breath

-3-



when physically active, as a result of anemia. (which CDC doctors
have diagnosed this patient with) They may lose weigh. The leu-
kemic lymphocytes (white cells) can accumulate in the lymphatic
system and the lymph nodes and spleen may become enlarged. Pa-
tients may experience infections, sometimes recurrent, of the
skin, lungs, kidneys, or other sites. (Which this patient does)
This patient also has such symptoms such a getting cold easily
and limbs "going sleep" easily such as when he adopts prayer pos-
itions, which he does five times a day. The patient also was
prescribed iron vitamins by the CDC medical staff, but discontinued
for some unkown reason. He has learned because of the charac-
teristics of his disease his immume system doe not function at
its' peak, and he must take all necessary measures to upgrade
it if possible. Nutrition is an important part of each patient's
treatment plan. The body's distinct **'active immunity'** in which
a person's own immune cells respond to a foreign invader by making
antibodies is the first form of immunotherapies most important
in fighting blood cancers. The white cells or leukocytes play
a major role in the body's defenses against disease. Most vita-
mins and all minerals are essential nutrients. That is, they
cannot be synthesized by the body and must be consumed in the
diet. Some minerals are required in fairly large quanties, and
are considered macro nutrients. They include calcium, chloride,
magnesium, phosphorus (occurring mainly as phosphate in the body)
potassium and sodium.. Minerals required in small amounts are,
considered micro nutrients and are called trace minerals. Now
from the earliest lessons in school every child is told about the
basic food groups and how they are important and necessary for
the body's growth and maintenance. In cases of such a disease

-4-

as leukemia, it it utmost.

The patient is Muslim, by religion, and follows the diet as much as possible in serving his creator, which of course knows better than any human or spirit what the diet should be. In folowing his religion it is ordered not to eat any meats of which God's name (Allah) is not pronounced. The Muslim diet is known as Halal and Kosher is just as suitable. When the Halal/Kosher diets were instituted the patient requested to be givin a diet prescribed and order by a physician, which Dr. Grewal did in ordering what is best for his diet. The food manager refused to serve the prescribed diet to prisoner/patient saying, "it was not a medical necessity. To be a food-service worker and not know the value of healthy diet is unconscionable, and ignorant of your profession. When the food-manager voiced this to the patient/prisoner I immediately wrote a "602' appeal form and sent it by legal mail. marked personal and confidential, along with an attached CDC 1858 form, so that someone representing the warden would have to sign for it, and acknowledge that his employees were refusing to obey a doctor's order which put "a high risk patient/ prisoner's life at risk. I did this on or about March 15, at the time the food-service  manager Raghunath, refused to follow  "prescribed doctor's order and violated Penal Code § 2653;

> Medical treatment required to prevent injury or serious harm
> to health of prisoner
> (a) If a physician employed by the Department of Corrections
> or the Department of the Youth Authority certifies in writing
> that a particular medical treatment is required to prevent a
> violation of Section 147,673,2650, or 2652, or is required to
> prevent and imminent harm to the health of a prisoner, the or-
> der for that particular medical treatment may not be modified
> or canceled by any empyoyee of the department without the ap-
> proval of the chief medical officer of the institution...

When the ''602' appeal was put in the mail by prisoner and

--5--

049

sealed by the correctional officer, along with a withdrawal slip
to be put in the mail on March 15,2007, it was taken out by either
the mailroom staff, working on its' own, and/or by some other dir-
ection, it was opened before it was mailed. At the time it was
not known by inmate. All I knew is I expected it to be mailed.

Two weeks went by and prisoner got no answer on his appeal.
Then on March 26, Correctional Officer Wall showed up to inmate's
cell with the letter and telling prisoner it had been "opened by
mistake," not accounting for where it had been for the last two
weeks. The officer asked prisoner "what did he want him to do
with the letter." The prisoner replied "mail it of course. That
is why it was put in the mail." The prisoner then wrote another
'602' reporting the illegal opening of the mail. Then wrote a
duplicate '602' of the original appeal and sent it to the appeals
coordinator. The next day he received a "rescindsion" of the order
for the prescribed diet. Now, this order had been back-dted to
March 15,2007, showing that the prisoner's "personal & confiden-
tial mail to the warden had been received by that date, by per--
sons unkown, (intercepted, illegally) and the Chief Medical Of-
ficer had become involved in the conspired, and stopped the medi-
cal treatment which he had authorized on March 1,2007. The resson
stated for the rescindsion was the prisoner's religion. Now, the
**"medically prescribed diet by Dr. Grewal, and authorized by the
Chief Medical Officer was good enough for the prisoner's known
health, but too good for him because of his religion." I smell
a rat! Hence the reason for this suit.**

On or about March 28, the original '602' arrived at prisoner's
door with an attached form saying prisoner had been denied in Feb.

-6-

D50

This prisoner was wondering "How could he have denied this '602' in February when he didn't write it until March 15,2007.  It then became very clear.  THe same prejudice and discrimination which these so-called officials held against Muslim inmates, applied to their health-care as well.  With documented infections and only Allah      knows what else to come, the CMO gave not a fart for  prisoner's health, and therefore only the court's could give prisoner protection from such evil and prejudical persons.  The court's are the only way for prisoner to find relief.  He seeks monetary relief as well as injunctions which will put his health care in the hands of the court, and find specialists to over-see his health care as long as he is in prison, and compensation for the flagrant abuse of his right to "meaningful health care free from the prejudice hands of his captors.

The qualified immunity attached to discretionary conduct of government officials that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have have known," does not apply to the official here at CDC.  That fact that the "confidential legal mail established in a 'particularized' sense that "the contours of the right' were clear enough for any reasonable official in the defendant's position to know that the officials involved were violating the right of the prisoner was spelled out clear in the '602' to the warden and the follow-up to the appeals coordinator.
Disorders such as marasmus (deficiecy of calories) and kwashiorka caused by restriction of calories in diet.  Lack of vitamine B12 (lack of meat only contained in animal products vitamine B(1), folic acid.

$D5$



# Los Falos Oncology & Hematology

### Center for Cancer Care and Blood Disorders

505 E. Romie Lane, Suite A
Salinas, California 93901-3906
(831) 755-1701      Fax (831) 755-1702

L O S   P A L O S
M E D I C A L
A S S O C I A T E S
I N C O R P O R A T E D

**Diplomates American Board
of Internal Medicine**

**Hematology/Oncology**
  Shehzad Aziz, M.D.
  Patrick W. Flanigan, M.D.

**Oncology**
  Laura V. Stampleman, M.D.

August 30, 2002

Inderjit Grewal, M.D.
Staff Physician and Surgeon
CTF-Soledad
P.O. Box 686
Soledad, CA 93960

RE:    **Ronald Bratton**
CDC #: J-45341

Dear Dr. Grewal:

Your patient, Ronald Bratton, was seen in the office on 8/30/2002. This 54 -year-old gentleman apparently developed symptoms of urinary frequency and incontinence about two months ago. He describes some initial improvement, but his symptoms have subsequently returned. Apparently during evaluation of this problem, he was found to have a white count of 24,900 with a repeat value of 29,400, and 60 percent lymphocytes being described as mature cells by the reviewing pathologist. His hemoglobin was 13.8, hematocrit 42.9 and, on both occasions, his MCV was approximately 75. Platelet count was normal. Serum chemistry panel was essentially normal except for an alkaline phosphatase of 116, normal being up to 115; and a creatinine of 1.6. His cholesterol is 172, PSA is 0.6. When interviewed, he reports that, except for mild fatigue, he's generally been doing satisfactorily. He does have the urinary symptoms as noted above. He has not had fevers, sweats or chills. He had not noted lumps or masses in his underarms, groin or abdomen. He has not been having abdominal pain. He gives a history of hypertension for about 25 years and is on a medicine that he's unable to name at this time. He has no family history of anemia, blood diseases or other malignancies.

Multi-system review was largely unremarkable.

Physical examination showed the patient to be alert and cooperative. He was examined with two guards present. There was no scleral icterus or oral inflammation. No cervical, epitrochlear, axillary or inguinal lymphadenopathy. His chest was clear to percussion and auscultation. He had no murmurs or gallops. No hepatosplenomegaly or abdominal masses. No peripheral edema, clubbing or cyanosis.

IMPRESSION: The patient very likely has early stage chronic lymphocytic leukemia. This diagnosis was discussed with him. The stress on the chronicity of the disease, and the need for regular follow up and for prompt treatment of any infectious situations that might arise. To further assess what is going on, I would suggest that you order a Direct Coomb's test, serum protein electrophoresis, serum immunoelectrophoresis as well as a leukemia/lymphoma panel for immunophenotyping of his peripheral blood white cells.

CONTINUED......

9/10

D52

**BRATTON, RONALD, pg. 2, 8/30/2002**

Because of his microcytosis, iron, iron binding capacity and ferritin are also appropriate. It's possible that he could be a carrier of the thalassemia trait, but without anemia I'm not suggesting further testing along this line at the present time. It would be prudent to keep track of his blood count over the next few months and years to assess the pace of his disease. Initially, I would suggest CBC and platelet counts every two months. I would also like to see him here in the office in two months.

Thank you again for allowing me to participate in the care of your patient.

Sincerely,

Patrick W. Flanigan, MD

PWF:cah          PATRICK W. FLANIGAN, M.D.

Tue 9/21/07

D53

# EXHIBIT  E



VII Count III (three)

Parties;  Plaintiff, same as above; On same '602 refused to be processed as Count II.

D(1)  Plaintiff is informed and believes, and thereon alleges, that defendant L. Mackey, is and was at all relevant times herein, was the Mailroom Supervisor at CTF-Soledad. Defendant Mackey is sued in his official and individual capacities. Plaintiff is further informed and believes, and alleges the defendant is responsible for the delivery and disbursement of mail throughout the CTF facility, including "marked legal & Confidential" mail.

D(2)  Plaintiff is informed and believes, and thereon alleges, the defendant J. Chudy is and at all times relevant herein was, the Chief Medical Officer at CTF-Soledad. Defendant Chudy is being sued in his official and individual capacities. Plaintiff is further informed and believes and hereon alleges, that defendant Chudy was responsible for the health care and maintenance of health for prisoners at CTF-Soledad.

D(3) Plaintiff is informed and believes, and thereon alleges, the defendant J. Aboytes is and at all times relevant herein, the Appeals Coordinator at CTF-Soledad.  Defendant Aboytes is sued in his official and individual capacities.  Plaintiff is further informed and believes and hereon alleges, that defendand Aboytes was responsible for the logging in and review of inmate appeals against unlawful and harmful actions.

D(4)  Plaintiff is informed and believes, and hereon alleges, that the defendant M. Raghunath, is and at all times relevant herein, the Food Manager at CTF-Soledad.  Defendanat Raghunath is sued in his official and individual capacities.  Plaintiff is further informed and believes and hereon alleges, that defendant Raghunath

$\varepsilon$ 54

-7-

is responsible for supervising and as the Food Manager implementing the feeding of all prisoners confined therein, including, but not exclusiveof feeding and disbursement of the "Kosher Diet Meals.

D(5)   Plaintiff is informed and believes, and thereon alleges, the defendant Ben Curry is and all times relevant herein, was, the Acting Warden at CTF-Soledad. Defendant Curry is sued in his official and individual capacities.   Plaintiff is further informed and believes and hereon alleges, that defendant Curry was resonsible for all medical and health programs at CTF-Soledad, as supervisor over all programs.

D(6)  Plaintiff is informed and believes, and thereon alleges, the defendants Jane &/or John Does 1 through 20, inclusive, is responsible in some manner for the injuries alleged in this complaint.   The true names and capacities of said DOE defendants are presently unknown to plaintiff, who therefore sue DOES 1 through 20 by such fictitious names and will seek leave to amend to add their names and capacities when they have been ascertained.

VIII   Statement of Claim    (See exhibits 'B'&'C')

The plaintiff alleges defendants willfully and maliciously acted "in concert" to deny plaintiff a "Medically prescribed and sound diet,' designed to help his weakened and supressed immune system produce antibodies to help him fight off infection and possible advancement of his "chronic, and sometimes fatal" disease. **Some proteins that the body utilizes cannot be produced except through the eating of meat.**   The prisoner is a Muslim and therefore requested, and was giving a "kosher diet" by which he could receive minerals which the body requires in fairly large quantied, and are considered macro nutrients. Some are required in small amounts, and are called micro minerals and

-8-

are called trace minerals.  Treatment goals for some who has

"Chronic lymphocytic Leukemia are;" Protect effected  patients

from infection. (Which prisoner has had repeatedly from the

past two or three years) Slow the piling up of CLL;  Keep pa-

tients feeling enough to carry on their day-today activities.

The treatment of boosting a patients immuno-system is the leading

way scientists and physicians are working on and looking to-to

aid in, and looking as  cure  according to the Leukemia & Lym-

phoma Society, and Dr Salk, leading researcher in vacine cures.

    After the physician on inmates case prescribed the diet to

aid prisoner against his disease, M. Raghunath, the Food Manager

at CTF refused to serve prisoner the meal "because he was a

Muslim, and food manager did'nt see diet as a medical need. "

When the prisoner/patient wrote a '602' to the warden and mailed

it to him marked "Personal & confidential Legal Mail," and

put it in the mail with a withdrawal slip so it would recieve

a post-mark, and also attached a "Form 1858" so it would be

signed for by someone from the warden's office, the mail was

opened prior to mailing by someone between the mail pouch and

the post-office.  This was found out by the prisoner two weeks

afterwards.  On or about the 26th of March a Correctional Officer

came to prisoner's cell with the letter sent to warden, and

claimed it had been "accidently opened, and never went to war-

den's office," and asked prisoner what he wanted done with the

letter?  The prisoner told him, "I put it in the mail to be

mailed, and that is what I want done with it."

    The officer, "Wall," pretended that was what he was going

to do with it.  A few days later this prisoner received a

chrono "dated March 15,2007 recinding his kosher diet chrono

from Chief Medical Officer stating, "It was because of his

$56

-9-

religious status.  Now the diet was good enough for the prisoner

to help his medical condition, approved by the same CMO, but

because of his religious standing, it was now too good for him.

    This prisoner two days later received the '602' he had re-

mailed to the warden two days earlier stating he had already been

denied the meal for his "health."  I know that was not so because

it was not appealed until March 15, 07 after food manager refused

to serve it.  The letter had a post-mark of March 16, and was

cut open from the bottom and taped back, and tore open from the

top, showing it had been opened twice.  The date of the rescission

of the 'chrono' for the diet was dated March 15, showing the

letter was opened before it was mailed, the CMO was contacted,

and a conspiracy existed to deny me a medical treatment designed

to help me "recover from the anemia, and produce anti-bodies

to fight off infection from my weakened immuno-system. "

            "A substantial burden was imposed on plaintiff due to exercising
            of his religion" 42 U.S.C. § 2000cc-1
IX Relief;

    The plaintiff requests Compensatory, punitive and declar-

atory damages.  The plaintiff requests a tempory injunction

to order the DCD-Soledad to immediately becan serving him the

Diet as first ordered by physician, and a permanant injunction

to keep serving it, as well as any medication/and or vitamin

suppliments he may need.  The prisoner wants a qualified speci-

list in the field of his disease be appointed by the court, and

the CDC-Soledad be limited in its' contact with patient's medi-

cal treatment, as the Chief Medical Officer has flagrantly re-

fused to look out for the patient's health and well being, by

entering into what amounts to mal-practice, and deliberate in-

difference by entering into a conspiracy to deny him medically

needed treatment, i.e. a medically balanced diet .  (Plaintiff re-

quests a minimum of $15,000 each compensatory, and maximum

E57

-10-

punitive damages from defendants.

The prisoner also asks that he be transfered to the CMC medical facility in the California Department of Corrections. The prisoner also requests he be single-celled for the duration of his stay in prison. He requests this as medical necessity as the inmates the prisoner is forced to live with have very "filthy to lackadaisical" cleanliness habits, and spread germs from place to place through-out the small cells we are forced to live in. The majority will not even wash their hands after using the toilet, and touch everything they can to spread their germs through-out the cell. In order to keep from infection the inmate needs the court to order this because he has no other means of protecting himself from this negligent enviornment.(ex.'C')

On claim one; The flagrant prejudice and discrimination dis-played by the defendants in refusing to accommodate plaintiff's religious dietary needs, while similarly situated "Jewish pri-soner's" were accommodated" with the same requested meal, was an act "with no rational basis for the dissimilar treatment. Equal treatment was not only not displayed, but the Muslim prisoners were subjected to ridicule, malace, and rudely in-sulted with an option which was non-existant," as it did not meet the standard "halal diet" of Muslims world-wide, nor the kosher substitute acceptable, "when strict halal diet" is not available.          "Violation of free exercise religious right clause 42 U.S.C. §2000cc-2(b), plaintiff given neither vitamins nor diet suppliment for anemic condition."
On claims two and three; The diliberate indifference to plaintiff/patient's health shown by the defendants "knowing his medical status with a real life controlling and sometimes fatal disease acting within his system," was nothing short of attempted murder. With immuno-therapy the foremost and most promising treatment scientists and clinitians look to for ar-

ε58

rest and cure of all cancers, asn specifically "Blood Cancers," and the patient's own immune system the primary target for this therapy. (Leading researcher Dr. Salk concurring and theading the research)

The conspiracy was entered into by the prison officials a-. gainst the patient/plaintiff **"with him having a documented history of recurrent infections at CTF-Soledad."** **The fact that patient had low iron, reflected by not having eaten red-meat, and not being given iron substitute was commented upon on last visit to specialist on August 21,2007. The advice was given to CDC in plaintiff's first visit in 2002, (See exhibit 'B.'65-6) to monitor plaintiff's iron, and microcytotic anemic condition. This has not been done for the last five years. It is unconsionable and heart that these prison officials had "No thought of the patient/ plaintiff's health, nor of the trust they held when an opportunity arose for them to show their prejudice, contempt, hatred, rancor, and animous toward patient's religious affiliation."** (See exhibit "B"&'A')

Plaintiff brings this action on his behalf and pursuant to **RLUIPA 42 U.S.C. § 2000cc 1(b)(1) and 2(b)** on his behalf as these defendants acted **"Under the color of authority."** The plaintiff/ prisoner is now and may be in the future, confined with-in the California Department of Corrections for an unkown number of years, since he is serving an undeterminate sentence of 19 years to life, and the staff here is trying its' best to see his life ends soon "with this careless and indifferent health system.

The plaintiff prays the Court gives this matter its' immediate attention, since plaintiff's current and long term health is at risk each day dietary and medical needs are not met.

-12-

# EXHIBIT  F



**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

2ND LEVEL

Location:  Institution/Parole Region
1. _____
2. _____  CTF-S

Log No.
08-02273
2. JUN 23 2008

Category
2-6

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

So - 23, 31

| NAME | NUMBER | ASSIGNMENT | 3-31-08 | UNIT/ROOM NUMBER |
|------|--------|------------|---------|------------------|
| BRATTON, R | J-45341 | 'C' Wing Porter | | CW 1331 |

A. Describe Problem: On March 21, 2008 I was told I would be re-classified at my annual and put up for transfer to a level III prison due to a new regulation. Per CCR Title 15, 3375 an inmate is classified in a uniform manner as he comes through a reception center. This classification was 'supposed to last throughout my CDCR juristicion. One of the purposes of an annual review is to improve the inmate's conditions of confinement by reducing or removing a previously imposed restriction. An execution type/style, unsual violence and multiple murders fall within the DRB authority to review. (Title XV, 3375.2A) The committee improperly determined me to be in this class. This inmate determined that if such restrictions were not placed on him upon coming

If you need more space, attach one additional sheet.  (on March 26.08 I was re-classified on pg. 2)

B. Action Requested: That the arbitrary determination that he met 3375.2 status be removed from my files and I be reinstated to level II status. That the only transfer inmate should face is to a medical institution, as prisoner has "Chronic Lymphatic Leukemia," an incurable blood cancer  Only those who could reach 3375.2 are 1st degree murders

Inmate/Parolee Signature: Ronald Bratton    Date Submitted: March 26, 2008

C. INFORMAL LEVEL (Date Received: _____ )
Received 128G May 20, 2008

Re-submitted
May 25, 2008

Staff Response: _____

By-Pass

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

By-Pass

BYPASS

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED
So, 5/23/35
MAY 28 2008
C-28-08
CTF APPEALS

RECEIVED
JUN 12 2008
CTF APPEALS

RECEIVED
MAR 1 2008
CTF APPEALS

08-02273

F-60

CONTINUED FROM 602 FORM                Page #2

through the reception center, then he does not fit within that standard.

Although UCC, ICC and CSR is given wide discretion in its recommendation of prisoners transfer and placement. This discretion can not be impartial, arbitrary and capricious. Whenever, the exercise of discretion exceeds the bounds of reason of all the circumstance before it being considered, this discretion becomes abusive when it serves no legitimate penological interest. It appears that CTF-Central is attempting to reduce this population by arbitrarily increasing inmates custody based on a new phantom classification process within 3375.2.(a)(7)(A). Then forcing the inmate to have to fight the increase custody in the courts.

CDCR has created a phantom classification for the determination of CCR Title 15, 3375.2.(a) i.e., Execution type/style murder/unusual violence. This new Phantom Classification is being applied in an abusive, arbitrary and capricious manner, in that any homicide, where the victim died as a result of an up close upper body injury is now an execution type/style murder or is classified as unusual violence. It should be noted that there is a potential that this new specious procedure will also be used against an inmate at his board hearing, as a ground to deny parole thus creating a liberty interest concern.

In particular this new policy is only targeting inmates on a Level II yard. Inmates who have programed from a High level to a low level prison. These inmates have a state created liberty interest due to their having a classification status below Level III and/or lowest point level possible for life inmate... i.e., (Mandatory 19 Points).

This group of inmates have successfully participate in positive programs, from more restrictive condition, which has subsequently resulted in their being granted approval for release from close custody, and yards where there is towers coverage within the units referenced as 180° and/or 270° designs. Inmates from this class have regulatory rights to be separated from inmates having higher custody status due to their reasonable and forseeable conflict in positive program objective. To now create an arbitrary phantom classification is specious, in that there appears to be an under tone of discrimination against a certain group of inmates who have stayed out of trouble. These factors are not considered by UCC, ICC or CSR when reviewing placement of these inmates under this new review.

These inmates crimes are now being recharacterized, in violation of their constitution rights. This new phantom classification is also in violation of the Office of Administrative Law (OAL) and the Administrative Procedure Act (APA). In order to implement this new policy inmates shall be given notice, such policy has to go through the proper channels. In addition, Substantive Due Process, requires that all legislation, state or federal, must Reasonably related to a legitimate government objective. The concept of procedure due process, guarantees, procedure fairness, where the government attempts to deprive one of his property or liberty: This requires fair notice, and fair hearing prior to a deprivation of life, liberty of property be given. Because of this new policy level II inmates are being singled out due to an unauthorized new classification procedure that increases their custody and force them back into a higher security setting. These level II inmates are the only ones who are being affected by this phantom policy. Because the new application of 3375 UCC, ICC and CSR is able to create a classification on the fly. Thus, this new classification policy is discriminatory. This can also be traced to staff inadequate training. Thus, the warden can not simply delegate

F61

CONTINUED ON BACK PAGE

this authority to his subordinates by rubber stamping the action of his staff. In particular, when sending well behave programing inmates back into an increased dangers environment.

Without minimizing the serverity of the crimes, the facts of the commitment offense in this case are not sufficiently egregious, callous, dispassionate, cruel or any other aggravating factor cited in CCR Title 15, 3375.2. The courts have made a correct analysis comparing these inmates commitment crimes to the minimal elements required for murder. As determined in, In re Samble also see People v. Lewis 50 Cal.3d 262. The court definition of a execution style/type murder is also the same as CCR Title 15, 3000. In order to classify a murder as execution type homicide, the victim must have been bound, cuffed, gagged, blindfolded or forced to assume a position from which the victim is unable to resist or flee: the victim is shot at close range: or the manner of death demonstrates that the victim had no opportunity to defend himself nor to flee. In each case where an inmate was charge with execution style murder there was an expect, surviving victim or a eye witness. Thus, it is difficult to discern how this prisoners crime can now be considered anything other than the minimum required to sustain his conviction. Any person of ordinary sensibility could fairly characterize every murder within CCR Title 15, 3375.2. In the manner that it is being applied by UCC, ICC and CSR, they cursory approach, on a fly, can now fit any up close murder whether with a gun hand or bat, within CCR Title 15, 3375.2. They are also applying unusual violence definition arbitrarily. Thus, the actions of these committee members ware there is no guild lines to define how these policies should apply, inmates are being arbitrarily and capriciously placed back in a level III prison based on CCR Title 15, 3375.2. There is no clear definition of unusual violence. Also, they are using execution type murder in a ambiguous manner, where it's being apply very liberally. There is nothing in the legal definition that equates "close proximity with execution/style murder."

The new sentencing guideline(s) being imposed are violations of 14th Amendment rights, Imposition of an unauthorized sentence. The courts do not have authority to enlarge a statute § 1487. By including 2nd degree murder to include 1st degree crime is to insert qualifying provisions not included in the 2nd degree conviction. Even courts may not rewrite the statute to conform to an assumed intention which does not appear from its language. Hewitt v Helms 459 U.S. 460,466 103 Sct 868-869, "When a state uses "mandatory" language in its enactment of statutory measures, the state creates a protected liberty interest. The California penal code, 189 does not carry with it 1st degree qualifying degrees.

This inmate currently has a civil case in the Northern District court and now for the third time since it has been filed an unconstitutional retailatory action is being taken against him, disguised as a mandatory program change. (BRATTON v Ben Curry et al., Case No. C 07-2928) Many of the personal at CTF Central are named as defendants, and this 'adverse' program change will place prisoner in increased danger, despite 14 years of 'good behavior.' Inmate is now one write-up away from the worse level prison in direct contradiction from the purpose of 'classification placement.'

Date : 3/26/08                    Signature : Ronald Bratton

F 62

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*April 7, 2008*

**BRATTON, J45341, CFCWT1000000133L**

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have failed to provide necessary copies of your chrono(s).*

*Comments: 128G, Classification Committee action dated 3/16/2008.*

There never was a classification action on 3/16/08
RwB

**P.A. Santiago**, CCII / **P. G. Dennis**, CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be
appealed. If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

F63

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*April 12, 2008*

LA-1204

*BRATTON, J45341, CFCWT1000000133L*

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have failed to provide necessary copies of your chrono(s). CDC 128G dated 3-26-08.*

Was never given a 1286 until 5/20/08, appeals should
have intercussed then and got it from CCTY Committee

**P.A. Santiago**, CCII / **P. G. Dennis**, CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be
appealed. If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents. You have only 15 days to comply with the above directives.

F64

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*June 2, 2008*

LA·120

***BRATTON, J45341, CFCWT1000000133L***

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal is incomplete. You must include supporting documentation. All documents must be legible. (If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to your assigned counselor.) Your appeal is missing CDC 695 dated 3-31-08. Failed to provide necessary copies of chrons, 128G. Attach 128G you received on 5-20-08 for clasification committe action on 3-26-08. Re attach CDC appeal screen out dated 3-31-08. Do not remove screen outs.*

IIt is unmistakenly apparant that you do not want to take action against this Constitutional & State Statute Violation against me.   This is the 4th. possibly the 5th time I have submitted this appeal.which you should taken the first time because the refusal to give me the 128G was itself a reason for your intervention   Both the 128G and "Both Form 695's were attached to this '602' when I sent them to you.   Only someone in your office could have removed them.   No 695 was ever generated on 3/31/08.   The form came back with a date of April 12th. copy attached.

**P.A. Santiago,** CCII / **P. G. Dennis,** CCII
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may *not be* appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

## PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

F-65

# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

NAME: **BRATTON**                    CDCR #: **J45341**                    BED: **CCW-133L**

### COMMITTEE ACTION SUMMARY

REVIEWED FOR LEVEL II PLACEMENT PER 3375.2. REFER TO THE CSR, RX APPLY MMPS OF 28 AND C-CODE, RX CTF-III/CMC-E- III, NON-ADVERSE, TX WG/PG A1/A EFF: 1/23/98 AND MED A CUSTODY UPON TX.

### COMMITTEE'S COMMENTS

Inmate BRATTON appeared before Correctional Training Facility's (CTF's) Unit III Unit Classification Committee (UCC) today for his Annual Review. BRATTON stated that his health was good and was willing to proceed. BRATTON received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, BRATTON was introduced to the committee members.

~~Max~~
~~Clos~~ B custody remains appropriate. He is currently assigned as Porter. The CDC-840, 812, and 127 have been updated. The classification score has been adjusted to 0 reflecting 2 periods with no 115's and 2 periods of satisfactory assignment. He does have a Mandatory Minimum Placement Score of 28 due to 3375.2. Subject is ineligible for the COCF Program due to Life Term.

On 3/26/08, Bratton was seen at UCC for his annual review. After careful review of his Central file it was discovered that he does not meet the criteria for Level II placement per CCR 3375.2 (a) (7) (A). The circumstances of his commitment offense, Murder 2nd, are as follows:

On 3/18/94, an altercation ensued between Bratton and the victim, regarding the Gospel. He became upset retrieved his gun from his apartment and shot the victim in the head at close range. Bratton ran to his apartment and was overheard saying \"Shit, nobody is going to mess with my family. God Dammit, I'll kill him.\" Multiple witness saw Bratton shoot the victim at close range in the head. Also during UCC, Bratton admitted to shooting the victim at close range.

CCR 3375.2 (a) (7) (A) states: An inmate serving any life term shall not be housed in a level I or II facility if any of the following case factors are present. The commitment offense involved multiple murders, unusual violence or execution-type murders or received high notoriety. Due to meeting the definition of an execution type murder with his commitment offense, in that the victim was shot at close range, subject is ineligible for level I or II placement.

Case factors remain the same per Initial Classification Chrono dated 5/15/02 with the exception of him now having Level III points.

He stated he prefers to transfer to CMC-E-III, due to having chronic Leukemia and feels, he would best be treated at CMC. He also stated that he disagrees with the transfer and that he felt that he did not meet the criteria, CTF-III placement is recommended. The Confidential File was reviewed.

Subject was screened for the COCF program and is ineligible due to Life Term. Bratton is not eligible for Camp, C.C.F., M.C.C.F., M.S.F and Restitution Center due to Life term.

Based upon a review of BRATTON'S Central File, case factors, and through discussion with him, committee elects to: Reviewed for level II placement Per 3375.2. Refer to the CSR, Rx apply MMPS of 28 and C-code, Rx CTF-III/CMC-E- III, non-adverse, TX WG/PG A1/A eff: 1/23/98 and Med A custody upon TX.

At the conclusion of this review, BRATTON was informed of his Appeal Rights with regards to this committee's actions. BRATTON acknowledged his understanding and disagreement with committee's actions.

**STAFF ASSISTANT**

Not Assigned: (Participant in MHSDS but able to comprehend issues)

### INMATE'S CASE FACTORS

| CUSTODY | PS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPT & DATE |
|---------|----------|-------------------|--------------|--------|-----------|--------|-------------------|-----------------|
| MEDA | 28/III | A1A - 1/23/1998 | MEPD 11/16/2006 | 12.9 (R) | 3/1/2009 | BLA | CCCMS | SUB # 1  9/2010 |

### COMMITTEE MEMBERS

MEMBERS

D. Carrazzo, FC (A)
*CHAIRPERSON*

T. Verdesoto

C. Lopez, CCI
*RECORDER*

Committee Date: 3/26/2008          **ANNUAL REVIEW**          Committee: C032608CYL7

Typed By: C.L - Distribution: C-File & Inmate          **CORRECTIONAL TRAINING FACILITY**          Classification Chrono CDCR 128G (Rev: 10/07)

F66

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Correctional Training Facility

Soledad, California

**RE:** CTF Appeal Log No:        **CTF: -S-08-02273**
SECOND LEVEL REVIEWER'S RESPONSE

BRATTON        J45341        LA-120L

## APPEAL DECISION

DENIED

## APPEAL ISSUE:

CUSTODY/CLASSIFICATION

## APPEAL RESPONSE:

Inmate Bratton, in your appeal you state the following:

(1) That on 3-21-08, you were told that you would be re-classified at your Annual Review and put up for transfer to a Level III prison. On 3-26-08, you were re-classified to a Level III prison. You claim execution style murders fall within the DRB authority to review and committee improperly determined you to be in this class.

(2) That you contend your conviction of Murder in the Second Degree cannot be Execution-Style Murder. By including 2nd degree murder to include 1st degree crime is to insert qualifying provisions not included in the 2nd degree conviction. Additionally, you claim this new policy is only targeting inmates on a Level II yard who have programmed from high level to low level prison.

(3) That you are requesting the determination that you met 3375.2 status be removed from your files and you be reinstated to Level II status. The only transfer you should face is to a medical institution, as you have leukemia.

You were interviewed by Correctional Counselor II D. Silva on June 17, 2008, who provided you the opportunity to explain your appeal and present supporting information or documents. During the interview, you had nothing to add.

A thorough review of your appeal package and all of your attachments has been completed and reveals the following;

(1) That on 3-26-08, you appeared before Unit III Unit Classification Committee (UCC) for your Annual Review. UCC reviewed your case for Level II placement per California Code of Regulations (CCR) Title 15, Section 3375.2. Based on the circumstances of your commitment offense, UCC elected to refer your case to the Classification Staff Representative (CSR) for the application of a "C" code and a

1

F67

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Correctional Training Facility

Soledad, California

CTF Appeal Log # CTF-S-08-02273

Page 2 of 2

Mandatory Minimum Score of 28 points. Additionally, your case was to be reviewed for Level III transfer.

(2) A review of your Central File reveals that you were convicted of Murder 2nd and received a Life Term sentence. The circumstances of the commitment offense reveal that multiple witnesses saw you shoot the victim at close range and you admitted in committee that you shot the victim at close range.

(3) CCR 3375.2 (a) (7) states that an inmate serving any Life Term shall not be housed in a Level I or II Facility if the commitment offense involved multiple murders, unusual violence or execution-type murder.

(4) CCR Section 3000 defines Execution Type Murder as follows:
"Execution Type Murder describes the circumstances or manner of a fatal offense in which the victim is bound, cuffed, gagged, blindfolded, or forced to assume a position from which the victim is unable to resist or flee; the victim is shot at close range; or the manner of death demonstrates that the victim had no opportunity to defend himself or herself nor to flee."

(5) Based on the circumstances of your Instant Offense, wherein you shot the victim at close range, Unit III has determined that Level II placement is not appropriate and your case was subsequently endorsed by the CSR for Level III placement.

Therefore, based on the aforementioned, your appeal is being **DENIED** at the Second Level of Review.

Reviewed By: _____        6/18/08
                R. A. White, Associate Warden, CTF-C        Date

Reviewed By: _____        6/20/08
                Ben Curry, Warden CTF-Soledad                Date

F-68

**CDC 840 (Rev. 02/02)   RECLASSIFICATION SCORE SHEET**

DEPARTMENT OF CORRECTIONS
Original - Central File
Canary - QIS
Green - Inmate

**4. DATE OF LAST SCORE SHEET**

| MO | DAY | YR | |
|---|---|---|---|
| 2 | 2 3 | 7 | 18 |

**5. FORM IDENTIFICATION (ENTER X in a, b or c)**

a) NEW [X] 24   b) CORRECTION [ ] 25

DATE CORRECTED

| MO | DAY | YR | c) DELETE |
|---|---|---|---|
| | | | 26    [ ] 32 |

## B.   ANNUAL/ 6 MONTH REVIEW PERIOD DATES

**1. REVIEW PERIOD BEGINNING DATE**

| MO | DAY | YR |
|---|---|---|
| 3 | 1 | 7  33 |

**3. (Enter X) Annual** [X] 39

**2. REVIEW PERIOD ENDING DATE**

| MO | DAY | YR |
|---|---|---|
| 2 | 2 8 | 8  40 |

**4. Number of Full Review Periods** 2

## E.   CORRECTION TO CDC 840 SCORE SHEET (Prior to Rev. 07/02)

1. Use this section to correct a CDC 840 score sheet with a form revision date prior to 07/02.   **TOTAL CORRECTION =** (+ OR -) ___ 70

## F.   COMPUTATION OF SCORE

1. **PRIOR PRELIMINARY SCORE** (Preliminary Score from 839/New Preliminary Score from 840 or 841) = 0  73

2. **Net Change in Score** (D. 8 minus C. 4) = (+ or -) − 8  76

3. **PRELIMINARY SCORE SUBTOTAL** (Not less than 0) = 0

4. **Change in Term Points (T/P) (x 2)** - Old T/P ___ + New T/P ___ = 79

5. **NEW PRELIMINARY SCORE** (Not less than 0) = 0  82

## C.   FAVORABLE BEHAVIOR SINCE LAST REVIEW

1. Continuous Minimum Custody ___ x 4 = [ ] 46

2. No Serious Disciplinary 2 x 2 = 4  48

3. Average or Above Performance in Work, School or Vocational Program 2 x 2 = 4  50

4. **TOTAL FAVORABLE POINTS** = 8

## D.   UNFAVORABLE BEHAVIOR SINCE LAST REVIEW

SERIOUS DISCIPLINARIES | Number of

1. Div. A-1/A-2 ___ x 8 = [ ] 52
   Dates:

   Div. B, C & D ___ x 6 = [ ] 54
   Dates:

   Div. E & F ___ x 4 = [ ] 56
   Dates:

2. Battery or Attempted Battery on a Non-Prisoner ___ x 8 = [ ] 58
   Dates:

3. Battery or Attempted Battery on an Inmate ___ x 4 = [ ] 60
   Dates:

4. Distribution of Drugs ___ x 4 = [ ] 62
   Dates:

5. Possession of a Deadly Weapon ___ x 16 = [ ] 64
   Dates:

6. Inciting a Disturbance ___ x 4 = [ ] 66
   Dates:

7. Battery Causing Serious Injury ___ x 16 = [ ] 68
   Dates:

8. **TOTAL UNFAVORABLE POINTS** = + ___

## G.   PLACEMENT

**MANDATORY MINIMUM SCORE FACTOR CODES AND SCORES**

| CODE | SCORE | CODE | SCORE |
|---|---|---|---|
| [A] Condemned | 52 | [E] Warrants "R" Suffix | 19 |
| [B] Life Without Possibility of Parole | 52 | [F] Violence Exclusion | 19 |
| [C] CCR 3375.2(a)(7) Life Inmate | 28 | [G] Public Interest Case | 19 |
| [D] History of Escape | 19 | [H] Other Life Sentence | 19 |

1. **SCORE FACTOR CODE** (Assess Only Highest Factor) C  85

2. **MANDATORY MINIMUM SCORE** 2 8  86

3. **PLACEMENT SCORE** ENTER NEW PRELIMINARY SCORE OR MANDATORY MINIMUM SCORE WHICHEVER IS GREATER   2 8  88

## H.   SPECIAL CASE FACTORS

1. **HOLDS, WANTS and DETAINERS** (Enter A, P or *)

   Felony [ ] 91   USINS [ ] 92

2. **RESTRICTED CUSTODY SUFFIX** (Enter R or *) [ ] 93

3. **ELIGIBLE FOR RESTITUTION CENTER** (Enter Y or N) [ ] 94

4. **LEVEL IV DESIGN** a) 180 Status (Y/N) [ ] b) Reason Code

5. **US ARMED FORCES** (Enter Y or N) [ ] 95

6. **CURRENT INSTITUTION AND FACILITY** C T F - I I  96

7. **COUNTY OF LAST LEGAL RESIDENCE** [ ] 103

8. **CASEWORKER'S NAME** L o p e z   FI C  106

## I.   CLASSIFICATION STAFF REPRESENTATIVE

1. **LAST NAME** G o m e z  115

2. **DATE OF ACTION** 4 - 2 - 0 8  123  (MO - DAY - YR)

3. **LEVEL IV DESIGN** a) 180 Status (Enter Y or *) [ ] 129   b) Reason Code [ ] 130

4. **MINIMUM CUSTODY** a) Eligibility (Enter E, L or P) P  132   b) Reason Code U I 0  133

5. **CCRC ELIGIBILITY** (Enter REN, REX or *) [ ] 136

6. **DEVELOPMENTAL DISABILITY PROGRAM (DDP) CODE** N C F  139

7. **DISABILITY PLACEMENT PROGRAM (DPP) CODE(S)**

| a) (*) Primary (affects placement) | b) (*) | c) (*) | d) (*) |
|---|---|---|---|
| [ ] 142 | [ ] 146 | [ ] 150 | [ ] 154 |

8. **ADMINISTRATIVE DETERMINANT CODE(S)**

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



June 4, 2008

BRATTON, RONALD, J45341
Correctional Training Facility
P.O. Box 686
Soledad, CA  93960

RE: IAB# 0729754      CUSTODY/CLASS

Mr. BRATTON:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

The CDC 602, Inmate/Parolee Appeal Form, must be completed through the Second Level of Review on behalf of the Warden or Parole Region Administrator.

N. GRANNIS, Chief
Inmate Appeals Branch

F 70

**\*\*\*\*PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE\*\*\*\***

1    DECLARATION OF SERVICE BY MAIL

2

3    CASE NAME: RONALD BRATTON V BEN CURRY et al.,

4    CASE NO.: C 07-2928

5

6    I, RONALD BRATTON           , declare that I am over the age of eight-

7    teen (18) years; I am/am not a party to the attached action; I

8    served the attached document entitled:

9    ANSWER TO MOTION AND MOTION TO DISMISS AND OPPOSITION TO
     REQUEST FOR SUMMARY JUDGEMENT
10

11   on the persons/parties specified below by placing a true copy of

12   said document into a sealed envelope with the appropriate postage

13   affixed thereto and surrendering said envelope(s) to the staff of

14   the Correctional Training Facility entrusted with the logging and

15   mailing of inmate legal mail addressed as follows:

16   UNITED STATES DISTRICT COURT          ATTORNEY GENERAL'S OFFICE
17   NORTHERN DISTRICT OF CA               455 GOLDEN GATE AVENUE
                                           Suite 11000
18   450 GOLDEN GATE AVENUE                SAN FRANCISCO, CA 94102
     SAN FRANCISCO, CA 94102
19

20

21   There is First Class mail delivery service by the United States

22   Post Office between the place of mailing and the addresses indi-

23   cated above.  I declare under the penalty of perjury under the laws

24   of the United States and the State of California that the foregoing

25   is true and correct and that I executed this service this 17th

26   day of AUGUST 17, 2008 in Soledad, CA.

27

28                                    Ronald Bratton
                                      Declarant  RONALD BRATTON

RONALD BRATTON J-45341
CTF-NORTH    LA 120L
P.O. BOX 705
SOLEDAD, CA 93960-0705

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RONALD BRATTON                        Case No. C 07-2928 JSW
            Plaintiff,

                                      REQUEST FOR FORTY-FIVE DAY
v                                     EXTENSION OF TIME TO ANSWER
                                      DEFENDANT'S "NOTICE OF MOTIONS
BEN CURRY, et al.,                    AND OPPOSITION TO MOTION TO
            Defendants,               DISMISS VIA SUMMARY
                                      JUDGEMENT

    The plaintiff in the above case RONALD BRATTON, requests an

extension in time, to and including September 1,2008, to file his

opposition to defendant's request summary judgement.  The plain-

tiff was transfered to a higher-level institution in retaliation

for filing the above case, and that facility has been on lock-down

since May 30,2008 for African-American and Southern Hispanic inmates

following an altercation on this yard.  The plaintiff  also had knee

surgery on July 2,2008.

    Since the lock-down I have only been able to go to the library

to do research and type my answer, once a week, with no more than

three-hours at a time.  Plaintiff will keep the court up-to-date

on any now expected happenings.  On June 18, entire CTF shut down

while all cells and dorms searched until 8/15/02.

Dated July 21,2008                    Respectfully Yours,

- - - - - - - - - - - - - - - - -          _____
— Bratton, Ronald  #04063             RONALD BRATTON
— 03/11/1948  Dr. Pompan
— DOS    07/02/2008